1  Samuel H. Ruby (CSB#191091)
   Judith A. Whitehouse (CSB#198176)
2  Paris Scott (CSB#248899)
   BULLIVANT HOUSER BAILEY PC
3  601 California Street, Suite 1800
   San Francisco, California 94108
4  Telephone: 415.352.2700
   Facsimile: 415.352.2701
5  samuel.ruby@bullivant.com
   judith.whitehouse@bullivant.com
6  paris.scott@bullivant.com

7  *Attorneys for Defendant*
   Travelers Indemnity Company of Connecticut
8

9
                 UNITED STATES DISTRICT COURT
10
               NORTHERN DISTRICT OF CALIFORNIA
11
                       OAKLAND DIVISION
12

13  LA VELDA SINGLETON dba LOVE AND        Case No.:  CV 08 1852 (CW)
    CARE PRESCHOOL,
14                                         **MEMORANDUM OF POINTS AND**
                  Plaintiff,               **AUTHORITIES IN SUPPORT OF**
15                                         **TRAVELERS' CONSOLIDATED RULE**
         vs.                               **12 MOTIONS:**
16
    TRAVELERS INDEMNITY COMPANY OF         **(a) TO DISMISS (FRCP 12(b)(6);**
17  CONNECTICUT, et al.,                   **(b) TO STRIKE (FRCP 12(f)); and/or**
                                           **(c) FOR A MORE DEFINITE**
18                Defendants.              **     STATEMENT (FRCP 12(e))**

19                                         Hearing Date:  May 22, 2008
                                           Time:          2:00 p.m.
20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

I. INTRODUCTION AND SUMMARY ............................................................... 1

II. BACKGROUND ........................................................................................... 1

    A.  The Policy ............................................................................................ 1

    B.  The Loss ............................................................................................... 4

    C.  The Actual Cash Value Payments ...................................................... 4

    D.  Plaintiff's Delay In Making Repairs ................................................... 5

    E.  Subsequent Events ............................................................................... 6

    F.  The Complaint ...................................................................................... 6

III. MOTION STANDARD ............................................................................... 7

IV. ARGUMENT ............................................................................................... 7

    A.  The Fourth, Fifth, And First Causes Of Action Should Be Dismissed ....... 7

        1.  The Claims Are Not Stated With Requisite Particularity .................. 7

        2.  The Claims Are Time-Barred ........................................................... 8

        3.  At A Minimum, The Court Should Strike Portions Of The Claim ........ 10

    B.  The Seventh Cause Of Action (Negligence) Should Be Dismissed .......... 10

    C.  The Second Cause Of Action (Breach of Contract) Should Be Dismissed ..... 11

        1.  Travelers Was Not Obligated To Pay For The Building Damage On A "Diminution In Value" or "Replacement Cost" Basis ..................... 12

        2.  Travelers Was Not Obligated To Pay For The Contents Loss On A "Diminution In Value" or "Replacement Cost" Basis ..................... 12

        3.  Travelers Was Not Obligated To Pay For Business Interruption .......... 13

        4.  At A Minimum, The Court Should Strike Portions Of The Contract Claim ..... 13

    D.  The Court Should Strike Portions Of The Bad Faith Claim ..................... 13

        1.  The Valuation And Business Interruption Allegations Should Be Stricken ..... 14

        2.  The Code Upgrade Allegations Should Be Stricken ....................... 14

        3.  The EUO Allegation Should Be Stricken ....................................... 15

V. CONCLUSION ............................................................................................ 16

MEMO OF P&A'S IN SUPPORT OF TRAVELERS' RULE 12 MOTIONS

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Ackerman v. Northwestern Mut. Life Ins. Co.,
   172 F.3d 467 (7th Cir. 1999) .................................................................... 7

Arroyo v. Wheat,
   591 F. Supp. 136 (D. Nev. 1984) ............................................................ 7

Bischel v. Fire Insurance Exchange,
   1 Cal. App. 4th 1168 (1992) .................................................................... 3

Breashears v. Indiana Lumbermens Mut. Ins. Co.,
   256 Cal. App. 2d 245 (1967) ................................................................ 3, 4

Brizuela v. Calfarm Ins. Co.,
   116 Cal. App. 4th 578 (2004) ................................................................ 15

Denholm v. Houghton Mifflin Co.,
   912 F.2d 357 (9th Cir. 1990) .................................................................. 9

Diamond v. Insurance Co. of North America,
   267 Cal. App. 2d 415 (1968) .......................................................... 2, 3, 12

Gibson v. Gov't Employees Ins. Co.,
   162 Cal. App. 3d 441 (1985) ................................................................ 11

Good v. Prudential Ins. Co. of America,
   5 F. Supp. 2d 804 (N.D. Cal. 1998) (Wilken, J.) .................................... 6

Holder v. Home Savings & Loan Ass'n,
   267 Cal. App. 2d 91 (1968) .................................................................... 9

Holland v. Bank of America,
   673 F. Supp. 1511 (1987) ........................................................................ 8

Hydro-Mill Co., Inc. v. Hayward, Tilton and Rolapp Ins. Associates, Inc.,
   115 Cal. App. 4th 1145 (2004) .............................................................. 11

