Samuel H. Ruby (CSB#191091)
Judith A. Whitehouse (CSB#198176)
Paris Scott (CSB#248899)
BULLIVANT HOUSER BAILEY PC
601 California Street, Suite 1800
San Francisco, California 94108
Telephone: 415.352.2700
Facsimile: 415.352.2701
samuel.ruby@bullivant.com
judith.whitehouse@bullivant.com
paris.scott@bullivant.com

*Attorneys for Defendant*
Travelers Indemnity Company of Connecticut

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| LA VELDA SINGLETON dba LOVE AND CARE PRESCHOOL,<br><br>Plaintiff,<br><br>vs.<br><br>TRAVELERS INDEMNITY COMPANY OF CONNECTICUT, et al.,<br><br>Defendants. | Case No.: CV 08 1852 (CW)<br><br>**REPLY IN SUPPORT OF TRAVELERS' CONSOLIDATED RULE 12 MOTIONS:**<br><br>**(a) TO DISMISS (FRCP 12(b)(6);**<br>**(b) TO STRIKE (FRCP 12(f)); and/or**<br>**(c) FOR A MORE DEFINITE STATEMENT (FRCP 12(e))**<br><br>Hearing Date: Vacated (was 5/22/08; motion taken under submission) |

**TABLE OF CONTENTS**

I. INTRODUCTION AND SUMMARY ..................................................................................1
II. ISSUES PRESENTED ...........................................................................................................1
    A. Valuation of the Property Damage ..............................................................................1
    B. Entitlement To Advance Payment For Code Upgrades ..............................................2
    C. Entitlement to Business Interruption Coverage ..........................................................2
    D. Other Issues .................................................................................................................3
III. ARGUMENT ........................................................................................................................3
    A. The Fourth Cause Of Action (Fraud) Should Be Dismissed.......................................3
    B. The Fifth Cause Of Action (Negligent Misrepresentation) Should Be Dismissed .....5
    C. The First Cause Of Action (Reformation) Should Be Dismissed ...............................6
    D. The Seventh Cause Of Action (Negligence) Should Be Dismissed ...........................7
    E. The Second Cause Of Action (Breach of Contract) Should Be Dismissed ................8
        1. The Court Should Strike Paragraphs 29-30.........................................................8
        2. The Court Should Strike Paragraph 31 ................................................................9
        3. After Striking Paragraphs 29-31, The Court Should Dismiss The Claim  9
    F. The Court Should Strike Portions Of The Bad Faith Claim .....................................10
        1. The Court Should Strike Page 6, Lines 14-17 and ¶ 40 ....................................10
        2. The Court Should Strike Page 7, Lines 23-28 and Page 8, Lines 7-8 ..............11
        3. The Court Should Strike Page 7, Lines 12-14 ...................................................11
IV. CONCLUSION ...................................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Ackerman v. Northwestern Mut. Life Ins. Co.,
　172 F.3d 467 (7th Cir. 1999) .................................................................................. 4

Arroyo v. Wheat,
　591 F. Supp. 136 (D. Nev. 1984) ........................................................................... 4

Denholm v. Houghton Mifflin Co.,
　912 F.2d 357 (9th Cir. 1990) ............................................................................. 4, 5

Diamond v. Insurance Co. of North America,
　267 Cal. App. 2d 415 (1968) ............................................................................ 8, 11

Gibson v. Gov't Employees Ins. Co.,
　162 Cal. App. 3d 441 (1985) .................................................................................. 7

Holder v. Home Savings & Loan Ass'n,
　267 Cal. App. 2d 91 (1968) .................................................................................... 4

Hydro-Mill Co., Inc. v. Hayward, Tilton and Rolapp Ins. Associates, Inc.,
　115 Cal. App. 4th 1145 (2004) ............................................................................... 8

McAdams v. McElroy,
　62 Cal. App. 3d 985 (1976) .................................................................................... 6

Walker v. Pacific Indem. Co., 183 Cal. App. 2d 513 (1960) ......................................... 6