McAdams v. McElroy,
   62 Cal. App. 3d 985 (1976) .................................................................... 8

McCorkle v. State Farm Fire Ins. Co.,
   221 Cal. App. 3d 610 (1990) .................................................................. 3

Semegen v. Weidner,
   780 F.2d 727 (9th Cir. 1985) .................................................................. 8

MEMO OF P&A'S IN SUPPORT OF TRAVELERS' RULE 12 MOTIONS

Smith v. Allstate Ins. Co.,
    160 F. Supp. 2d 1150 (S.D. Cal. 2001) ................................................................... 8

Swartz v. KPMG LLP,
    476 F.3d 756 (9th Cir. 2007) ................................................................................... 8

U.S. Concord, Inc. v. Harris Graphics Corp.,
    757 F. Supp. 1053 (N.D. Cal. 1991) ........................................................................ 8

Vess v. Ciba–Geigy Corp. USA,
    317 F.3d 1097 (9th Cir. 2003) ................................................................................. 8


**STATUTES**

Insurance Code § 2071 ............................................................................................... 15


**OTHER AUTHORITIES**

CCP § 338(d) ............................................................................................................. 8

CCP § 339(1) ............................................................................................................. 11

Rule 9(b) .......................................................................................................... 1, 7, 8

Rule 12(b)(6) ............................................................................................................. 1

Rule 12(e) .................................................................................................................. 1

Rule 12(f) .................................................................................................................. 1

–iii–

# I. <u>INTRODUCTION AND SUMMARY</u>

This action arises out of an insurance claim for fire damage to plaintiff's property in Dublin, California. Plaintiff sues Travelers for breach of contract, bad faith, fraud, negligent misrepresentation, negligence, and reformation. Pursuant to Rule 12(b)(6) and Rule 12(f), Travelers challenges the complaint as follows:

- The fraud, negligent misrepresentation, negligence, and reformation claims should be dismissed because (1) they are not pleaded with the requisite particularity under Rule 9(b); and (2) they are all barred by the applicable statutes of limitations.

- The breach of contract claim and portions of the bad faith claim should be dismissed, because plaintiff's allegations concerning Travelers' rights and obligations are plainly contrary to the terms of the policy and case law.

In the alternative, Travelers moves for a more definite statement pursuant to Rule 12(e).

# II. <u>BACKGROUND</u>

## A.    <u>The Policy</u>

Travelers issued to plaintiff a policy of commercial property and liability insurance. A copy of the policy is attached to plaintiff's complaint. For the Court's convenience, a copy of the complaint is submitted herewith as Exhibit A to the Declaration of Samuel H. Ruby. Pertinent excerpts of the policy are submitted as Exhibit B to the declaration. Hereinafter, we shall simply refer to Exhibit A as the "complaint" and Exhibit B as "the policy."

The policy concerns plaintiff's real and personal property at 8010 Hollanda Lane in Dublin, California. The policy's "Building and Personal Property Coverage Form" provides that Travelers "will pay for direct physical loss of or damage to Covered Property . . . caused by or resulting from a Covered Cause of Loss." (Policy at B-8.) The "Causes of Loss—Special Form" defines "Covered Cause of Loss" as "RISKS OF DIRECT PHYSICAL LOSS unless the loss is: (1) Excluded in Section B., Exclusions; or (2) Limited in Section C., Limitations." (Id. at B-18.) There is no exclusion or limitation for fire, so fire is a covered peril.

The policy provides two different methods for valuing lost or damaged property. One method is the "replacement cost basis." As conditions precedent to recovery on a replacement cost basis, the policy provides:

> d.    We will not pay on a replacement cost basis for any loss or damage:
> (1)    Until the lost or damaged property is actually repaired or replaced; and
> (2)    Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

(Policy at B-17.) Such conditions are standard and enforceable. See, e.g., Diamond v. Insurance Co. of North America, 267 Cal. App. 2d 415 (1968).

If and when the insured actually replaces the damaged property, thus entitling the insured to recover on a replacement cost basis, that basis is measured as follows:

> e.    We will not pay more for loss or damage on a replacement cost basis than the least of:
> (1)    The Limit of Insurance applicable to the lost or damaged property;
> (2)    The cost to replace, on the same premises, the lost or damaged property with other property:
> (a)    Of comparable material and quality; and
> (b)    Used for the same purpose; or
> (3)    The amount you actually spend that is necessary to repair or replace the lost or damaged property.

(Policy at B-17.) Generally, the applicable measure is Clause (2), the reasonable cost of repairing or replacing the property with comparable property—assuming the insured actually spends that much. If the insured spends less than expected, then under Clause (3), recovery is limited to the amount actually spent. And under Clause (1), Travelers never pays more than the policy limit.

The policy provides that prior to actually repairing or replacing and making claim on a replacement cost basis, the insured may make a *preliminary* claim on a different basis:

> You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides, if you notify us of your intent to do so within 180 days after the loss or damage.