**OTHER AUTHORITIES**

Rule 9(b) ......................................................................................................................... 4

Rule 9(b)'s ...................................................................................................................... 6

Rule 12 ........................................................................................................................... 1

# I. INTRODUCTION AND SUMMARY

Plaintiff's "opposition" to Travelers' consolidated Rule 12 motions is really no opposition at all. Essentially, it is one long plea for leave to amend. Effectively conceding that her current complaint is defective for the reasons identified by Travelers, plaintiff makes little attempt to justify the current allegations. Instead, she asserts that there are various *other* legal theories and facts that she *could* allege if the Court will indulge her.

Had plaintiff asked, Travelers would have stipulated to leave to amend so that she could clean up her complaint. Unfortunately, by "opposing" the motions—albeit only in token fashion—plaintiff forces Travelers to file this reply brief. Worse, plaintiff forces the Court to rule on the motions. The Court should grant them.[1]

# II. ISSUES PRESENTED

Rather than stick to what is in question here—the allegations made by plaintiff in her of complaint—plaintiff's brief recites an almost entirely *different* theory of the history of this insurance claim and what Travelers allegedly did wrong. Travelers interprets this sea change as a sign that its motion has shaken plaintiff's confidence in the case she originally intended to present. In any event, Travelers need not debate the merits of plaintiff's new factual and legal allegations, because they are not yet in any *pleading* that Travelers may have to answer. Lest there be some confusion, however, Travelers will briefly restate what the lawsuit is *currently* about, given the allegations *currently* in the complaint.

## A. Valuation of the Property Damage

There is no dispute that plaintiff's building and its contents were damaged by a fire. There is no dispute that the policy includes property damage coverage. There is no dispute that fire is a covered peril. The only dispute here is whether, in paying for the property damage, Travelers applied the correct *measure* of loss.

---

[1] Recognizing that leave to amend is liberally granted—once, at least—Travelers will not argue that leave to amend should be denied. However, Travelers doubts that plaintiff can *effectively* amend to state valid causes of action. Travelers reserves the right to renew its motions if plaintiff files an amended complaint that does not cure the deficiencies in the current complaint.

Travelers paid for the property damage on an "actual cash value" basis. In her complaint, plaintiff alleges that Travelers should have paid for the damage on a replacement cost basis. (Complaint, 29-30, 38, 40.) In the alternative, plaintiff seems to allege that even if it was proper for Travelers to pay on an actual cash value basis, Travelers should have equated actual cash value with diminution in market value. (Id.) These disputes over the interpretation of the policy's valuation clauses present issues of law, which the Court can resolve now. Travelers' motions ask the Court to strike the aforementioned paragraphs.

### B.  Entitlement To Advance Payment For Code Upgrades

Plaintiff contends that if she rebuilds, she will not be able to rebuild the school exactly as it was before the fire, due to the requirements of current building codes. There is no dispute that the policy includes code upgrade coverage. There is no dispute that current building codes would require at least some changes to the building's features. Had plaintiff rebuilt the school and actually incurred code upgrade costs, Travelers would have paid for them, subject to verification that the upgrades were indeed required (and subject to policy limits).

However, because plaintiff has not rebuilt the school and incurred any code upgrade costs, Travelers has not yet issued any payment under the code upgrade coverage. In her complaint, plaintiff contends that this amounts to bad faith. (Complaint at 7:23-28, 8:7-8.) Whether Travelers had a duty to pay for code upgrades in advance is a question of law, which the Court can resolve now. Travelers' motions ask the Court to strike the aforementioned allegations.