1  (Policy at B-17.)  By endorsement, plaintiff's policy defines actual cash value as "the amount it

2  would cost to repair or replace Covered Property, at the time of loss or damage, with material of

3  like kind and quality, subject to a deduction for deterioration, depreciation and obsolescence."

4  (Id. at B-36.)  In other words, actual cash value is replacement cost *minus* depreciation.

5       The "like kind and quality" proviso found in both the replacement cost basis and actual

6  cash value basis clauses is an important qualification.  Because of that qualification, an insurer

7  is not liable (on either basis) to pay for the cost of *improvements* the insured may make when

8  repairing or replacing the property.  This is true even if improvements are required by law, due

9  to changes in building codes and ordinances.  Bischel v. Fire Insurance Exchange, 1 Cal. App.

10  4th 1168 (1992); McCorkle v. State Farm Fire Ins. Co., 221 Cal. App. 3d 610, 615 (1990);

11  Breashears v. Indiana Lumbermens Mut. Ins. Co., 256 Cal. App. 2d 245, 248 (1967).  Under the

12  policy and the law, replacement cost is the cost of replacing what the insured *had*—nothing

13  more.  Similarly, actual cash value (as defined in this policy) is the cost of replacing what the

14  insured *had*, minus the amount by which that property was depreciated.

15       Of course, changes in building codes often preclude an insured from rebuilding a

16  structure exactly as it was before the loss.  Because the costs of "code upgrades" are not

17  included in replacement cost or actual cash value, a supplemental form of coverage has evolved

18  for them.  Here, by way of a "Property Extra Plus" endorsement, Travelers provided such

19  coverage to plaintiff.  Labeled "Ordinance or Law Coverage," it provides coverage for "the

20  increased cost to repair, rebuild or construct the property cause by enforcement of building,

21  zoning or land use ordinance or law."  (Policy at B-25.)  Like the replacement cost coverage, the

22  Ordinance or Law Coverage is subject to conditions precedent:

23          We will not pay for increased costs under this coverage:

24          (1) Until the property is actually repaired or replaced, at the same location or elsewhere if required by ordinance or law; and

25
        (2)  Unless the repairs or replacement are made as soon as

26  reasonably possible after the loss or damage, not to exceed two years.  We may extend this period in writing during the two years.

27

28

MEMO OF P&A'S IN SUPPORT OF TRAVELERS' RULE 12 MOTIONS

1  (Id. at B-25 and B-26)  Thus, the insured may recover code upgrade costs only in conjunction

2  with a replacement cost claim.  Travelers has no obligation to pay code upgrade costs in

3  advance.

4  **B.**    **The Loss**

5        Plaintiff's property is a former home on a corner lot in a residential area.   Some years

6  ago, it was modified for use as a preschool.  Plaintiff purchased the property in 2000 and

7  continued to operate a preschool there until it was damaged by a fire on November 17, 2004.

8        On the day of the fire, Travelers dispatched adjuster Jim Davis to the scene.  Davis met

9  plaintiff there and discussed the policy's coverages with her.  Within days, Davis issued plaintiff

10  a check for $15,000 as an advance towards her loss of personal property (even though she had

11  not yet provided Travelers with any inventory of what was lost).  Shortly thereafter, the claim

12  was reassigned to adjuster Allyson Delgado.

13        To assist her with her investigation, Delgado consulted with Hohback-Lewin, Inc.

14  (structural engineers) and Walter Springs Construction, Inc. (a general contractor).  On

15  November 22, 2004, Delgado—joined by Chris Morton of Hohback-Lewin and Murat Zilinki of

16  Walter Springs—inspected the property.   It was obvious that the roof, some of the wall framing,

17  a small portion of the floor framing, and all of the interior finishes were completely damaged by

18  the fire.  However, it was not evident that all of the wall and floor framing had been

19  compromised by the fire.

20  **C.**    **The Actual Cash Value Payments**

21        Because Singleton had not yet even begun (much less, completed) repairs, Delgado's

22  immediate task was adjust the loss on an actual cash value basis.  Towards that end, Delgado

23  requested that Zilinki prepare an estimate of the cost of replacing, with "like kind and quality,"

24  the portions of the structure known to be physically damaged.  After a further inspection and

25  some discussion, some items were added to the estimate, which ultimately came to $176,715.59.

26  This was not just an estimate by Zilinki; his company was hoping to get the job and would have

27  done the work for that price.

28

MEMO OF P&A'S IN SUPPORT OF TRAVELERS' RULE 12 MOTIONS

1    In December 2004, while continuing to review the claim, Delgado issued an advance of

2  $50,000 to plaintiff. In February 2005—after waiting a reasonable time for plaintiff to submit

3  her own estimates—Delgado proceeded to adjust the claim based on the Zilinki estimate. After

4  applying depreciation, the policy deductible, and credit for the previous advance, Delgado

5  approved a further actual cash value payment of $104,852.49.

6    Delgado wrote to plaintiff to explain the payment and advise plaintiff that she could

7  make a supplemental claim on a replacement cost basis—including a claim for code upgrade

8  costs—if she were to actually replace the building. With the letter, Delgado enclosed copies of

9  the Morton report and the Zilinki estimate. Plaintiff never responded to that letter, nor to a

10  follow-up letter sent by Delgado in April 2005. Nor, at any time after the fire, did plaintiff

11  request any payments for loss of income or extra expense. Plaintiff was obviously aware that

12  the policy did not provide coverage for such losses.