### C.  Entitlement to Business Interruption Coverage

The policy does not include business interruption coverage, i.e., coverage for loss of income and extra operating expenses. Knowing this, plaintiff never even submitted a claim for business interruption. From the date of the fire (November 17, 2004) through the filing of this lawsuit (February 18, 2008), plaintiff never submitted to Travelers a single document evidencing a loss of income or any extra expenses. Nor did she even *ask* Travelers for a payment towards her alleged loss of income and extra expenses. Thus, imagine Travelers' surprise, upon being served with plaintiff's complaint, by its allegations that plaintiff "provided

1  . . . proof of loss . . . for her loss of income and extra expense" and that Travelers "failed and
2  refused to pay Plaintiff" for such losses. (Complaint, 24, 31; see also  38, 40.)
3      Apparently, plaintiffs' new lawyers have convinced her to try to make a business
4  interruption claim more than three years after the fire, even though the policy does not include
5  business interruption coverage. By way of her first cause of action, plaintiff would have the
6  Court equitably *reform* the policy to include such coverage. Alternatively, by way of her fourth,
7  fifth, and/or seventh causes of action, plaintiff seeks to hold Travelers liable for *damages* based
8  on the lack of such coverage. Travelers moves to dismiss those causes of action on the grounds
9  that they are not pleaded with requisite particularity and that they are time-barred.

**D.    Other Issues**

11      In her second cause of action for bad faith, plaintiff alleges that Travelers delayed the
12  actual cash value payments and mishandled the claim in various other ways. Travelers denies
13  the allegations, but because most of them present issues of fact, Travelers does not move to
14  dismiss the entire claim. Plaintiff argues that her bad faith claim is timely, but Travelers'
15  motion did not argue otherwise.

### III. ARGUMENT

**A.    The Fourth Cause Of Action (Fraud) Should Be Dismissed**

18      Plaintiff makes no effort to defend the fraud claim that appears in her complaint. She
19  effectively concedes that as currently pleaded, her fraud claim fails. Plaintiff suggests that she
20  could state an entirely different fraud claim, but at most, that argument buys her leave to amend.
21  It does not defeat Travelers' motion to dismiss her current claim.
22      Currently, the complaint alleges a claim for fraudulent inducement. Specifically, it
23  alleges that prior to purchasing the policy at issue, "Travelers and Does 1-30 through their
24  employees, officers, directors, representatives and agents" represented to plaintiff "that
25  Travelers would pay for fire damage to the insured building, its contents, and for loss of income
26  and additional expenses should an insured peril render the insured building uninhabitable."
27  (Complaint,

50.) It alleges that plaintiff believed those representations to be true, and that in reliance on those representations, she purchased the policy. (Id. at 52-54.) It alleges that in fact, the representations were false, and that if she had known the representations were false, plaintiff would not have purchased the policy. (Id. at 51, 53.)

Plaintiff does not dispute that Rule 9(b) requires a claimant to "allege the who, what, where, and when of the alleged fraud." Ackerman v. Northwestern Mut. Life Ins. Co., 172 F.3d 467, 469 (7th Cir. 1999). Nor does she dispute that a claimant must allege the actual source of the fraud (i.e., whether the fraudulent statement was oral or written and, if written, the particular documents involved). Arroyo v. Wheat, 591 F. Supp. 136, 139 (D. Nev. 1984). Plaintiff does not dispute that her complaint fails to name the Travelers employee or agent who allegedly said something to her, before the policy was issued, that induced her to purchase it. Nor does plaintiff dispute that her complaint fails to identify the date, place, or form of any such communications.

Instead, plaintiff argues that even if Travelers made no representations at all (fraudulent or otherwise) prior to issuing the policy, Travelers could be liable for fraud if the promises "in the policy itself" were false. However, the complaint does not state a claim for fraud based on the representations in the policy. Rather, it attempts to state a claim based on representations allegedly made *outside* the policy, *before* it was issued. That attempt fails for lack of particularity. For that reason alone, it should be dismissed.