13  **D.**    **Plaintiff's Delay In Making Repairs**

14    For months, Delgado heard nothing from plaintiff about the repair of the building or any

15  further claim for loss of personal property. In the summer of 2005, various contractors began

16  contacting Delgado, each implying that plaintiff had chosen him to do the reconstruction work.

17  At least one of those contractor's estimate called for a greater scope of work than had been

18  assumed in the Zilinki estimate.

19    In July 2005, Delgado returned to the site to refresh her recollection of the extent of the

20  damage and see if the property had deteriorated since the fire. During her reinspection, Delgado

21  met with plaintiff. Delgado attempted to impress upon plaintiff that she needed to choose a

22  contractor and start repairs before Travelers could entertain a supplemental claim under the

23  replacement cost and code upgrade provisions of the policy.

24    After the meeting, Delgado was contacted by yet another contractor, Mike Snow,  who

25  represented that he was in negotiations with plaintiff. Delgado offered to meet with Snow to go

26  over Snow's quote and try to reach agreement on the necessary scope of work and a reasonable

27  price. However, Snow refused to meet with Delgado.

28

1  **E.    Subsequent Events**

2      On September 13, 2005, Delgado received a letter from Kevin Dawson, a public

3  adjuster, advising that plaintiff had retained him to represent her in connection with the claim.

4  So began an odyssey that brought Travelers nothing but frustration and undue expense.  The full

5  tale cannot be told here, but suffice it to say that after more than two years, plaintiff had still not

6  even begun repairs; she continued to decline requests for a meeting with her and Snow; and

7  when the claim proceeded to an appraisal at her request, she withheld relevant documents until

8  the eve of the appraisal hearing.  Then, after the appraisal award was not to her liking, she

9  rejected it and filed this lawsuit.

10  **F.    The Complaint**

11      Plaintiff filed her complaint in state court on February 19, 2008.  Against Travelers,

12  plaintiff asserts no less than six causes of action—reformation, breach of contract, breach of the

13  implied covenant of good faith and fair dealing ("insurance bad faith"), fraud, negligent

14  misrepresentation, and negligence.  Plaintiff also sues Delgado, personally, for intentional

15  infliction of emotional distress.  However, Delgado is a sham defendant, because she did

16  nothing "outrageous"—and even if she did, the claim against her (which arises out of the events

17  in 2004 and 2005) it time-barred.[1]

18      In addition, plaintiff sues Travelers' consultants (Morton and his employer, Hohback-

19  Lewin; Zilinki and his employer, Walter Springs; and Isam Hasenin, who testified as an expert

20  witness at the appraisal hearing).  She also sues her broker, Uren Harrison Kennedy Insurance

21  Agency; the former holder of the mortgage on her property, Textron Financial; and the current

22  mortgage holder, Bank of the West.  All of those parties are also sham defendants, either

23  because there is no cause of action against them under California law, or because any such cause

24  of action is time-barred.

25      Because those other defendants (some of whom are California citizens) are fraudulently

26  joined, their citizenship does not destroy diversity jurisdiction.  See, e.g., Good v. Prudential

27  Ins. Co. of America, 5 F. Supp. 2d 804 (N.D. Cal. 1998) (Wilken, J.) (denying motion to

28

---

[1] Delgado has not been served.

1    remand). Accordingly, Travelers exercised its right to remove this action to this Court. Having

2    filed no answer or motion in state court prior to removal, Travelers now presents to this Court a

3    consolidated motion to dismiss and/or strike and/or require a more definite statement of

4    plaintiff's complaint.

5    **III. <u>MOTION STANDARD</u>**

6    Prior to filing a responsive pleading, a defendant may move for dismissal on the grounds

7    that the complaint fails to state a cause of action upon which relief can be granted. FRCP

8    12(b)(6). A defendant may also move to strike "any redundant, immaterial, impertinent, or

9    scandalous matter" alleged in the complaint. FRCP 12(f). A defendant may also move for a

10    "more definite statement of a pleading" if the pleading is "so vague or ambiguous that the party

11    cannot reasonably prepare a response." FRCP 12(e).

12    **IV. <u>ARGUMENT</u>**

13    **A.**    <u>**The Fourth, Fifth, And First Causes Of Action Should Be Dismissed**</u>

14    **1.**    **The Claims Are Not Stated With Requisite Particularity**

15    Plaintiff brings several causes of action relating to the policy's lack of business

16    interruption coverage. In her fourth cause of action (fraud), she alleges fraudulently induced her

17    to purchase the policy with intentional misrepresentations. In her fifth cause of action, she

18    incorporates the same allegations of false representations but downgrades Travelers' alleged

19    state of mind from intentional misrepresentation to negligent misrepresentation. In her first

20    cause of action (reformation), she again alleges that Travelers made certain representations, but

21    in this case, *with* the intent to perform—and that it is just a mistake (which the Court should

22    correct) that the policy, as issued, does not contain business interruption coverage.