In addition, it should be dismissed based on the statute of limitations. As explained in Travelers' motion, "A plaintiff on a fraud claim brought over three years after the commission of the fraud must 'affirmatively excuse his failure to discover the fraud within three years after it took place, by establishing facts showing that he was not negligent in failing to make the discovery sooner and that he had no actual or presumptive knowledge of facts sufficient to put him on inquiry.'" Denholm v. Houghton Mifflin Co., 912 F.2d 357, 362 (9th Cir. 1990) (citations omitted). "Such affirmation must be in the complaint." Id. The complaint must allege "the time and manner of the discovery of the fraud, and the facts which excuse the plaintiff's failure to discover the fraud sooner." Id. (citing Holder v. Home Savings & Loan

-4-

Ass'n, 267 Cal. App. 2d 91, 110 (1968).) "This rule is strictly adhered to," and "poorly pleaded fraud claims" will be dismissed. Id.

From Travelers' point of view, the most significant allegation of the fraud claim is that on an unspecified date prior to issuing the policy, at an unspecified place, an unnamed Travelers representative told plaintiff that the policy would cover "loss of income and additional expenses" (i.e., business interruption). In fact, the policy does not cover business interruption. Even assuming that plaintiff did not discover that fact until the fire occurred in November 2004, the complaint alleges no facts that might excuse her failure to file suit within three years of that discovery.[2] Thus, insofar as it concerns the policy's lack of business interruption coverage, plaintiff's fraud claim must be dismissed as untimely.

If the Court grants leave to amend, the Court should admonish plaintiff as follows. If plaintiff still wishes to pursue a fraud claim based on oral or written statements that preceded the issuance of the policy, plaintiff must amend to identify by name the person or person who made the statements. She must identify when, where, and how the statements were made. And she must identify when she discovered that the statements were false, and why she could not reasonably have discovered their falsity earlier.

If instead plaintiff now wishes to rely instead on representations *in the policy* and *only* on such representations (as her opposition brief hints), then plaintiff should identify precisely which promise or promises stated in the policy were allegedly false. Plaintiff should state precisely when she discovered that the promises were false, and why she could not reasonably have discovered their falsity earlier. And plaintiff should eliminate the allegations concerning representations made *before* the policy was issued.

**B.     The Fifth Cause Of Action (Negligent Misrepresentation) Should Be Dismissed**

Plaintiff's fifth cause of action differs from her fraud claim only in that it alleges that misrepresentations made before the policy was issued were negligent, as opposed to intentional.

---

[2] Although plaintiff correctly points out that a cause of action for fraud does not accrue until the plaintiff suffers appreciable harm, here plaintiff suffered appreciable harm no later than November 17, 2004, when the fire occurred and she found herself without coverage for loss of income and extra expenses.

As discussed in Travelers' motion, the negligent misrepresentation claim fails for the same reasons as the fraud claim. In her opposition, plaintiff offers no argument that the negligent misrepresentation claim may stand even if the fraud claim does not—rather, she concedes that those boats are hitched together. Accordingly, like the fraud claim, the negligent misrepresentation claim should be dismissed. If the Court grants leave to amend, the Court should give similar admonitions as those set forth above.

C.  **The First Cause Of Action (Reformation) Should Be Dismissed**

In her complaint, plaintiff asserts that someone associated with defendant Uren Harrison Kennedy Insurance Agency, Inc. intended that the policy would cover business interruption and that the omission of such coverage was a mistake. Plaintiff does not dispute that a claim for reformation is a claim based on fraud or mistake and is therefore subject to Rule 9(b)'s heightened pleading requirements. However, neither in her complaint nor in her brief does plaintiff name the Uren corporation employee who had that alleged intent or made that alleged mistake. Nor does plaintiff identify the date, place, or form of the alleged communications regarding business interruption coverage. Thus, the claim fails for lack of particularity.

It also fails due to the statute of limitations. As a claim for relief based on fraud or mistake, a reformation claim is subject to the three-year statute of limitations. McAdams v. McElroy, 62 Cal. App. 3d 985, 1001 (1976). Again, even assuming that plaintiff had no actual notice or reason to suspect that the policy lacked business interruption coverage until she suffered the fire loss, the complaint alleges no facts justifying her failure to file suit for reformation within three years of that loss. Plaintiff's argument that a reformation claim does not accrue until the insured's "claim is denied" is legally inaccurate,[3] but more importantly, factually nonsensical because plaintiff *never made a claim for business interruption benefits*.