23    "In alleging fraud or mistake, a party must state with particularity the circumstances

24    constituting the fraud or mistake." FRCP 9(b). This rule requires that plaintiff "allege the who,

25    what, where, and when of the alleged fraud." <u>Ackerman v. Northwestern Mut. Life Ins. Co.</u>,

26    172 F.3d 467, 469 (7th Cir. 1999). For example, the defendant must also identify the actual

27    source of the fraud (i.e., whether the fraudulent statement was oral or written and, if written, the

28    particular documents involved). <u>Arroyo v. Wheat</u>, 591 F. Supp. 136, 139 (D. Nev. 1984).

1    Where several defendants are sued for fraud, the plaintiff must "inform each defendant

2    separately of the allegations surrounding his alleged participation in the fraud." Swartz v.

3    KPMG LLP, 476 F.3d 756, 764–765 (9th Cir. 2007); Vess v. Ciba–Geigy Corp. USA, 317 F.3d

4    1097, 1106 (9th Cir. 2003).[2]

5        Plaintiff's complaint fails to meet those requirements.  At ¶ 50, plaintiff alleges that

6    through "employees, officers, directors, representatives and agents," Travelers represented that

7    it "would pay for fire damage to the insured building, its contents, and for loss of income and

8    additional expenses should an insured peril render the building uninhabitable."  Nowhere in the

9    complaint does plaintiff name the "employees, officers, directors, representatives and agents"

10   who made that alleged representation.  Nowhere in the complaint does plaintiff allege with any

11   particularity the date of the representation.  Nowhere in the complaint does plaintiff allege

12   whether the representation was oral or written (nor, if written, does plaintiff attach or identify

13   the writing).  Thus, the claim fails the "who, what, where, and when" test and must be dismissed

14   pursuant to FRCP 9(b).[3]

15       **2.    The Claims Are Time-Barred**

16       Under California law, the statute of limitations on claims for relief based on fraud or

17   mistake is three years.  CCP § 338(d).  Like Rule 9(b)'s heightened pleading requirements, that

18   statute of limitations applies not only to claims for fraud per se but also to claims for negligent

19   misrepresentation and reformation.  Holland v. Bank of America, 673 F. Supp. 1511, 1515

20   (1987); McAdams v. McElroy, 62 Cal. App. 3d 985, 1001 (1976).

21       Plaintiff alleges that Travelers fraudulently induced her to purchase the policy.  As

22   revealed on its face, that policy was issued on September 19, 2003 for the period of November

23   23, 2003 to November 23, 2004.  (Policy at B-2.)  Thus, the alleged fraudulent inducement must

24

---

25   [2] Because Rule 9(b) applies not only to fraud, per se, but also "mistake," the heightened
     pleading requirements apply not only to claims for intentional misrepresentation but also claims
26   for negligent misrepresentation and reformation.  U.S. Concord, Inc. v. Harris Graphics Corp.,
     757 F. Supp. 1053, 1059 (N.D. Cal. 1991); Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir.
27   1985); Smith v. Allstate Ins. Co., 160 F. Supp. 2d 1150, 1152 (S.D. Cal. 2001).

28   [3] At the very least, the Court should require a *more definite statement* of the claim.

1   have occurred prior to September 19, 2003—more than three years before plaintiff filed this

2   action.  Similarly, any *negligent* misrepresentation or mistake in assembling the policy occurred

3   more than three years before suit was filed.

4           Granted, the statute of limitations on fraud and mistake claims is subject to a "discovery

5   rule," whereby the running of the statute tolls until the plaintiff discovers (or should reasonably

6   have discovered) the fraud or mistake.  CCP § 338(d).  However, "A plaintiff on a fraud claim

7   brought over three years after the commission of the fraud must 'affirmatively excuse his failure

8   to discover the fraud within three years after it took place, by establishing facts showing that he

9   was not negligent in failing to make the discovery sooner and that he had no actual or

10  presumptive knowledge of facts sufficient to put him on inquiry.'"  Denholm v. Houghton

11  Mifflin Co., 912 F.2d 357, 362 (9th Cir. 1990) (citations omitted).  "Such affirmation must be in

12  the complaint."  Id.  The complaint must allege "the time and manner of the discovery of the

13  fraud, and the facts which excuse the plaintiff's failure to discover the fraud sooner."  Id. (citing

14  Holder v. Home Savings & Loan Ass'n, 267 Cal. App. 2d 91, 110 (1968).)  "This rule is strictly

15  adhered to," and "poorly pleaded fraud claims" will be dismissed.  Id.

16          Plaintiff alleges that Travelers fraudulently induced her to purchase the policy with a

17  false representation that it would provide coverage for loss of income and extra operating

18  expenses (i.e., "business interruption coverage") in the event that her operations at the property

19  were suspended by covered damage.  Plaintiff does not allege when or how she first discovered

20  that the policy does not provide business interruption coverage.  Nor does she allege why she

21  reasonably did not discover the lack of coverage sooner.   Those omissions are fatal.