---

[3] Plaintiff cites to Walker v. Pacific Indem. Co., 183 Cal. App. 2d 513 (1960), but that case did not involve a reformation claim against an insurer (nor an insurer's "denial" of a claim, nor even a property insurance policy). Rather, it involved a negligence claim against an insurance broker, and as the court plainly stated at the outset of its opinion, the "sole question presented by [the] appeal" was when the negligence cause of action against the broker accrued.

As with her fraud claim, plaintiff tries to change her reformation claim in her opposition brief. She hints that she will abandon any claim for reformation of the policy to include business interruption coverage. Instead, she hints, she will pursue some vague claim for reformation of the policy with respect to *property damage* coverage. If plaintiff wants to abandon her current reformation claim, so be it—but that is all the more reason for the Court to dismiss that claim and require plaintiff to amend.[4]

### D. The Seventh Cause Of Action (Negligence) Should Be Dismissed

In her complaint, plaintiff alleges that Travelers had a duty to "determine the necessary kinds and amounts of insurance [plaintiff] needed to protect [her] financial interest in the building, its contents [and] the potential loss of earnings and extra expenses." (Complaint, 83.) As pointed out by Travelers in its motion, in fact, an insurance company is not obligated to provide advice to a prospective insured or issue a policy that provides greater coverage than what the insured specifically requested. Gibson v. Gov't Employees Ins. Co., 162 Cal. App. 3d 441 (1985). In her opposition brief, plaintiff does not dispute this point. Thus, as currently stated, her claim for negligence fails and must be dismissed.

Plaintiff points out that she may have a negligence claim against her broker, the Uren agency. However, even if that were true (Travelers denies it), that would not validate her negligence claim against *Travelers*. Plaintiff also argues that she may have a claim for negligent misrepresentation, but that would hardly rescue her claim for *negligence*—and as discussed above, plaintiff already brings a separate claim for negligent misrepresentation, which fails for lack of particularity.

---

[4] Travelers doubts that plaintiff can amend to state a new reformation claim regarding the property damage coverage, because there is nothing "missing" from that coverage that might be "added" by reformation. As is evident on the face of the policy, and as Travelers prominently conceded in its motion, the policy includes property damage coverage forms. The forms provide that fire is a covered peril. They provide for replacement cost coverage (assuming the insured actually replaces the damaged property) and coverage for code upgrades (again, assuming the insured actually replaces the damaged property and incurs code upgrade costs). Because the policy already includes property damage coverage, fire coverage, replacement cost coverage, and code upgrade coverage, plaintiff's theory that the policy needs to be "reformed" to include such coverages makes no sense

-7-

Moreover, whether against Uren or Travelers, any claim for negligence or misrepresentation is time-barred. <u>Hydro-Mill Co., Inc. v. Hayward, Tilton and Rolapp Ins. Associates, Inc.</u>, 115 Cal. App. 4th 1145 (2004) (two-year statute of limitations applied to claim for negligence in connection with insurance policy procurement, as well as misrepresentations allegedly covering up the negligence). Although the statute does not begin to run until the insured suffers harm as a result of the negligence, here any shortcomings in the policy caused plaintiff harm no later than November 17, 2004 when the fire occurred and she had need of the policy to cover her losses. Indeed, plaintiff wholly fails to address the statute of limitations issue in her opposition, so the point must be deemed conceded.

### E. The Second Cause Of Action (Breach of Contract) Should Be Dismissed

The issues concerning the breach of contract claim are perhaps best approached by way of Travelers' motion to strike. However, if the Court strikes *all* of the challenged allegations, then the entire cause of action will fail for lack of an essential element—breach.