22          Travelers denies that plaintiff ever asked for business interruption coverage and that

23  Travelers defrauded her or made some mistake in the course of assembling the policy.  But

24  whatever happened when she procured the policy, plaintiff will be unable to amend to allege

25  that only since February 19, 2005 (i.e., in the three year before suit was filed) was she able to

26  discover the policy's lack of business interruption coverage.  The fire occurred on November

27  17, 2004.  Plaintiff's need for benefits for loss of income and extra operating expenses would

28  have been immediate.  Yet plaintiff made no *request* for business interruption benefits.  One can

MEMO OF P&A'S IN SUPPORT OF TRAVELERS' RULE 12 MOTIONS

1  only conclude that she *knew*, on the date of the fire or shortly thereafter, that the policy provides

2  no business interruption coverage.[4]

3  ### 3.    At A Minimum, The Court Should Strike Portions Of The Claim

4  In addition to alleging false promises of business interruption coverage, plaintiff alleges

5  that Travelers (1) represented that it would pay for fire damage to the insured building and its

6  contents, (2) that the representation was false; but that (3) believing it was true, she did not

7  purchase another policy "that would have covered damage caused by fire to the insured building

8  [and] its contents." (Complaint, ¶¶ 50-53.)  Those allegations make no sense.  As discussed

9  above, Travelers' policy *does* cover fire.  Travelers has never asserted otherwise, and elsewhere

10  in her complaint, plaintiff concedes that Travelers made payments on the claim. (See Complaint

11  at 8:1-3.)  Thus, Travelers' alleged representation that the policy would cover fire was *true*.

12  Wherefore, if the Court does not dismiss the fraud claim entirely, the Court should strike

13  Page 10, lines 12-13 ("...for fire damage to the insured building, its contents, and..."; lines 15-

14  16 ("...for damage caused by fire to the building, its contents, or..."); lines 20-21 ("...for

15  damage caused by fire to the insured building, its contents and..."); and lines 25-26 ("...damage

16  caused by fire to the insured building, its contents and...").

17  ### B.    The Seventh Cause Of Action (Negligence) Should Be Dismissed

18  Though styled as a negligence claim, plaintiff's seventh cause of action repeats her

19  allegations of fraud and misrepresentation. (Complaint, ¶¶ 78-80.)  Insofar as the seventh cause

20  of action covers the same ground as her claims for fraud, negligent misrepresentation, and

21  reformation, it should be dismissed for the reasons discussed above.

22  Almost in passing—at ¶ 83—plaintiff appears to allege that Travelers had (and

23  breached) a duty to "determine the necessary kinds and amounts of insurance [plaintiff] needed

24  to protect [her] financial interest in the building, its contents [and] the potential loss of earnings

25  and extra expenses."  However, an insurance company is not obligated to provide advice to a

26

---

27  [4] Indeed, notes written by Jim Davis, the first adjuster assigned to the claim, indicate that he discussed plaintiff's policy—including the lack of business interruption coverage—with her

28  during their meeting at the site on the day of the fire.  It is also known that plaintiff had conversations with her broker between the date of the fire and February 18, 2005.

1   prospective insured or issue a policy that provides greater coverage than what the insured

2   specifically requested. <u>Gibson v. Gov't Employees Ins. Co.</u>, 162 Cal. App. 3d 441 (1985).  In

3   <u>Gibson</u>, the court explained:

> Plaintiffs have not cited, and we have not found, any case which
> extends either a fiduciary duty or a covenant of good faith and fair
> dealing owed by an insurer or an insurance company to its insured
> beyond the terms of the insurance contract in force between them .
> . . . an insured person's initial decision to obtain insurance and the
> corresponding decision of an insurer to offer coverage remain, at
> the inception of the contract at least, an arm's length transaction to
> be governed by traditional standards of freedom of contract.

9   <u>Id</u>. at 448.  Given that Travelers did not owe the alleged duty of care, Travelers cannot be liable

10  for negligence.

11      Moreover, even if Travelers somehow had a duty of care to give plaintiff more coverage

12  than she requested, plaintiff's negligence would still fail—because it is time-barred.  The statute

13  of limitations on an action "not founded upon an instrument in writing" is two years.  CCP §

14  339(1).  This is the statute that governs claims against an insurance *broker* for professional

15  negligence.  <u>Hydro-Mill Co., Inc. v. Hayward, Tilton and Rolapp Ins. Associates, Inc.</u>, 115 Cal.

16  App. 4th 1145 (2004) (two-year statute of limitations applied to claim against insurance broker

17  for negligently failing to insure several of the insured's locations).  If there existed a cause of

18  against an insurance *company* for such negligence, it would be governed by the same statute.

19  As discussed above, the policy was issued in 2003, and plaintiff does not allege delayed

20  discovery of the policy's alleged shortcomings.  Thus, if for no other reason, her negligence

21  claim should be dismissed as untimely.

22  **C.    <u>The Second Cause Of Action (Breach of Contract) Should Be Dismissed</u>**

23      The statute of limitations on claims for breach of a written contract is four years.  The

24  loss occurred in November 2004, so Travelers' handling of the claim occurred wholly within

25  four years of the filing of this suit.  Accordingly, Travelers concedes that unlike the claims

26  previously discussed, the breach of contract claim is timely.  However, for other reasons, it still

27  fails to state a cause of action upon which relief may be granted.