#### 1. The Court Should Strike Paragraphs 29-30

The complaint alleges that Travelers breached the insurance contract by "fail[ing] and refus[ing] to pay Plaintiff her losses as measured by the diminution in value and the replacement costs of her insured building." (Complaint, ¶ 29.) The complaint also alleges that Travelers breached the insurance contract by "fail[ing] and refus[ing] to pay Plaintiff her losses as measured by the diminution in value and the replacement costs of her personal property in the insured building." (Id., ¶ 30.) Insofar as plaintiff is alleging that Travelers should have paid for replacement cost instead of actual cash value, plaintiff is incorrect as a matter of law.

The policy plainly provides that replacement cost valuation does not apply unless and until the insured actually replaces the property. (Policy at B-17.) Such a condition precedent is valid and enforceable in California. <u>Diamond v. Insurance Co. of North America</u>, 267 Cal. App. 2d 415 (1968). Here, plaintiff does not allege that she has replaced the damaged property—on the contrary, she admits on the first page of her brief that "the school still remains in ruins." Thus, Travelers properly paid the loss on an actual cash value basis instead of on a replacement cost basis.

-8-

Insofar as plaintiff is arguing that Travelers inaccurately *computed* the actual cash value by not equating it with diminution in fair market value, plaintiff is also incorrect as a matter of law. Some policies define actual cash value as fair market value, but Travelers' policy does not. Rather, it defines actual cash value as replacement cost minus depreciation. (Policy at B-36.) Thus, Travelers was not obligated to pay for diminution of market value.

Travelers moved to strike Paragraphs 29-30. In her opposition brief, plaintiff does not even attempt to justify those allegations. Given the plain terms of the policy and the lack of opposition, the Court should grant the motion and strike Paragraphs 29-30.

### 2. The Court Should Strike Paragraph 31

In addition to criticizing the method by which Travelers calculated the payments for the property damage, the complaint alleges that Travelers breached the contract of insurance by "fail[ing] and refus[ing] to pay Plaintiff for her loss of income and additional business expenses incurred because the fire rendered her preschool uninhabitable." (Complaint, ¶ 31.) However, the policy does not provide for business interruption coverage. Indeed, plaintiff concedes that such coverage is lacking and sues for reformation to have it added to the policy retroactively. (Complaint, ¶ 19.) Thus, as a matter of law, Travelers did not breach the contract as written.

As discussed above, plaintiff's reformation claim fails as a matter of law. For one thing, it is not stated with requisite particularity. Moreover, it is time-barred. Because the policy will not be reformed to include business interruption coverage, plaintiff's bid for business interruption benefits will fail. Consequently, the Court should strike Paragraph 31.

### 3. After Striking Paragraphs 29-31, The Court Should Dismiss The Claim

In her opposition brief, plaintiff argues that Travelers breached the contract by not paying for code upgrades. However, no such allegation appears in the breach of contract claim in her complaint. That claim is stated on Pages 4-5, and the only breaches of contract alleged there are the breaches alleged in Paragraphs 29-31, discussed above. Plaintiff does not attempt to justify those allegations, and without them, there is not enough left in the cause of action to sustain it. Accordingly, upon striking those paragraphs, the Court should dismiss the entire cause of action for failure to state a claim.

Plaintiff's opposition brief indicates that plaintiff would now like to allege a *different* breach of contract claim, one having something to do with the policy's code upgrade coverage. If the Court grants leave to amend, the Court should admonish plaintiff not to repeat the stricken allegations concerning the valuation clauses or business interruption. Travelers reserves the right to challenge any new breach of contract claim if it is not adequately pleaded or if it fails as a matter of law.

F. **The Court Should Strike Portions Of The Bad Faith Claim**

Like her response to Travelers' challenge to her breach of contract claim, plaintiff's response to Travelers' challenge to her bad faith claim avoids the issues presented. Plaintiff argues that her bad faith claim is timely, but Travelers did not assert otherwise in its motion. Nor, as plaintiff seems to think, did Travelers move to dismiss the bad faith claim in its entirety for any other reason. Instead, Travelers moved only to *strike* certain allegations that fail as a matter of law, and plaintiff offers no rebuttal to those surgical strikes.