28

MEMO OF P&A'S IN SUPPORT OF TRAVELERS' RULE 12 MOTIONS

1    **1.    Travelers Was Not Obligated To Pay For The Building Damage On A**
2    **"Diminution In Value" or "Replacement Cost" Basis**

3    Plaintiff alleges three breaches of the contract. First, she alleges that Travelers "failed

4    and refused to pay Plaintiff her losses as measured by the diminution in value and the

5    replacement costs of her insured building." (Complaint, ¶ 29.) However, Travelers was not

6    obligated to pay for the building damage by either measure.

7    As discussed above, it is a condition precedent to recovery on a replacement cost basis

8    that the insured actually replace the property. (Policy at B-17); Diamond v. Insurance Co. of

9    North America, 267 Cal. App. 2d 415 (1968). Otherwise, the insured is limited to recovering on

10    an actual cash value basis. (Policy at B-17). Indeed, elsewhere in her complaint, plaintiff

11    concedes that those were the "two options" here. (Complaint, ¶ 116.) Diminution in market

12    value is *never* the measure of a loss under Travelers' policy.

13    Plaintiff did not replace the building. She blames this on the alleged fact that after she

14    endorsed one of Travelers' actual cash value payments over to her mortgagee, Textron

15    Financial, Textron applied the proceeds to the loan balance instead of releasing them back to

16    plaintiff so that she could use the money to pay contractors. (Complaint, ¶¶ 114-115, 124.)

17    Travelers denies that Textron did anything wrong—much less, did anything that necessarily

18    precluded plaintiff from rebuilding.[5] But even if plaintiff's claim against Textron is valid, it is

19    Textron who will have to answer for it. *Travelers* did not breach *its* contract with plaintiff by

20    paying the claim on an actual cash value basis instead of on a replacement cost basis.

21    **2.    Travelers Was Not Obligated To Pay For The Contents Loss On A**
    **"Diminution In Value" or "Replacement Cost" Basis**

22    Travelers' second alleged breach of contract is that it "failed and refused to pay Plaintiff

23    her loss as measured by the diminution in value and the replacement costs of her personal

24    property in the insured building." (Complaint, ¶ 30.) Again, diminution in market value is

25

26

27    [5] Textron had a valid encumbrance on the property, and the mortgage agreement expressly
allowed it to apply insurance proceeds to the loan balance. Moreover, because plaintiff's
28    principal debt was reduced, plaintiff was free to take out a new, second loan to finance
reconstruction.

– 12 –

1 | never a measure of loss under Travelers' policy. Again, Travelers had no duty to pay for loss of

2 | property on a replacement cost basis unless and until the property was actually replaced.

3 | Plaintiff does not allege that she replaced her personal property—at least, not at a cost in excess

4 | of the $15,000 advanced by Travelers just days after the fire.[6]

5 |       **3.    Travelers Was Not Obligated To Pay For Business Interruption**

6 |       Travelers' third and final alleged breach of contract is that it "failed and refused to pay

7 | Plaintiff her "loss of income and additional business expenses incurred because the fire rendered

8 | her preschool uninhabitable." (Complaint, ¶ 31.) However, the policy does not provide for

9 | business interruption coverage. It is precisely for that reason that plaintiff brings claims for

10 | reformation, fraud, negligent misrepresentation, and negligence. As discussed above, all of

11 | those claims fail. As they fail, so fails plaintiff's allegation that Travelers breached the written

12 | contract by not paying business interruption benefits.

13 |       **4.    At A Minimum, The Court Should Strike Portions Of The Contract Claim**

14 |       In the event that the Court finds that some parts (only some parts) of the breach of

15 | contract claim fail, the Court should strike the impertinent allegations so that the parties will not

16 | have to devote discovery and further motion practice to them.

17 | **D.    The Court Should Strike Portions Of The Bad Faith Claim**

18 |       As has become *de rigueur* in California, plaintiff not only brings a claim for breach of

19 | alleged express provisions of the policy but also a claim for breach of the *implied* covenant of

20 | good faith and fair dealing. In her "bad faith" claim, she recites a litany of alleged misconduct

21 | by Travelers. Most of the allegations are "boilerplate" obviously copied from a template.

22 |

23 |

_____

24 | [6] Plaintiff never responded to Travelers' letter of April 2005 requesting documentation in
support of any further claim for loss of personal property. At her examination under oath in

25 | 2006, she did not produce any such documentation and did not ask for any more money. On the
contrary, her public adjuster advised Travelers that plaintiff accepted the $15,000 as a full

26 | settlement of the personal property claim. And indeed, when there was an appraisal at
plaintiff's request in 2007, she presented no evidence concerning her personal property loss and

27 | did not ask the appraisers to value that loss. Let fair warning be given now that any attempt by
plaintiff to amend her complaint to further allege a breach of contract with respect to the

28 | personal property losses will expose her to a Rule 11 motion.

1   Travelers will deal with those allegations, based on the evidence, in good time.  However, a few

2   of the allegations can and should be stricken now as a matter of law.