1. **The Court Should Strike Page 6, Lines 14-17 and ¶ 40**

On Page 6, lines 14-17, plaintiff alleges that Travelers agreed to pay:

> ...the diminution of the market value and the replacement cost value of the insured building and the personal property in the building, and that Travelers and Does 1-30 would pay for the loss of income and the increase of businesses [sic] expenses that resulted from a business interruption resulting from a fire causing the insured building to become uninhabitable.

Similarly, at Paragraph 40, plaintiff alleges:

> In breach of the terms of Travelers' and Does 1-30's written policy of insurance and/or the Agreement as reformed by this Court, Travelers and Does 1-30 failed and refused to pay Plaintiff the reasonable cost to repair and replace the insured building, personal property, the loss of income and the increase in expenses for which the insurance provided in the event of a covered peril.

But as discussed above, the policy does not provide business interruption coverage. And although it does provide property damage coverage, it does not obligate Travelers to pay for property damage on a replacement cost basis where (as here) the insured does not actually replace the property. Accordingly, the foregoing allegations should be stricken.

### 2. The Court Should Strike Page 7, Lines 23-28 and Page 8, Lines 7-8

The complaint levies a number of accusations concerning an alleged claim for "code upgrade" or "code improvement" costs. It alleges that Travelers wrongfully "withheld payment of the code improvements needed to repair the building." (Complaint at 7:23-25.) It alleges that Travelers claimed "without any reasonable basis that Plaintiff was not entitled to code improvements that were mandated by the building department and failing to pay the actual cash value for code upgrades." (Id. at 7:26-28.) And she alleges that Travelers failed to affirm or deny coverage for "code compliance repairs" within a reasonable time. (Id. at 8:7-8.)

Travelers has never denied that the policy includes code upgrade coverage. Travelers has affirmed the existence of that coverage at every juncture. The problem here is that plaintiff erroneously believes that she is entitled to payment for anticipated code upgrades in advance. In fact, the Ordinance or Law Coverage plainly states:

> We will not pay for increased costs under this coverage:
>
> (1) Until the property is actually repaired or replaced, at the same location or elsewhere if required by ordinance or law; and
>
> (2) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

(Policy at B-25 and B-26). These conditions precedent are nothing more than the same conditions precedent that apply to the basic replacement cost coverage, which the Ordinance or Law Coverage supplements. (Id. at B-17.) Although plaintiff waxes philosophic that such conditions are unfair, the law does not agree. See <u>Diamond</u>, <u>supra</u> (finding such conditions valid and enforceable). Accordingly, the Court should strike the allegations Page 7, lines 23-28 and Page 8, lines 7-8.

### 3. The Court Should Strike Page 7, Lines 12-14

The complaint alleges that it was bad faith for Travelers to insist that plaintiff sign the transcripts of her examination under oath. Travelers moved to strike that allegation because the policy and the law unequivocally obligate an insured to submit to an examination under oath and sign her answers. Plaintiff offers no rebuttal. Accordingly, the point is conceded, and the Court should strike the impertinent allegation (Page 7, Lines 12-14).

## IV. CONCLUSION

For the foregoing reasons, the Court should dismiss the First, Second, Fourth, Fifth, and Seventh Causes Of Action and strike the aforementioned portions of the Third Cause of Action. In the alternative, the Court should require a more definite statement. If the Court grants leave to amend, the Court should admonish plaintiff regarding the minimal amendments that will be necessary to cure the current deficiencies and avert dismissal *with prejudice* if Travelers has to bring another Rule 12 motion.

DATED: May 8, 2008

BULLIVANT HOUSER BAILEY PC

By _/s/ Samuel H. Ruby_
Samuel H. Ruby

Attorneys for Defendant The Travelers Indemnity Company of Connecticut

10549923.1