3       **1.    The Valuation And Business Interruption Allegations Should Be Stricken**

4       In her bad faith claim, plaintiff repeats or embellishes on allegations in her breach of

5   contract claim concerning the policy's valuation clauses and lack of business interruption

6   coverage.  She alleges that Travelers agreed to pay:

7               ...the diminution of the market value and the replacement cost
                value of the insured building and the personal property in the
8               building, and that Travelers and Does 1-30 would pay for the loss
                of income and the increase of businesses [sic] expenses that
9               resulted from a business interruption resulting from a fire causing
10              the insured building to become uninhabitable.

11  (Complaint at 6:14-17.)  She also alleges:

12              In breach of the terms of Travelers' and Does 1-30's written
                policy of insurance and/or the Agreement as reformed by this
13              Court, Travelers and Does 1-30 failed and refused to pay Plaintiff
                the reasonable cost to repair and replace the insured building,
14              personal property, the loss of income and the increase in expenses
                for which the insurance provided in the event of a covered peril.
15

16  (Id. at ¶ 40.)  As discussed above, the policy does not obligate Travelers to adjust losses on the

17  basis of "diminution of market value," and because plaintiff did not actually replace the

18  building, she is not entitled to recovery on a replacement cost basis.  Also as discussed above,

19  the policy does not include business interruption coverage, and her claims for reformation,

20  fraud, misrepresentation, and negligence are inadequately stated and in any event untimely.

21      **2.    The Code Upgrade Allegations Should Be Stricken**

22      Plaintiff levies a number of accusations concerning an alleged claim for "code upgrade"

23  or "code improvement" costs.  She alleges that Travelers wrongfully "withheld payment of the

24  code improvements needed to repair the building." (Complaint at 7:23-25.)  She alleges that

25  Travelers claimed "without any reasonable basis that Plaintiff was not entitled to code

26  improvements that were mandated by the building department and failing to pay the actual cash

27  value for code upgrades." (Id. at 7:26-28.)  And she alleges that Travelers failed to affirm or

28  deny coverage for "code compliance repairs" within a reasonable time.  (Id. at 8:7-8.)

MEMO OF P&A'S IN SUPPORT OF TRAVELERS' RULE 12 MOTIONS

1    Despite numerous explanations by Travelers over the last three-and-half years, plaintiff

2  still does not understand the policy's "code upgrade" coverage. As discussed above, under the

3  policy and California law, costs of anticipated code upgrades are excluded from the calculation

4  of replacement cost and actual cash value because those measures look to what the insured *had*,

5  not to *improvements* she will have to make if she rebuilds. Although Travelers' policy provides

6  code upgrade coverage as a supplemental coverage (a fact it has never denied), the policy is

7  clear that such benefits are payable only if and when code upgrade costs are incurred—not in

8  advance. (Policy at B-25.) Plaintiff's allegations to the contrary are incorrect as a matter of

9  law.

10    **3.    The EUO Allegation Should Be Stricken**

11    Plaintiff complains that Travelers misrepresented the meaning of pertinent provisions in

12  the policy of insurance by, among other things, "denying liability for Plaintiff's covered losses

13  on the ground that she failed to sign her examination under oath." (Complaint at 7:12-14.) An

14  "examination under oath" is similar to a deposition. It is a tool for investigation of claims that is

15  provided for in most property insurance policies, and it is expressly authorized by Insurance

16  Code § 2071. The pertinent clause of plaintiff's policy states:

17        3.    Duties In The Event Of Loss Or Damage

18        You must see that the following are done in the event of loss of or
          damage to Covered Property:

19                                    * * * * *

20        g.    If requested, permit us to question you under oath at such
          times as may be reasonably required about any matter relating to
21        this insurance or your claim, including your books and records. In
          such event, *your answers must be signed*.

22  (Policy at B-13.) (emphasis added). California law is crystal clear that an insured's failure to

23  comply with an examination under oath clause is grounds for denial of a claim. See, e.g.,

24  Brizuela v. Calfarm Ins. Co., 116 Cal. App. 4th 578 (2004).

25    Here, after initially refusing to submit to an examination under oath, plaintiff eventually

26  did so (although even then, she did not provide all information and documents requested). For

27  many months thereafter, and despite repeated requests, she refused to sign the transcripts of the

28

1  examination.  Plaintiff's allegation that she had no duty to sign the transcripts is contrary to the

2  policy terms and California law.

3  ## V. <u>CONCLUSION</u>

4      For the foregoing reasons, the Court should dismiss the First, Second, Fourth, Fifth, and

5  Seventh Causes Of Action.  In the alternative, the Court should strike aforementioned portions

6  of those causes of action and/or require a more definite statement.  The Court should also strike

7  the aforementioned portions of the Third Cause of Action.

8

9  DATED:  April 14, 2008

10          BULLIVANT HOUSER BAILEY PC

11

12          By

13          Samuel H. Ruby

14          Attorneys for Defendant The Travelers Indemnity
        Company of Connecticut

15  10504087.1

16

17

18

19

20

21

22

23

24

25

26

27

28