1

2   Samuel H. Ruby (CSB#191091)
    Judith A. Whitehouse (CSB#198176)
3   Paris Scott (CSB#248899)
    BULLIVANT HOUSER BAILEY PC
4   601 California Street, Suite 1800
    San Francisco, California 94108
5   Telephone: 415.352.2700
    Facsimile: 415.352.2701
6   samuel.ruby@bullivant.com
    judith.whitehouse@bullivant.com
7   paris.scott@bullivant.com

    *Attorneys for Defendant*
8   Travelers Indemnity Company of Connecticut

9

10                 UNITED STATES DISTRICT COURT

11                NORTHERN DISTRICT OF CALIFORNIA

12                      OAKLAND DIVISION

13

14   LA VELDA SINGLETON dba LOVE AND       | Case No.: CV 08 1852 (CW)
     CARE PRESCHOOL,
15                                         | **DECLARATION OF SAMUEL H. RUBY,**
                    Plaintiff,             | **ESQ. IN SUPPORT OF TRAVELERS'**
16                                         | **OPPOSITION TO MOTION TO**
            vs.                            | **REMAND**
17
     TRAVELERS INDEMNITY COMPANY OF        | Hearing Date: Vacated
18   CONNECTICUT, et al.,                  | (previously scheduled for June 5, 2008)

19                  Defendants.

20

21       I, Samuel H. Ruby, Esq., declare under penalty of perjury under the laws of the State of

22   California and of the United States that the following matters are true and correct of my own

23   personal knowledge:

24       1.      I am an attorney with Bullivant Houser Bailey PC, attorneys of record for

25   defendant Travelers Indemnity Company of Connecticut in this action.

26       2.      I am familiar with the pleadings and other documents that have been filed and

27   served in this case, both in the state court and in this Court, and I am a custodian of such

28   documents.

                              – 1 –

3.     Attached hereto as **Exhibit A** is a true and correct copy of plaintiff's complaint.

4.     Attached hereto as **Exhibit B** are pertinent excerpts of the document attached as an exhibit to plaintiff's complaint.  The complaint alleges (and Travelers agrees) that the exhibit is a true and correct copy of the insurance policy at issue in this action.

5.     I was initially retained by Travelers in connection with this matter in 2006, following efforts undertaken by plaintiff and her public adjuster, Kevin Dawson, to compel appraisal of one or more components of the claim pursuant to the policy's appraisal clause and Insurance Code section 2071.

6.     Mr. Dawson insisted that the appraisal process include not only the submission of documents to the appraisal panel but also a live hearing before the panel.

7.     I had discussions with Mr. Dawson concerning the scope of the appraisal.  Attached hereto as **Exhibit C** is a true and correct copy of the form that Mr. Dawson proposed for the appraisal award.  The form included, among other things, a line for "Building Code & Ordinance."

8.     Based on Mr. Dawson's proposed form for the award and other communications with Mr. Dawson, Travelers anticipated that he intended to present evidence and argument at the hearing concerning upgrades in plaintiff's reconstruction plans, and that he would ask the appraisers to rule that all of the upgrades in those plans were required by building codes..

9.     Though Travelers had taken the position that it had no duty to pay for code upgrades in advance, Travelers did not want to let Dawson's arguments concerning the plans go unchallenged, because any ruling might have fixed the amount for which Travelers would be liable if plaintiff were to ever actually rebuild according to those plans.  Thus, Travelers authorized me to retain defendant Isam Hasenin, a building code expert, to review the plans and, if necessary, testify as an expert witness at the appraisal hearing.

10.     I attended the appraisal hearing, which occurred in April 2007.  At the hearing, Dawson did indeed submit the reconstruction plans and related plan check-documents, and he argued that all of the upgrades in the plans were required by building codes.

RUBY DECLARATION IN SUPPORT OF TRAVELERS' OPPOSITION TO MOTION TO REMAND

1        11.    In response, as Travelers' counsel, I called Hasenin to testify. I elicited his

2    qualifications, and the presiding appraiser (the Hon. William Cahill, Ret.) allowed him to testify

3    as an expert. Mr. Hasenin testified that in his opinion, many of the upgrades in plaintiff's plans

4    were not required by ordinances or laws. I also called Chris Morton of Hohback-Lewin and

5    Murat Zilinki of Walter Springs to testify at the hearing, and they also were allowed by Judge

6    Cahill to testify as experts.

7        12.    Following the hearing, the panel issued an award, which was signed by Judge

8    Cahill and Traveler's appraiser, Steve Tilghman. Plaintiff's appraiser, Rena Moody, dissented

9    and did not sign the award. However, pursuant to the policy, the decision of two of the panel

10   members was sufficient to constitute an award. A true and correct copy of the award is attached

11   hereto as *Exhibit D*. After the award was issued, Mr. Tilghman passed away.

12       13.    The portion of the award concerning "Building Code & Ordinance"

13   corresponded to (and thus implicitly endorsed) the testimony offered by Mr. Hasenin.

14   Following the issuance of the award, plaintiff asserted that she had not authorized Mr. Dawson

15   to submit for appraisal the issue of what upgrades in the plans are required by ordinance or law.

16   She filed a petition, challenging the award, in the Alameda Superior Court, and as a result of her

17   petition, the court vacated the award. It was because of plaintiff's petition—not Mr. Tilghman's

18   death—that the award was not confirmed by the court.

19       14.    Attached hereto as *Exhibit E* are true and correct copies of articles of

20   incorporation and SEC filings obtained by my office concerning defendant Textron.

21

22       Executed this 14th day of May 2008 in San Francisco, California.

23

24

25       By    Samuel H. Ruby

26

27

28   10560799.1

– 3 –

RUBY DECLARATION IN SUPPORT OF TRAVELERS' OPPOSITION TO MOTION TO REMAND

# EXHIBIT A

# EXHIBIT A



1  FRANCIS X. DOHERTY (52329)
   J. EDWARD KERLEY (175695)
2  DOHERTY GEORGESON KERLEY LLP
   999 Fifth Avenue, Suite 400
3  San Rafael, CA 94901
   (415) 453-2300
4  (415) 455-0270 Facsimile

5  ATTORNEYS FOR PLAINTIFF
   LA VELDA SINGLESON
6  dba LOVE AND CARE PRESCHOOL

7

8              SUPERIOR COURT OF CALIFORNIA

9         COUNTY OF ALAMEDA – UNLIMITED JURISDICTION

10 LA VELDA SINGLETON dba LOVE      )  Case No. *RG* **08371914**
   AND CARE PRESCHOOL, an individual, )
11                                    )
                   Plaintiff,         )  **COMPLAINT AND DEMAND FOR**
12                                    )  **JURY TRIAL**
   v.                                 )
13                                    )
   TRAVELERS INDEMNITY COMPANY       )
14 OF CONNECTICUT, a corporation;    )
   ALLYSON DELGADO, an individual;   )
15 UREN HARRISON KENNEDY             )
   INSURANCE AGENCY, a corporation;  )
16 CHRIS MORTON, an individual;      )
   HOHBACK-LEWIN INC. a corporation; )
17 ISAM HASENIN, an individual; MURAT)
   ZILINKI, an individual; WALTER    )
18 SPRINGS CONSTRUCTION, a           )
   corporation; TEXTRON FINANCIAL, a )
19 corporation; BANK OF THE WEST, a  )
   corporation; and DOES 1-30,       )
20                                    )
                   Defendants.        )
21 _____)

22    La Velda Singleton dba Love and Care Preschool alleges as follows:

23
       **FIRST CAUSE OF ACTION FOR REFORMATION**
24            **AGAINST TRAVELERS AND DOES 1-30**

25    1.    At all relevant times, Plaintiff was an individual residing at 1475 Spring

26 Valley Common, Livermore, CA 94551, and the owner of the building located at 8010

27 Holanda Lane, Dublin, California (the "insured building") and proprietor of the Love and

28 Care Preschool, a preschool being operated from the insured building ("the preschool").

                                    1

Case No. _____                                      COMPLAINT

ENDORSED
FILED
ALAMEDA COUNTY

FEB 1 9 2008

CLERK OF THE SUPERIOR COURT
By_____ P. Bir _____
                        Deputy

DOHERTY GEORGESON KERLEY LLP
999 Fifth Avenue, Suite 400
San Rafael, CA 94901
(415) 453-2300

2.    At all relevant times, Travelers Indemnity Company of Connecticut, also known as St. Paul Travelers Insurance ("Travelers") was a corporation in the business of writing property insurance in California.

3.    At all relevant times, Plaintiff was unaware of the identity and/or capacity of Defendants Does 1-30.

4.    At all relevant times and in doing the things herein stated, the named Defendants and Does 1-30 were the employees, officers, directors, agents, affiliates or representatives of one another and were acting within the course and scope of their authority.

5.    At all relevant times, Travelers and Does 1-30 had in full force and effect their written policy of insurance, number X-660-333X 9953-TCT03, that provided coverage for the insured building, its contents and for the loss of income and extra expense that might be sustained because a covered peril made the insured building uninhabitable.

6.    Plaintiff obtained a certified copy of Travelers' and Does 1-30's policy of insurance in, and attaches a true and correct copy hereto as Exhibit A.

7.    On or about November 17, 2004, a fire damaged and destroyed the insured building, its contents making it uninhabitable and usable as a preschool.

8.    Plaintiff provided prompt notice of the loss and damage to Travelers and Does 1-30.

9.    At all relevant times, Uren Harrison Kennedy Insurance Agency ("Uren") was a corporation in the business of selling property insurance in California and the agent of Travelers and Does 1-30.

10.    From 1982 until the fire, Plaintiff obtained her insurance exclusively from Uren.

11.    At the time Plaintiff applied for insurance for the insured building, and at various times there after, the agents, employees, officers and representatives of Uren stated that they had the skill, experience and expertise to obtain the kind and the amount

2

Case No.                                                          COMPLAINT

 

1   of insurance that Plaintiff would need to protect her interests against physical loss which

2   might occur to the insured building, its contents and for loss of profit and extra expenses

3   caused by the interruption of Plaintiff's business should the insured building become

4   uninhabitable.

5       12.    From 1982 to the time of the fire, Uren, Travelers and Does 1-30 routinely

6   inspected and considered the insurance needed for the insured building, its contents and a

7   potential interruption in Plaintiff's preschool should the insured building become

8   uninhabitable.

9       13.    Plaintiff answered all of the questions submitted to her by Uren, Travelers

10   and Does 1-30 truthfully.

11       14.    At all relevant times, Uren, Travelers and Does 1-30 stated that the

12   insurance issued by Travelers and Does 1-30 was sufficient in amount and kind to protect

13   Plaintiff's financial interests should an insured peril cause a complete loss of the building

14   and its contents.

15       15.    At all relevant times, Uren, Travelers and Does 1-30 stated that the

16   insurance issued by Travelers and Does 1-30 covered the loss of income and extra

17   business expense that Plaintiff might sustain in the event an insured peril destroyed the

18   building making it uninhabitable.

19       16.    In 2000, when Plaintiff purchased the insured building, Uren, Travelers and

20   Does 1-30 represented that they had obtained the necessary kinds and amounts of

21   insurance to protect Plaintiff's financial interests should an insured peril cause a complete

22   loss of the building, its contents and render the insured building uninhabitable.

23       17.    At all relevant times, Uren, Travelers and Does 1-30 and Plaintiff agreed

24   that the written policy of insurance to be issued would protect the Plaintiffs financial

25   interests should an insured peril cause the complete loss of the building and content and

26   rendered the building uninhabitable. This was the "Agreement" between the parties.

27       18.    At the time Plaintiff received Travelers' and Does 1-30's policy of property

28   insurance, Uren, Travelers and Does 1-30 represented that Travelers' and Does 1-30's

*DOHERTY GEORGESON KERLEY LLP*
*999 Fifth Avenue, Suite 400*
*San Rafael, CA 94901*
*(415) 453-2300*

3

Case No.                                    COMPLAINT

DOHERTY GEORGESON KERLEY LLP
999 Fifth Avenue, Suite 400
San Rafael, CA 94901
(415) 453-2300

1    policy of property insurance reflected the Agreement between Plaintiffs and these

2    Defendants.

3      19.    After the fire occurred, Uren, Travelers and Does 1-30 claimed that their

4    liability to Plaintiffs was limited to the terms set forth in Travelers' and Does 1-30's

5    written policy of property insurance, but unlike the Agreement between Plaintiff and

6    Uren, Travelers and Does 1-30, the policy of property insurance issued by Travelers and

7    Does 1-30 did not provide the promised coverage for the insured building, its contents or

8    provide for loss of income and extra expense incurred because the insured building

9    became uninhabitable.

10      20.    Due to misrepresentations of Uren, Travelers and Does 1-30 or due to the

11    mutual mistake of Uren, Travelers, Does 1-30 and Plaintiff or due to Plaintiff's mistake

12    about which Uren, Travelers and Does 1-30 knew or suspected, Travelers' and Does 1-

13    30's policy of property insurance did not reflect the Agreement.

14      21.    As a direct and proximate result of the foregoing, Travelers and Does 1-30

15    failed and refused to pay the full amount necessary to repair and replace the insured

16    building, including code requirements, Plaintiff's personal property or Plaintiff's loss of

17    income and extra expenses.

18      22.    Plaintiff requests that the court reform Travelers' and Does 1-30's policy of

19    property insurance to reflect the Agreement between Plaintiff and Travelers.

20
21                   **SECOND CAUSE OF ACTION**
         **BREACH OF THE CONTRACT OF INSURANCE**
22              **AGAINST TRAVELERS AND DOES 1-30**

23      23.    Plaintiff hereby incorporates paragraphs 1-22 by reference as though fully

24    set forth in this Second Cause of Action against Travelers and Does 1-30.

25      24.    After the fire, Plaintiff provided Travelers and Does 1-30 proof of loss and

26    damage to the insured building, its contents and for her loss of income and extra expense.

27      25.    After the fire, Plaintiff fulfilled all the conditions set forth in Travelers' and

28    Does 1-30's written policy of insurance.

<div align="center">4</div>

Case No.                                              COMPLAINT

  

26.    As a direct and proximate result of the fire, the insured building was damaged and destroyed in the approximate amount of $750,000, the actual amount to be determined at trial.

27.    As a direct and proximate result of the fire, the content of the insured building was damaged and destroyed in the approximate amount of $750,000, the actual amount to be determined at trial.

28.    As a direct and proximate result of the fire, the insured building was rendered uninhabitable, interrupting the preschool's operations and causing a loss of income and increased business expense in the approximate amount of $200,000, the actual amount to be determined at trial.

29.    In breach of the contract of insurance as written and/or as reformed by this Court, Travelers and Does 1-30 failed and refused to pay Plaintiff her losses as measured by the diminution in value and the replacement costs of her insured building.

30.    In breach of the contract of insurance as written and/or as reformed by this Court, Travelers and Does 1-30 failed and refused to pay Plaintiff her loss as measured by the diminution in value and the replacement cost of her personal property in the insured building.

31.    In breach of the contract of insurance as written and/or as reformed by this Court, Travelers and Does 1-30 failed and refused to pay Plaintiff for her loss of income and additional business expenses incurred because the fire rendered her preschool uninhabitable.

32.    As a direct and proximate result of Travelers' and Does 1-30's breach of contract, Plaintiff sustained losses approximated at $1.7 million, the actual amount to be determined at trial.

33.    As a direct and proximate result of Travelers' and Does 1-30's breach of contract, Plaintiff sustained foreseeable consequential damages in an amount to be determined at the trial.

DOHERTY GEORGESON KEERLEY LLP
999 Fifth Avenue, Suite 400
San Rafael, CA 94901
(415) 453-2300

5

Case No.

COMPLAINT

A-5

  

<div style="float:left">DOHERTY GEORGESON KERLEY LLP<br/>999 Fifth Avenue, Suite 400<br/>San Rafael, CA 94901<br/>(415) 453-2300</div>

1  34.  The damages are certain or capable of being made certain and Plaintiff seeks

2  prejudgment interest.

3

4  **THIRD CAUSE OF ACTION**
   **BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**
5  **AGAINST TRAVELERS AND DOES 1-30**

6  35.  Plaintiff hereby incorporates paragraphs 1-34 by reference as though fully

7  set forth in this Third Cause of Action against Travelers and Does 1-30.

8  36.  At all relevant times, Murat Zilinki was an individual in the business of

9  preparing fire damage appraisal estimates.

10  37.  At all relevant times, Snow Construction was a corporation in the business

11  of preparing fire damage appraisal estimates.

12  38.  Under the terms of Travelers' and Does 1-30's written policy of insurance

13  and/or the Agreement as reformed by this Court, Travelers and Does 1-30 agreed that

14  they would pay Plaintiff the diminution of the market value and the replacement cost

15  value of the insured building and the personal property in the building in the event of

16  their destruction by fire, and that Travelers and Does 1-30 would pay for the loss of

17  income and the increase of businesses expenses that resulted from a business interruption

18  resulting from a fire causing the insured building to become uninhabitable.

19  39.  In every insurance policy there is an implied obligation of good faith and

20  fair dealing that the insurance company will do nothing to prevent the right of the

21  policyholder to receive the benefits of the agreement.

22  40.  In breach of the terms of Travelers' and Does 1-30's written policy of

23  insurance and/or the Agreement as reformed by this Court, Travelers and Does 1-30

24  failed and refused to pay Plaintiff the reasonable cost to repair and replace the insured

25  building, personal property, the loss of income and the increase in expenses for which the

26  insurance provided in the event of a covered peril.

27  41.  Travelers and Does 1-30 breached of the covenant of good faith and fair

28  dealing as follows:

6

Case No.                                                      COMPLAINT




1      • misrepresented pertinent facts about the loss to avoid liability under the

2  policy of insurance by, among other things, concealing estimates of contractors whose

3  estimates were greater than the estimate submitted by Zilinki and Snow Construction

4  with the intent and purpose of paying Plaintiff an amount less than the reasonable amount

5  due under the policy of insurance to repair and replace the insured building and its

6  contents;

7      • refused to explain to Plaintiff the restrictions that applied to Travelers'

8  $50,000 advance;

9      • had Chris Morton, an engineer, alter and falsify a written report so that

10  Travelers could avoid paying for code requirements, a coverage Plaintiff was entitled to

11  receive under the policy of insurance;

12      • misrepresented the meaning of pertinent provisions in the policy of

13  insurance by, among other things, denying liability for Plaintiff's covered losses on the

14  ground that she failed to sign her examination under oath;

15      • misrepresented the coverage under its policy of insurance by, among other

16  things, claiming that Plaintiff was not entitled to building code changes covered by the

17  policy of insurance, unreasonably categorizing non-code related repairs as code related

18  repairs, and claiming that Plaintiff was not entitled to the replace the insured building's

19  shower because she was not using it as a shower at the time of loss;

20      • unreasonably claiming they made a thorough investigation when in fact the

21  investigation they made was for the purpose of denying the claim and limiting their

22  liability to avoid policy obligations due Plaintiff;

23      • claiming that they made payment in accordance with the policy of

24  insurance when in fact they withheld payment of the code improvements needed to repair

25  the building;

26      • claiming without any reasonable basis that Plaintiff was not entitled to code

27  improvements that were mandated by the building department and failing to pay the

28  actual cash value for code upgrades;

<div style="text-align:center">7</div>

DOHERTY GEORGESON KERLEY LLP
999 Fifth Avenue, Suite 400
San Rafael, CA 94901
(415) 453-2200

Case No.                                    COMPLAINT

1     • failing to pay for Plaintiff's building loss claim promptly and then paying

2 only $131,846.41 as total diminution of the actual cash value of the insured building

3 making it impossible for Plaintiff to replace the insured building, depriving her of

4 replacement cost benefits afforded by the policy of insurance;

5     • failing to produce requested claim-related documents in violation of

6 Insurance Code section 2071;

7     • failing to affirm or deny coverage for the building loss and code

8 compliance repairs within a reasonable time;

9     • demanding a proof of loss when a proof of loss was not necessary for the

10 adjustment of the loss;

11     • failing to effectuate in good faith prompt, fair, and equitable settlement of

12 Plaintiff's claims although liability had become reasonably clear;

13     • compelling Plaintiff to institute litigation to recover amounts due under her

14 insurance policy;

15     • offering substantially less than the amounts necessary to repair and replace

16 the insured building;

17     • corrupting the policy appraisal by having Traveler's policy appraiser and

18 umpire render coverage decisions in violation of California law;

19     • advising Plaintiff not to obtain the services of a public adjuster;

20     • failing to cooperate and assist Plaintiff in obtaining the coverages due under

21 the policy;

22     • unreasonably denying liability on the basis of Plaintiff's failure to exhibit

23 property and demanding that Plaintiff sign a contract with a contractor before Travelers

24 would discuss resolution of the amount of loss;

25     • failing to adopt written standards for the prompt investigation of claims;

26     • failing to train employees and agents in the duties they are obligated to

27 follow under Insurance Code section 790.03 and the Fair Claims Practices Act;

28     • failing to adopt a claims adjusting manual;

<div style="text-align:center">8</div>

---

Case No.                                                    COMPLAINT

DOHERTY GEORGESON KERLEY LLP
999 Fifth Avenue, Suite 400
San Rafael, CA 94901
(415) 453-2300

A-8



- failing to adopt clear written instructions regarding the procedures to be followed to effect proper compliance the Fair Claims Practices Act;

- failing in its written denial and/or rejection of Plaintiff' claim to provide a statement listing all bases for its rejection and/or denial of the claim;

- failing in its written denial and/or rejection of Plaintiff's claim to provide the factual and legal bases for each reason given for its rejection and denial;

- failing in its written denial and/or rejection of Plaintiff's claim to provide the specific policy provision, condition or exclusion upon which it is based its decisions;

- failing in its written denial and/or rejection of Plaintiff's claim to provide an explanation of the application of the provision, condition or exclusion to the claim;

- persisting in seeking information not reasonably required for or material to the resolution of a claim dispute;

- attempting to settle Plaintiff's claim by making a settlement offer that was unreasonably low by using Murat Zilinki's and Snow Construction's lowball estimate of the cost to repair the insured building;

- failing to consider information submitted by Plaintiff that showed the amounts of her loss and the factual reasons that supported coverage;

42.    In doing the things herein alleged, Travelers and Does 1-30 considered only their own financial interests.

43.    In doing the things herein alleged, Travelers and Doe 1-30 acted with fraud, malice and oppression and with a willful and reckless disregard for Plaintiff's rights under the policy and law.

44.    As a direct and proximate result of the foregoing, Plaintiff suffered bodily injury.

45.    As a further direct and proximate result of the foregoing, Plaintiff suffered emotional distress.

46.    As a further direct and proximate result of the foregoing, Plaintiff suffered foreseeable and unforeseeable consequential damages.

9

Case No. _____                                    COMPLAINT

DOHERTY GEORGESON KERLEY LLP
999 Fifth Avenue, Suite 400
San Rafael, CA 94901
(415) 451-2300

A-9



DOHERTY GEORGESON KERLEY LLP
999 Fifth Avenue, Suite 400
San Rafael, CA 94901
(415) 453-2300

47.    As a further direct and proximate result of the foregoing, Plaintiff incurred attorney fees to recover policy benefits under the contract.

48.    As a further direct and proximate result of the foregoing, Plaintiff seeks punitive and exemplary damages against Travelers and Does 1-30.

## FOURTH CAUSE OF ACTION
### FOR FRAUD
### AGAINST TRAVELERS AND DOES 1-30

49.    Plaintiff hereby incorporates paragraphs 1-48 by reference as though fully set forth in this Fourth Cause of Action against Travelers and Does 1-30.

50.    Travelers and Does 1-30 through their employees, officers, directors, representatives and agents induced Plaintiff to purchase Travelers' and Does 1-30's policy of insurance representing that Travelers would pay for fire damage to the insured building, its contents, and for loss of income and additional expenses should an insured peril render the insured building uninhabitable.

51.    The representations were false and Travelers and Does 1-30 had no intention of paying for damage caused by fire to the building, its contents or for the loss of income and increased expenses because an insured peril render the insured building uninhabitable.

52.    At all relevant times, Plaintiff believed that Travelers' and Does 1-30's representations that they would pay for damage caused by fire to the insured building, its contents and for loss of income and increase expenses should the insured building become uninhabitable were true.

53.    Believing that Travelers and Does 1-30's representations were true, Plaintiff purchased Travelers' and Does 1-30's policy of insurance when she could have purchased a policy that would have covered damage caused by fire to the insured building, its contents and for loss of income and increased expense should be insured building become uninhabitable.

<center>10</center>

Case No.                                                                    COMPLAINT



DOHERTY GEORGESON KERLEY LLP
999 Fifth Avenue, Suite 400
San Rafael, CA 94901
(415) 453-2300

54.    In reliance of the representations, Plaintiff purchased Travelers' and Does 1-30's policy of property insurance.

55.    While Travelers' and Does 1-30's policy of property insurance was in full force and effect, fire damaged the insured building and its contents, rendering it uninhabitable.

56.    Travelers and Does 1-30 failed and refused to pay Plaintiff's for the losses she sustained.

57.    As a direct and proximate result of the foregoing, Plaintiff sustained the losses set forth above.

### FIFTH CAUSE OF ACTION
### NEGLIGENT MISREPRESENTATION
### AGAINST TRAVELERS AND DOES 1-30

58.    Plaintiff hereby incorporates paragraphs 1-57 by reference as though fully set forth in this Fifth Cause of Action against Travelers and Does 1-30.

59.    Travelers and Does 1-30, their employees, agents, officers and representatives, had no reasonable basis for believing the representations they made to Plaintiff were true.

60.    As a direct and proximate result of the foregoing, Plaintiff sustained a loss set forth above.

### SIXTH CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### AGAINST ALLYSON DELGADO AND DOES 1-30

61.    Plaintiff hereby incorporates paragraphs 1-60 by reference as though fully set forth in this Sixth Cause of Action against Allyson Delgado and Does 1-30.

62.    At all relevant times, Allyson Delgado ("Delgado") was an individual assigned by Travelers to investigate and pay property claims made by its policyholders for losses that occurred in California.

///

11

Case No.                                                            COMPLAINT

A-11




63.    At all relevant times, Textron Financial was the mortgagee whose interest was secured by the insured building.

64.    Delgado earned salary, bonuses, and benefits based on her ability to undermine, discredit, and destroy policyholders' legitimate claims so that Travelers and Does 1-30 could avoid their obligations under their policies of insurance.

65.    Delgado, knowing the illegal nature of her conduct, willfully earned salary, bonuses and benefits by undermining, discrediting and destroying policyholders' legitimate claims so that Travelers and Does 1-30 could avoid their obligations under their policies of insurance.

66.    Delgado earned salary, bonuses and benefits by undermining, discrediting and destroying Plaintiffs' legitimate insurance claim by engaging in outrageous conduct which, among other things, included the concealment of building estimates that were substantially higher than the estimate that Delgado used to understate the true extent of the diminution of the actual cash value of the insured building and understate the cost to repair and replace the insured building; inducing with the promise of continued employment as an independent contractor, Chris Morton, an engineer, to falsify his engineering report relating to Plaintiff's claim for code improvements to allow Delgado to deny Plaintiff's claim for code improvements; inducing Murat Zilinki, with promises of future work and additional payments, to submit lowball estimates that Delgado planned to falsely characterized as previously undiscovered damage; and abusive conduct directed at Plaintiff in words and actions.

67.    At all relevant times, Delgado knew that Plaintiff would suffer severe emotional distress given that Plaintiff's only source of income arose from the then destroyed insured building, which was the building Plaintiff had to heavily mortgage to purchase; and, by deliberately delaying payment to have Textron Financial apply the actual cash value payment to the outstanding loan indebtedness to prevent Plaintiff from replacing the insured building.

///

12

DOHERTY GEORGESON KERLEY LLP
999 Fifth Avenue, Suite 400
San Rafael, CA 94901
(415) 451-2200

68.    At all relevant times, Delgado intended to cause Plaintiff emotional distress.

69.    At all times, Delgado acted with reckless disregard of the probability that Plaintiff would suffer emotional distress.

70.    Plaintiff suffered severe emotional distress.

71.    Delgado's conduct was a substantial factor in causing Plaintiff's severe emotional distress.

72.    As a direct and proximate result of the foregoing, Plaintiff sustained the losses set forth above.

## SEVENTH CAUSE OF ACTION
## NEGLIGENCE
## AGAINST UREN, TRAVELERS AND DOES 1-30

73.    Plaintiff hereby incorporates paragraphs 1-72 by reference as though fully set forth in this Seventh Cause of Action against Uren, Travelers and Does 1-30.

74.    From 1982 to the fire, Plaintiff obtained her insurance exclusively from Uren, Travelers and Does 1-30.

75.    At the time Plaintiff applied for insurance for the insured building, the employees, agents, officers, and representatives of Uren, Travelers and Does 1-30 stated that they had the skill, experience and expertise to obtain the kind and the amount of insurance that Plaintiff would need to protect her interests against physical loss which might occur to the insured building, its contents and for the interruption of her business that might arise should the insured building become uninhabitable.

76.    From 1982 to the time of the fire, Uren, Travelers and Does 1-30 routinely inspected the insured building, its contents and considered the potential loss of income and extra expense that might occur should a covered peril render the insured building uninhabitable.

77.    Plaintiff answered all of the questions submitted to her by Uren, Travelers and Does 1-30 truthfully.

13

DOHERTY GEORGESON KERLEY LLP
999 Fifth Avenue, Suite 400
San Rafael, CA 94901
(415) 455-2300

Case No.                                                                    COMPLAINT

A-13

 

78.    At all relevant times, Uren, Travelers and Does 1-30 stated that the insurance issued by Travelers was sufficient in amount to cover her financial interests should an insured peril cause a complete loss of the building and its contents.

79.    At all relevant times, Uren, Travelers and Does 1-30 stated that the insurance issued by Travelers and Does 1-30 would cover the loss of income she sustained and extra business expense that she incurred in the event an insured peril rendered the insured building uninhabitable.

80.    In 2000, when Plaintiff purchased the insured building, Uren, Travelers and Does 1-30 represented that they obtained the necessary kinds and amounts of insurance to protect Plaintiff's financial interests should an insured peril cause a complete loss of the building, its contents and render it uninhabitable.

81.    Uren, Travelers and Does 1-30 unilaterally selected the kind and amount of insurance coverages they claimed was sufficient to insure the insured building, its content and for the loss that Plaintiff might incur should an insured peril render the insured building uninhabitable.

82.    Travelers and Does 1-30 allege that Travelers' written policy of insurance does not fully cover the damage to the insured building, its contents, code improvements and does not provide for loss of income and additional expenses incurred because the fire rendered the insured building uninhabitable.

83.    If Travelers' and Does 1-30's allegations are correct, then Uren, Travelers and Does 1-30 failed to exercise reasonable care in determining the necessary kinds and amounts of insurance needed to protect Plaintiff's financial interest in the insured building, its contents the potential loss of earnings and extra expenses.

84.    A If Travelers' and Does 1-30's allegations are correct, then Plaintiff has insufficient coverage to indemnify her for the loss and damage caused to the insured building, its contents and loss of income in the extra expense and is, therefore, entitled to recover the deficiency from Uren, Travelers and Does 1-30.

DOHERTY GEORGESON KERLEY LLP
999 Fifth Avenue, Suite 400
San Rafael, CA 94901
(415) 453-2300

14




## EIGHTH CAUSE OF ACTION
### CIVIL AIDING AND ABETTING
**AGAINST CHRIS MORTON, HOHBACK-LEWIN INC. ISAM HASENIN, MURAT ZILINKI, WALTER SPRINGS CONSTRUCTION, AND DOES 1-30**

85.　Plaintiff hereby incorporates paragraphs 1-84 by reference as though fully set forth in this Eighth Cause of Action against Chris Morton, Hohback-Lewin Ins., Isam Hasenin, Murat Zilinki, Walter Springs Construction, and Does 1-30 by reference.

86.　At all relevant times, Chris Morton was an individual licensed to practice engineering in California.

87.　At all relevant times, Hohback-Lewin Inc. was a corporation in the business of practicing engineering in the state of California.

88.　At all relevant times, Isam Hasenin was an individual licensed to practice engineering in California.

89.　At all relevant times, Murat Zilinki was an individual licensed as a general contractor.

90.　At all relevant times, Walter Springs Construction, was a corporation licensed as a general contractor.

91.　At all relevant times, Chris Morton, Hohback-Lewin Inc., Isam Hasenin, Murat Zilinki, Walter Springs Construction, Does 1-30 and Travelers had a business relationship that was written, oral, or implied.

92.　At all relevant times, Chris Morton, Hohback-Lewin Inc., Isam Hasenin and Does 1-30 routinely perform engineering investigations for Travelers. Annually, Travelers paid Chris Morton, Hohback-Lewin Inc., Isam Hasenin and Does 1-30 a substantial and significant amount of their total annual income to provide Travelers with written reports and testimony to undermine Travelers' policyholders' claims.

93.　At all relevant times, Chris Morton, Hohback-Lewin Inc., Isam Hasenin and Does 1-30 were aware that Travelers and Does 1-30 used their reports and testimony to misstate material facts to support Travelers' and Does 1-30, denials of coverage from so-called independent experts.

15

Case No.                                                                    COMPLAINT

DOHERTY GEORGESON KERLEY LLP
999 Fifth Avenue, Suite 400
San Rafael, CA 94901
(415) 453-2300

A-15





94. At all relevant times, Murat Zilinki, Walter Springs Construction and Does 1-30 routinely prepared damage appraisal construction reports for Travelers and Does 1-30. Annually, Travelers paid Murat Zilinki, Walter Springs Construction, Does 1-30 a substantial and significant amount of their annual income to provide them with written reports and testimony to undermine the amount and validity of Travelers' policyholders' damage claims.

95. At all relevant times, Murat Zilinki, Walter Springs Construction, and Does 1-30 were aware that Travelers uses their reports and testimony to misstate material facts for Travelers and Does 1-30 to utilize in supporting Travelers' denials of coverage from a so-called independent expert.

96. At all relevant times, Chris Morton, Hohback-Lewin Inc., Isam Hasenin Murat Zilinki, Walter Springs Construction, and Does 1-30 held themselves out as independent experts in the determination of the need for code requirements and in the determination of the amount of damage.

97. At all relevant times, Chris Morton, Hohback-Lewin Inc., Isam Hasenin, Murat Zilinki, Walter Springs Construction, Does 1-30 represented to Plaintiff that they had special expertise and were acting independently to determine the need for code improvements and determine the true amount of the loss.

98. At all relevant times, Chris Morton, Hohback-Lewin Inc., Isam Hasenin, Murat Zilinki, Walter Springs Construction, and Does 1-30 did not disclose to Plaintiff that they regularly performed work for Travelers and Does 1-30.

99. Chris Morton, Hohback-Lewin Inc., Murat Zilinki, Isam Hasenin, Walter Springs Construction, and Does 1-30 did not disclose that they had received direction from Travelers' personnel as to the conclusion that there reports should reach.

100. At all relevant times, Chris Morton, Hohback-Lewin Inc., Isam Hasenin, Murat Zilinki, Walter Springs Construction, and Does 1-30 knew that an insurance contract requires that the insurer deal fairly with the insured.

16

Case No.                                                                                    COMPLAINT

DOHERTY GEORGESON KERLEY LLP
999 Fifth Avenue, Suite 400
San Rafael, CA 94901
(415) 453-2300

A-16




101. At all relevant times, Morton, Hohback-Lewin Inc., Isam Hasenin, Murat Zilinki, Walter Springs Construction, and Does 1-30 knew that Travelers had an insurance contract with Plaintiff.

102. At all relevant times, Morton, Hohback-Lewin Inc., Isam Hasenin, Murat Zilinki, Walter Springs Construction, and Does 1-30 knew that Travelers owed a duty of good faith and fair dealing to Plaintiff and that the breach of that duty is a tort.

103. Travelers retained Murat Zilinki, Walter Springs Construction, and Does 1-30 to prepare, publish and testify to a damage appraisal estimate in which they knowingly and intentionally understated the diminution in value and the cost to repair the insured building to aid Delgado in undermining and destroying Plaintiff's legitimate insurance claim.

104. Travelers retained Morton, Hohback-Lewin Inc. Isam Hasenin, and Does 1-30 to prepare, publish and testify to an engineering report in which they knowingly and intentionally misrepresented the City of Dublin's code requirements to aid Delgado to undermine and destroy Plaintiff's legitimate insurance claim.

105. Before preparing their reports, Morton, Hohback-Lewin Inc. Isam Hasenin, Murat Zilinki, Walter Springs Construction, Does 1-30 knew that Travelers would use the report to deny and undermine Plaintiff's legitimate insurance claim.

106. Morton, Hohback-Lewin Inc., Murat Zilinki, Isam Hasenin, Walter Springs Construction, Does 1-30 substantially assisted Travelers in breaching the covenant of good faith and fair dealing by the following conduct:

- falsely testifying at a policy appraisal hearing;
- attempting to unlawfully influence a City of Dublin building inspector;
- ignoring material evidence;
- concealing material evidence;
- conducting an incomplete investigation and reaching false conclusions;
- materially misrepresenting the scope of needed repairs;
- intentionally excluding covered repairs such as code requirements; and

17

DOHERTY GEORGESON KERLEY LLP
999 Fifth Avenue, Suite 400
San Rafael, CA 94901
(415) 453-2200

Case No.                                                                                COMPLAINT

 

1    • materially misrepresenting the code requirements of the City of Dublin.

2    107. Morton, Hohback-Lewin Inc., Murat Zilinki, Isam Hasenin, Walter Springs

3    Construction, Does 1-30 knew that their conduct was important in aiding, abetting and

4    assisting Travelers and Does 1-30 in breaching the covenant of good faith and fair

5    dealing that was owed by Travelers to Plaintiff.

6    108. Morton, Hohback-Lewin Inc., Isam Hasenin, Murat Zilinki, Walter Springs

7    Construction, Does 1-30 are subject to liability for the harm suffered by Plaintiff because

8    Morton, Hohback-Lewin Inc., Isam Hasenin, Murat Zilinki, Walter Springs Construction,

9    Does 1-30 knew that their conduct was wrongful and of substantial assistance to

10   Travelers in denying Plaintiff's claim.

11   109. As a direct and proximate result of Morton, Hohback-Lewin Inc., Isam

12   Hasenin, Murat Zilinki, Walter Springs Construction, Does 1-30 conduct, Plaintiff has

13   been damaged in amount to be proved at trial.

14   110. In doing the above acts, Morton, Hohback-Lewin Inc., Isam Hasenin,

15   Murat Zilinki, Walter Springs Construction, Does 1-30 acted with fraud, malice and

16   oppression and Plaintiff is entitled to punitive and exemplary damages.

17

18                              **NINTH OF ACTION**
                **BREACH OF CONTRACT AND THE COVENANT OF GOOD FAITH**
19                          **AND FAIR DEALING AGAINST**
            **TEXTRON FINANCIAL AND BANK OF THE WEST AND DOES 1-30**

20   111. Plaintiff hereby incorporates paragraphs 1-110 by reference as though fully

21   set forth in this Ninth Cause of Action against Textron Financial, Bank of the West

22   Present and Does 1-30.

23   112. At all relevant times, Plaintiff agreed with Textron Financial to borrow

24   money to purchase the insured building. Plaintiff does not have a copy of the written

25   agreement because it was destroyed in the November 17, 2004 fire.

26   113. At all relevant times, Textron Financial transferred Plaintiff's purchase

27   money mortgage to Bank of the West, and Bank of the West, a corporation, currently

28   holds the mortgage on the insured building.

18

---

Case No.                                                    COMPLAINT

DOHERTY GEORGESON KERLEY LLP
999 Fifth Avenue, Suite 400
San Rafael, CA 94901
(415) 453-2300

114.   Prior to this lawsuit, Travelers and Does 1-30 paid Plaintiff the amount of $131,846.41 claiming it was in full payment for the diminution of the actual cash value of the insured building caused by the fire.

115.   Prior to this lawsuit, Plaintiff forwarded Travelers' check to Textron Financial in the amount of $131,846.41 for Textron Financial to hold in a separate account to be used to repair and replace the insured dwelling as provided by the contract of insurance issued by Travelers and Does 1-30.

116.   Travelers' and Does 1-30's policy of property insurance provided Plaintiff with two options if a loss occurred. The options were that the Plaintiff had a choice of collecting the cash value of the building at the time of the loss, or, alternatively, Plaintiff could rebuild the house and receive reimbursement from the insurance company up to the cost to replace the insured building.

117.   At all relevant times, Textron Financial's security was limited to the value of the insured building and land.

118.   The implied covenant imposes upon each party the obligation to do everything that the contract presupposes they will do to accomplish its purpose.

119.   The right of Textron Financial, Bank of the West and Does 1-30 to apply insurance proceeds to the balance of a note secured by a deed of trust must be performed in good faith and with fair dealing, and to the extent the security is not impaired, the beneficiary must permit those proceeds to be used for the cost of rebuilding.

120.   Textron Financial, Bank of the West and Does 1-30's security was not impaired by the by the fire and they could not in good faith exercise their option under the deed of trust to apply the insurance proceeds to the outstanding loan balance.

121.   In breach of the mortgage contract and the covenant of good faith and fair dealing, Textron Financial, Bank of the West and Does 1-30 applied the insurance proceeds to the outstanding loan balance.

122.   In doing the things herein alleged, Textron Financial, Bank of the West and Does 1-30 considered only their own financial interests.

DOHERTY GEORGESON KERLEY LLP.
999 Fifth Avenue, Suite 400
San Rafael, CA 94901
(415) 453-7200

-19-

Case No. _____                                    **COMPLAINT**

A-19





123.   In doing the things herein alleged, Textron Financial, Bank of the West and Does 1-30 acted with fraud, malice and oppression and with a willful and reckless disregard for Plaintiff's rights under the mortgage and law.

124.   As a direct and proximate result of the foregoing, Plaintiff will be unable to repair the insured dwelling and potentially forfeit the foreseeable benefits under Travelers' and Does 1-30's policy of insurance.

125.   As a direct and proximate result of the foregoing, Plaintiff suffered bodily injury.

126.   As a further direct and proximate result of the foregoing, Plaintiff suffered emotional distress.

127.   As a further direct and proximate result of the foregoing, Plaintiff suffered foreseeable and unforeseeable consequential damages.

128.   As a further direct and proximate result of the foregoing, Plaintiff incurred attorney fees to recover policy benefits under the contract.

129.   As a further direct and proximate result of the foregoing, Plaintiff seeks

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

DOHERTY GEORGESON KERLEY LLP
999 Fifth Avenue, Suite 400
San Rafael, CA 94901
(415) 451-2300

20

Case No.                                                                 COMPLAINT

A-20

1  punitive and exemplary damages against Textron Financial, Bank of the West and Does

2  1-30.

3

4  WHEREFORE, Plaintiff prays for judgment as follows:

5      1.    for contract general, special, economic and consequential damages;

6      2.    for attorney fees;

7      3.    for prejudgment interest;

8      4.    for costs of suit;

9      5.    for punitive and exemplary damages; and

10      6.    other relief the court finds to be just and proper.

11

12  DATED: *Feb. 12, 2008*        DOHERTY GEORGESON KERLEY LLP

13

14                 *Francis X Doherty*

15                 FRANCIS X. DOHERTY
                J. EDWARD KERLEY

16                 Attorneys for Plaintiff La Velda Singleton

17

18

19

20

21

22

23

24

25

26

27

28

<div align="left">DOHERTY GEORGESON KERLEY LLP<br>999 Fifth Avenue, Suite 400<br>San Rafael, CA 94901<br>(415) 453-2300</div>

21

Case No.                          COMPLAINT

A-21

 

1

## DEMAND FOR JURY TRIAL

2    Plaintiff hereby demands a jury trial.

3

4    DATED: _Feb 12, 2008_          DOHERTY GEORGESON KERLEY LLP

5

6                                   _Francis Doherty_

7                                   FRANCIS X. DOHERTY
                                    J. EDWARD KERLEY
8                                   Attorneys for Plaintiff La Velda Singleton

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

22

Case No. _____          COMPLAINT

A-22

# EXHIBIT B

# EXHIBIT B




### CERTIFIED POLICY

The policy to which this certification is affixed is a true and accurate copy of the policy contained in company records and used in the regular course of business as of the date shown below. No representation or warranty is made that this copy is identical in all respects to the policy issued.

No insurance is afforded by this copy.

_The Travelers Indemnity Company_
Name of Insuring Company

_660-333X9953_
Policy Number    Date: _7-26-06_

EXHIBIT A

SINGLETON
TRAVELERS/00001

One Tower Square, Hartford, Connecticut 06183

 

**Travelers**

SCHOOLS AND DAY CARE CENTER
COMMON POLICY DECLARATIONS
ISSUE DATE: 09/19/03

POLICY NUMBER: X-660-333X9953-TCT-03

INSURING COMPANY:
THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT

1. NAMED INSURED AND MAILING ADDRESS:
   LOVE AND CARE PRESCHOOL,
   LA VELDA SINGLETON, DBA:
   8010 HOLANDA LANE
   DUBLIN, CA 94568

2. POLICY PERIOD:  From 11/23/03 to 11/23/04 12:01 A.M. Standard Time at
                                                   your mailing address.

3. LOCATIONS
      Premises  Bldg.
      Loc. No.   No.   Occupancy            Address

      SEE IL T0 03

4. COVERAGE PARTS FORMING PART OF THIS POLICY AND INSURING COMPANIES:
   COMMERCIAL PROPERTY COV PART DECLARATIONS      CP T0 11 01 03 TCT
   COMMERCIAL GENERAL LIABILITY COV PART DECLARATIONS  CG T0 01 03 94 TCT

5. NUMBERS OF FORMS AND ENDORSEMENTS
   FORMING A PART OF THIS POLICY:   SEE IL T8 01 10 93

6. SUPPLEMENTAL POLICIES: Each of the following is a separate policy
                          containing its complete provisions:
   Policy                           Policy No.            Insuring Company

   DIRECT BILL

7. PREMIUM SUMMARY
   Provisional
   Due at Inception            $
   Due at Each

NAME AND ADDRESS OF AGENT OR BROKER:        COUNTERSIGNED BY:
   UREN HARRISON
   3211 AUTO PLAZA
   RICHMOND, CA 94806                       Authorized Representative
                                            DATE:

IL T0 02 11 89     PAGE 1 OF 1     SERVICE: CGS - SAC APPLIES

*SINGLETON*
**TRAVELERS/00002**

B-2

 

**Travelers**

POLICY NUMBER:   X-660-333X9953-TCT-03

EFFECTIVE DATE:   11-23-03

ISSUE DATE:   09-19-03

LISTING OF FORMS, ENDORSEMENTS AND SCHEDULE NUMBERS

THIS LISTING SHOWS THE NUMBER OF FORMS, SCHEDULES AND ENDORSEMENTS
BY LINE OF BUSINESS.

```
IL TO 02 11 89   COMMON POLICY DECLARATIONS
IL T8 01 10 93   FORMS, ENDORSEMENTS AND SCHEDULE NUMBERS
IL TO 01 12 94   COMMON POLICY CONDITIONS
IL TO 03 04 96   LOCATION SCHEDULE
```

COMMERCIAL PROPERTY

```
CP TO 11 01 03   COMMERCIAL PROPERTY DECLARATIONS
CP TO 05 04 94   MORTGAGEE SCHEDULE
CP 12 18 07 88   LOSS PAYABLE PROVISIONS
CP TO 00 08 92   TABLE OF CONTENTS
CP 00 90 07 88   COMMERCIAL PROPERTY CONDITIONS
CP T1 00 07 88   BUILDING & PERSONAL PROPERTY COV FORM
CP T1 08 08 88   CAUSES OF LOSS-SPECIAL FORM
CP T3 68 04 02   FUNGUS,ROT,BACTERIA CAUSES OF LOSS
CP T3 01 12 86   AMENDATORY PROVISIONS
CP T3 63 09 99   PROPERTY EXTRA PLUS
CP T3 81 11 02   TERRORISM RISK INS ACT 2002 DISCLOSURE
```

COMMERCIAL GENERAL LIABILITY

```
CG TO 01 03 94   COMM'L GENERAL LIABILITY DEC
CG TO 07 09 87   DECLARATIONS PREMIUM SCHEDULE
CG TO 08 07 86   KEY TO DECLARATIONS PREMIUM SCHEDULE
CG TO 34 10 93   TABLE OF CONTENTS
CG 00 01 10 93   COMMERCIAL GENERAL LIABILITY COV FORM
CG 00 57 09 99   AMENDMENT OF INSURING AGRMNT-KNOWN INJ
CG 20 18 11 85   ADD'L INS-MORTGAGEE, ASSIGNEE, RECEIVER
CG 21 70 11 02   CAP ON LOSSES CERTIFIED ACTS TERRORISM
CG D0 37 01 99   OTHER INSURANCE-ADDITIONAL INSUREDS
CG D0 86 01 03   HIRED AND NONOWNED AUTO EXCESS LIAB
CG D1 88 09 99   COLLEGES AND SCHOOLS XTEND ENDORSEMENT
CG D1 94 11 97   CHGS IN COMMERCIAL GENERAL LIAB COV FORM
CG D2 03 12 97   AMEND-NON CUMULATION OF EACH OCC
CG D2 34 02 01   WEB XTEND - LIABILITY
CG D2 43 01 02   FUNGI OR BACTERIA EXCLUSION
CG 21 47 10 93   EMPLOYMENT-RELATED PRACTICES EXCLUSION
CG 22 30 10 93   EXCLUSION-CORPORAL PUNISHMENT
CG 22 40 11 85   EXCL-MED PAY TO CHILDREN(DAY CARE CNTRS)
CG D0 76 06 93   EXCLUSION-LEAD
CG D1 42 01 99   EXCLUSION-DISCRIMINATION
CG D1 89 07 97   COLLEGES & SCHOOL EXCL STUDENT MED EXP
CG D1 90 07 97   COLLEGES & SCHOOLS AMEND EXCL TRANSPORT
CG D1 92 08 97   AMEND POLL EXCL-EXCEPT BLDG HEAT EQUIP
```

*SINGLETON*
**TRAVELERS/00004**

IL T8 01 10 93                                    PAGE:   1 OF   2

B-3

  

POLICY NUMBER:  X-660-333X9953-TCT-03

EFFECTIVE DATE:  11-23-03

ISSUE DATE:  09-19-03

COMMERCIAL GENERAL LIABILITY (CONTINUED)

    CG D2 42 01 02    EXCLUSION WAR
    CG T4 78 02 90    EXCLUSION-ASBESTOS
    CG T4 90 12 94    EXCLUSION-ABUSE/MOLESTATION
    CG T3 33 12 88    LIMIT WHEN TWO OR MORE POLICIES APPLY

INTERLINE ENDORSEMENTS

    IL T3 68 11 02    FEDERAL TERRORISM RISK INSURANCE ACT
    IL 00 21 07 02    NUCLEAR ENERGY LIAB EXCL END-BROAD FORM
    IL 01 03 06 99    CALIFORNIA CHANGES - ACTUAL CASH VALUE
    IL 01 04 02 02    CALIFORNIA CHANGES
    IL 02 70 07 99    CA CHANGES-CANCELLATION & NON-RENEWAL
    IL 09 52 11 02    CAP LOSSES-CERTIFIED ACTS OF TERRORISM
    IL T0 10 04 94    LENDERS CERTIFICATE OF INSURANCE-FORM A
    IL T0 11 03 96    LENDERS' CERTIFICATE OF INSURANCE-FORM B

*SINGLETON*
**TRAVELERS/00005**

IL T8 01 10 93                              PAGE:    2 OF    2

B-4

 

**LOCATION SCHEDULE**          POLICY NUMBER: X-660-333X9953-TCT-03

This Schedule of Locations and Buildings applies to the Common Policy Declarations for the period
11-23-03 to 11-23-04.

| Loc. No. | Bldg. No. | Address | Occupancy |
|---|---|---|---|
| 1 | 1 | 8010 HOLANDA LANE<br>DUBLIN, CA 94568 | DAY CARE/SCHOOL |

*SINGLETON*
**TRAVELERS/00008**

IL T0 03 04 96

Page    1 (END)

B-5

 

One Tower Square, Hartford, Connecticut 06183        **Travelers**

**COMMERCIAL PROPERTY**
**COVERAGE PART DECLARATIONS**

**POLICY NUMBER:** X-660-333X9953-TCT-03
**ISSUE DATE:** 09-19-03

INSURING COMPANY:
THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT

DECLARATIONS PERIOD: From 11/23/03 to 11/23/04 12:01 A.M. Standard Time at your
mailing address shown in the Common Policy Declarations.

The Commercial Property Coverage Part consists of these Declarations and the
attached Supplemental Declaration(s), Schedule(s), Table of Contents, Commercial
Property Conditions, the Coverage Form(s), the Cause of Loss Form(s) and
endorsements.

1. COVERAGE - Insurance applies only to premises location(s) and building number(s)
   shown below for the coverage(s), optional coverage(s) or coverage option(s)
   indicated in this Declarations or specified in any endorsements attached to this
   Coverage Part.

2. DEDUCTIBLE - The following deductible applies unless a different or more
   specific deductible is indicated within this Declarations or by endorsement.

   $    500 per occurrence

PREMISES LOCATION NO. 0001    BUILDING NO. 0001

| COVERAGE | LIMIT OF INSURANCE | COINSURANCE | CAUSES OF LOSS |
|---|---|---|---|
| Building<br>Replacement Cost applies<br>Inflation Guard: 4% | $    218,500 | 90% | Special |
| Your Business Personal Property<br>Replacement Cost applies | $    34,600 | 90% | Special |

*SINGLETON*
**TRAVELERS/00010**

CP T0 11 01 03

PRODUCER: UREN HARRISON KENNEDY        NI160    OFFICE: CGS - SAC APPLIES 019



One Tower Square, Hartford, Connecticut 06183     **Travelers**

---

**COMMERCIAL PROPERTY**
**COVERAGE PART DECLARATIONS**

**POLICY NUMBER:** X-660-333X9953-TCT-03
**ISSUE DATE:**

| Premises Loc. No. | Bldg. No. | Mortgage Holder Name and Mailing Address |
|---|---|---|
| 1 | 1 | TEXTRON BUSINESS CREDIT, ISAOA<br>275 WEST NATICK ROAD<br>WARWICK          RI 02886 |

*SINGLETON*
**TRAVELERS/00011**

CP T0 05 04 94

**B-7**

 

COMMERCIAL PROPERTY

# BUILDING AND PERSONAL PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout the policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the company providing the insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION H--DEFINITIONS.

## A. COVERAGE

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from a Covered Cause of Loss.

### 1. Covered Property

Covered Property, as used in this Coverage Part, means the following types of property for which a Limit of Insurance is shown in the Declarations:

**a. Building,** meaning the building or structure described in the Declarations, including:

(1) Completed additions;

(2) Permanently installed:

  (a) Fixtures;

  (b) Machinery; and

  (c) Equipment;

(3) Outdoor fixtures;

(4) Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

  (a) Fire extinguishing equipment;

  (b) Outdoor furniture;

  (c) Floor coverings; and

  (d) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

(5) If not covered by other insurance:

  (a) Additions under construction, alterations and repairs to the building or structure;

  (b) Materials, equipment, supplies and temporary structures, on or within 500 feet of the described premises, used for making additions, alterations or repairs to the building or structure.

**b. Your Business Personal Property** located in or on the building described in the Declarations or in the open (or in a vehicle) within 500 feet of the described premises, consisting of the following unless otherwise specified in the Declarations or on the Your Business Personal Property-Separation of Coverage form:

(1) Furniture and fixtures;

(2) Machinery and equipment;

(3) "Stock";

(4) All other personal property owned by you and used in your business;

(5) Labor, materials or services furnished or arranged by you on personal property of others; and

(6) Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

  (a) Made a part of the building or structure you occupy but do not own; and

  (b) You acquired or made at your expense but cannot legally remove.

**c. Personal Property of Others** that is:

(1) In your care, custody or control; and

(2) Located in or on the building described in the Declarations or in the open (or in a vehicle) within 500 feet of the described premises.

However, our payment for loss of or damage to Personal Property of Others will only be for the account of the owner of the property.

*SINGLETON TRAVELERS/00019*

CP T1 00 07 88

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
Copyright, Insurance Services Office, Inc., 1983

Page 1 of 10

B-8



COMMERCIAL PROPERTY



2. **Property and Costs Not Covered**

Unless the following property is added by endorsement to this Coverage Part, Covered Property does not include:

a. Accounts, bills, currency, deeds, evidences of debt, money, notes or securities;

b. Animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of buildings;

c. Automobiles held for sale;

d. Bridges, roadways, walks, patios or other paved surfaces;

e. Contraband, or property in the course of illegal transportation or trade;

f. The cost of excavations, grading, backfilling or filling, reclaiming or restoring land or water;

g. Foundations of buildings, structures, machinery or boilers if their foundations are below:

    (1) The lowest basement floor; or

    (2) The surface of the ground, if there is no basement;

h. Water or land (including land on which the property is located), growing crops or lawns;

i. Personal property while airborne or waterborne;

j. Pilings, piers, wharves, docks, dikes or dams;

k. Property that is covered under another coverage form of this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that other insurance;

l. Retaining walls that are not part of the building described in the Declarations;

m. Underground pipes, flues, drains, mines or mining property;

n. The cost to research, replace or restore the information on valuable papers and records, including those which exist on electronic or magnetic media, except as provided in the Coverage Extensions;

o. Vehicles or self-propelled machines (including aircraft or watercraft) that:

    (1) Are licensed for use on public roads;

    (2) Are operated principally away from the described premises;

but Covered Property does include:

    (3) Vehicles or self-propelled machines, other than automobiles, you manufacture, process, warehouse or hold for sale;

    (4) Automobiles you manufacture, process or warehouse; or

    (5) Rowboats or canoes out of water and located at the described premises;

p. The following property while outside of buildings:

    (1) Grain, hay, straw or other crops;

    (2) Fences, radio or television antennas, including their lead-in wiring, masts or towers, signs (other than signs attached to buildings), trees, shrubs or plants, all except as provided in the Coverage Extensions; or

    (3) Pumps and tanks and their contents, except those which are part of and connected to the heating system of the building.

3. **Covered Causes of Loss**

See applicable Causes of Loss Form as shown in the Declarations.

4. **Additional Coverages**

a. Debris Removal

    (1) We will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the earlier of:

        (a) The date of direct physical loss or damage; or

        (b) The end of the policy period.

    (2) The most we will pay under this Additional Coverage is 25% of:

        (a) The amount we pay for the direct physical loss of or damage to Covered Property; plus

        (b) The deductible in this policy applicable to that loss or damage.

    (3) Payment for Debris Removal is included within the applicable limit of Insurance shown in the Declarations, except when the sum of loss of or

*SINGLETON*
*TRAVELERS/00021*

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
Copyright, Insurance Services Office, Inc., 1983

CP T1 00 07 88





COMMERCIAL PROPERTY

damage to Covered Property and the expense for removal of its debris exceed that limit. When that occurs, we will pay an additional amount for debris removal expense up to $25,000 in any one occurrence.

This additional amount will apply only if the applicable limit of Insurance is at least 80% of the total value of the Covered Property to which the loss or damage occurs.

(4) This Additional Coverage does not apply to costs to:

(a) Extract "pollutants" from land or water; or

(b) Remove, restore or replace polluted land or water.

**b. Pollutant Cleanup and Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises location, if the release, discharge or dispersal of the "pollutants" is caused by or results from a Covered Cause of Loss which occurs:

1. On the described premises; and

2. During the policy period.

The expense will be paid only if reported to us within 180 days of the date of direct physical loss or damage of the earlier of:

(1) The date of direct physical loss or damage; or

(2) The end of the policy period.

The most we will pay for each location under the Additional Coverage is $10,000 in any one year commencing with policy inception. This amount is in addition to the Limits of Insurance.

**c. Preservation of Property**

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss or damage to that property:

(1) While it is being moved or while temporarily stored at another location; and

(2) Only if the loss or damage occurs within 90 days after the property is first moved.

Coverage ceases when the policy is amended to provide insurance at the new location.

**d. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $1,000 for your liability for fire department service charges:

(1) Assumed by contract or agreement prior to loss; or

(2) Required by local ordinance.

No Deductible applies to this Additional Coverage. The amount payable under this Additional Coverage is in addition to the Limits of Insurance.

**e. Reward Coverage**

We will reimburse you for reward(s) you have incurred leading to:

(1) The successful return of undamaged stolen articles to a law enforcement agency; or

(2) The arrest and conviction of any person(s) who have damaged or stolen any of your covered property.

We will pay 25% of the covered loss up to a maximum of $1,000 for the payments of rewards you make. These reward payments must be documented.

**5. Coverage Extensions**

If a Coinsurance percentage of 80% or more or a value reporting period symbol is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**a. Newly Acquired or Constructed Property**

(1) You may extend the insurance that applies to Building to apply to:

(a) Your new buildings while being built on the described premises; and

(b) Buildings you acquire at locations, other than the described premises, intended for:

(i) Similar use as the building described in the Declarations; or

(ii) Use as a warehouse for your Covered Property.

*SINGLETON*
**TRAVELERS/00022**

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
Copyright, Insurance Services Office, Inc., 1983

Page 3 of 10

COMMERCIAL PROPERTY  

The most we will pay for loss or damage under this Extension is $500,000 at each building.

(2) You may extend the insurance that applies to Your Business Personal Property to apply to that property at any location you acquire other than at fairs or exhibitions.

The most we will pay for loss or damage to your Business Personal Property under this Extension is $250,000 at each building.

(3) Insurance under this Extension for each newly acquired or constructed property will end when any of the following first occurs:

(a) This policy expires;

(b) 90 days expire after you acquire or begin to construct the property;

(c) You report values to us; or

(d) The property is more specifically insured.

We will charge you additional premium for values reported from the date construction begins or you acquire the property.

b. **Personal Effects and Property of Others**

You may extend the insurance that applies to Your Business Personal Property to apply to:

(1) Personal effects owned by you, your officers, your partners or your employees. This extension does not apply to loss or damage by theft.

(2) Personal property, other than personal effects, owned by:

(a) Your employees, for not more than $500 for any one employee; or

(b) Others, and in your care, custody or control.

The most we will pay for loss or damage under this Extension is $5,000 at each described premises. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

c. **Valuable Papers and Records—Cost of Research**

You may extend the insurance that applies to Your Business Personal Property to apply to your costs to research, replace or restore the lost information on lost or damaged valuable papers and records, including those which exist on electronic or magnetic media, for which duplicates do not exist. The most we will pay under this Extension is $5,000 at each described premises.

d. **Property Off—Premises**

You may extend the insurance provided by this Coverage Form to apply to your Covered Property, other than "stock," that is temporarily at your home or at a location you do not own, lease or operate. This Extension does not apply to:

(1) Covered Property in or on a vehicle;

(2) Covered Property at any fair or exhibition;

(3) Covered Property temporarily at the location for more than 90 consecutive days; or

(4) Outdoor signs.

The most we will pay for loss or damage under this Extension is $5,000.

e. **Temporary Relocation of Property**

If Covered Property is removed from the described premises and stored temporarily at a location you own, lease or operate while the described premises is being renovated or remodeled, we will pay for loss or damage to that stored property:

(1) Caused by or resulting from a Covered Cause of Loss;

(2) Up to $50,000 at each temporary location; and

(3) During the storage period of up to 90 consecutive days but not beyond expiration of this policy;

unless the stored property is more specifically insured.

f. **Outdoor Property**

You may extend the insurance provided by this Coverage Form to apply to your outdoor property on the described premises, as follows:

**SINGLETON**
**TRAVELERS/00023**

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
Copyright, Insurance Services Office, Inc., 1983

CP T1 00 07 88

**B-11**

 

COMMERCIAL PROPERTY

(1) Fences, retaining walls not part of a building, lawns, trees, shrubs and plants, walks, roadways, patios or other paved surfaces for loss or damage by the following Causes of Loss:

(a) Fire;

(b) Lightning;

(c) Explosion;

(d) Riot or Civil Commotion; or

(e) Aircraft;

(2) Radio and television antennas and signs (other than signs attached to buildings) for loss or damage by the Causes of Loss listed above and:

(a) Windstorm;

(b) Hail;

(c) Falling Objects;

(d) Vehicles;

(e) Sinkhole Collapse; or

(f) Volcanic Action.

The most we will pay under this Extension is $5,000 at each described premises, but not more than $500 for any one tree, shrub or plant nor $1,000 for any one sign or antenna.

**g. Claim Data**

You may extend the insurance provided by this Coverage Form to apply to the expense you incur in preparing claim data when we require it. This includes the cost of taking inventories, making appraisals and preparing other documentation to show the extent of loss. The most we will pay for preparation of claim data under this Extension is $1,000. We will not pay for any expenses billed by and payable to insurance adjusters.

**h. Extra Expense**

You may extend the insurance provided by this Coverage Form to apply to the extra expense you incur to continue as nearly as possible your normal business operation following loss or damage to Covered Property by a Covered Cause of Loss. The most we will pay under this Extension is $1,000 in total in any one occurrence for all extra expense wherever incurred.

The Additional Condition, Coinsurance, does not apply to these Extensions.

**B. EXCLUSIONS**

See applicable Causes of Loss Form as shown in the Declarations.

**C. LIMITS OF INSURANCE**

The most we will pay for loss of or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

The most we will pay for loss of or damage to outdoor signs attached to buildings is $1,000 per sign in any one occurrence.

The limits applicable to the Coverage Extensions are in addition to the Limits of Insurance.

Payments under the following Additional Coverages will not increase the applicable Limit of Insurance:

1. Preservation of Property; and

2. Temporary Relocation of Property.

**D. DEDUCTIBLE**

We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Declarations. We will then pay the amount of loss or damage in excess of the Deductible, up to the applicable Limit of Insurance.

**E. LOSS CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

1. **Abandonment**

   There can be no abandonment of any property to us.

2. **Appraisal**

   If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

   a. Pay its chosen appraiser; and

*SINGLETON*
**TRAVELERS/00024**

CP T1 00 07 88          Includes copyrighted material of Insurance Services Office, Inc. with its permission.          Page 5 of 10
Copyright, Insurance Services Office, Inc., 1983

COMMERCIAL PROPERTY 

    b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**3. Duties in the Event of Loss or Damage**

You must see that the following are done in the event of loss of or damage to Covered Property:

a. Notify the police if a law may have been broken.

b. Give us prompt notice of the loss or damage. Include a description of the property involved.

c. As soon as possible, give us a description of how, when and where the loss or damage occurred.

d. Take all reasonable steps to protect the Covered Property from further damage by a Covered Cause of Loss. If feasible, set the damaged property aside and in the best possible order for examination. Also keep a record of your expenses for emergency and temporary repairs, for consideration in the settlement of the claim. This will not increase the Limit of Insurance.

e. At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

f. Permit us to inspect the property and records proving the loss or damage. Also permit us to take samples of damaged property for inspection, testing and analysis.

g. If requested, permit us to question you under oath at such times as may be reasonably required about any matter relating to this insurance or your claim, including your books and records. In such event, your answers must be signed.

h. Send us a signed, sworn statement of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

i. Cooperate with us in the investigation and settlement of the claim.

**4. Loss Payment**

a. In the event of loss or damage covered by this Coverage Form, at our option, we will either:

(1) Pay the value of lost or damaged property;

(2) Pay the cost of repairing or replacing the lost or damaged property;

(3) Take all or any part of the property at an agreed or appraised value; or

(4) Repair, rebuild or replace the property with other property of like kind and quality.

b. We will give notice of our intentions within 30 days after we receive the sworn statement of loss.

c. We will not pay you more than your financial interest in the Covered Property.

d. We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owner's property. We will not pay the owners more than their financial interest in the Covered Property.

e. We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

f. We will pay for covered loss or damage within 30 days after we receive the sworn statement of loss, if:

(1) You have complied with all of the terms of this Coverage Part; and

(2) We have reached agreement with you on the amount of loss or an appraisal award has been made.

**5. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property.

a. We will pay:

(1) Recovery expense; and

(2) Costs to repair the recovered property;

b. But the amount we pay will not exceed:

(1) The total of a.(1) and a.(2) above;

*SINGLETON*
*TRAVELERS/00025*

Includes copyrighted material of Insurance Services Office, Inc. with its permission.    CP T1 00 07 88
Copyright, Insurance Services Office, Inc., 1983




COMMERCIAL PROPERTY

(2) The value of the recovered property; or

(3) The Limit of Insurance;

whichever is less.

## 6. Valuation

We will determine the value of Covered Property in the event of loss or damage as follows:

a. At actual cash value as of the time of loss or damage, except as provided in b., c., d., e. and f. below.

b. If the Limit of Insurance for Building satisfies the Additional Condition, Coinsurance, and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

This provision does not apply to the following even when attached to the building:

(1) Awnings or floor coverings;

(2) Appliances for refrigerating, ventilation, cooking, dishwashing or laundering; or

(3) Outdoor equipment or furniture.

c. "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

d. Glass at the cost of replacement with safety glazing material if required by law.

e. Tenant's Improvements and Betterments at:

(1) Actual cash value of the lost or damaged property if you make repairs promptly.

(2) A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

(a) Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

(b) Divide the amount determined in (a) above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

(3) Nothing if others pay for repairs or replacement.

f. Valuable Papers and Records, including those which exist on electronic or magnetic media (other than prepackaged software programs), at the cost of:

(1) Blank material for reproducing the records; and

(2) Labor to transcribe or copy the records when there is a duplicate.

## F. ADDITIONAL CONDITIONS

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

### 1. Coinsurance

If a Coinsurance percentage is shown in the Declarations, the following condition applies.

a. We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps:

(1) Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

(2) Divide the Limit of Insurance of the property by the figure determined in step(1);

(3) Multiply the total amount of the covered loss, before the application of any deductible, by the figure determined in step (2); and

(4) Subtract the deductible from the figure determined in step (3).

The amount determined in step (4) is the most we will pay. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

Example No. 1 (Underinsurance):

When: The value of the property is $250,000

The Coinsurance percentage for it is 80%

The Limit of Insurance for it is $100,000

*SINGLETON TRAVELERS/00026*

COMMERCIAL PROPERTY 

The Deductible is      $250

The amount of loss is:    $40,000

Step (1): $250,000 x 80% = $200,000 (the minimum amount of insurance to meet your Coinsurance requirements)

Step (2): $100,000/$200,000 = .50

Step (3): $40,000 x .50 = $20,000

Step (4): $20,000 - $250 = $19,750

We will pay no more than $19,750. The remaining $20,250 is not covered.

Example No. 2 (Adequate Insurance):

When: The value of the property is    $250,000

The Coinsurance percentage for it is    80%

The Limit of Insurance for it is    $200,000

The Deductible is    $250

The amount of loss is    $40,000

Step (1): $250,000 x 80% = $200,000 (the minimum amount of insurance to meet your Coinsurance requirements)

Step (2): $200,000/$200,000 = 1.00

Step (3): $40,000 X 1.00 = $40,000

Step (4): $40,000 - $250 = $39,750

We will cover the $39,750 loss in excess of the Deductible. No penalty applies.

b. If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

Example No. 3: (Underinsurance)

When: The value of the property is:

Bldg. at Location No. 1    $75,000

Bld. at Location No. 2    100,000

Personal Property at Location No. 2    75,000

     $250,000

The Coinsurance percentage for it is    90%

The Limit of Insurance for Buildings and Personal Property at Locations No. 1 and 2 is    $180,000

The Deductible is    $1,000

The amount of loss is:

Bldg. at Location No. 2    $30,000

Personal Property at Location No. 2    20,000

     $50,000

Step (1): $250,000 x 90% = $225,000 (the minimum amount of insurance to meet your Coinsurance requirements and to avoid the penalty shown below)

Step (2): $180,000/$225,000 = .80

Step (3): $50,000 x .80 = $40,000.

Step (4): $40,000 - $1,000 = $39,000.

We will pay no more than $39,000. The remaining $11,000 is not covered.

2. **Mortgage Holders**

a. The term, mortgage holder, includes trustee.

b. We will pay for covered loss of or damage to buildings or structures to each mortgage holder shown in the Declarations in their order of precedence, as interests may appear.

c. The mortgage holder has the right to receive loss payment even if the mortgage holder has started foreclosure or similar action on the building or structure.

d. If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgage holder will still have the right to receive loss payment if the mortgage holder:

(1) Pays any premium due under this Coverage Part at our request if you have failed to do so;

(2) Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so; and

(3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgage holder.

All of the terms of this Coverage Part will then apply directly to the mortgage holder.

e. If we pay the mortgage holder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

(1) The mortgage holder's right under the mortgage will be transferred to us to the extent of the amount we pay; and

*SINGLETON TRAVELERS/00027*

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
Copyright, Insurance Services Office, Inc., 1983

CP T1 00 07 88

 

COMMERCIAL PROPERTY

(2) The mortgage holder's right to recover the full amount of the mortgage holder's claim will not be impaired.

At our option, we may pay to the mortgage holder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

f. If we cancel this policy, we will give written notice to the mortgage holder at least:

(1) 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

(2) 30 days before the effective date of cancellation if we cancel for any other reason.

g. If we elect not to renew this policy, we will give written notice to the mortgage holder at least 10 days before the expiration date of this policy.

## G. OPTIONAL COVERAGES

If shown in the Declarations, the following Optional Coverages apply separately to each item.

### 1. Agreed Value

a. The Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies. We will pay no more for loss of or damage to that property than the proportion that the Limit of Insurance under this Coverage Part for the property bears to the Agreed Value shown for it in the Declarations.

b. If the expiration date for this Optional Coverage shown in the Declarations is not extended, the Additional Condition, Coinsurance, is reinstated and this Optional Coverage expires.

c. The terms of this Optional Coverage apply only to loss or damage that occurs:

(1) On or after the effective date of this Optional Coverage; and

(2) Before the Agreed Value expiration date shown in the Declarations or the policy expiration date, whichever occurs first.

### 2. Inflation Guard

a. The Limit of Insurance for property to which this Optional Coverage applies will automatically increase by the annual percentage shown in the Declarations.

b. The amount of increase will be:

(1) The Limit of Insurance that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Limit of Insurance, times

(2) The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), times

(3) The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365.

Example:

If: The applicable Limit of Insurance is          $100,000

The annual percentage increase is          8%

The number of days since the beginning of the policy year (or last policy change) is          146

The amount of insurance is

$100,000 X .08 X 146/365 = $3,200

### 3. Replacement Cost

a. Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Loss Condition, Valuation, of this Coverage Form.

b. This Optional Coverage does not apply to:

(1) Property of others;

(2) Obsolete property which is not in use;

(3) Residential personal property or personal effects;

(4) Awnings or floor coverings;

(5) Appliances for cooking, dishwashing, laundering, refrigerating or ventilating;

(6) Outdoor equipment or furniture;

(7) Works of art, antiques or rare articles; or

*SINGLETON*
*TRAVELERS/00028*

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
Copyright, Insurance Services Office, Inc., 1983

Page 9 of 10

 

COMMERCIAL PROPERTY

(8) "Stock," unless the Including "Stock" option is shown in the Declarations.

c. You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides, if you notify us of your intent to do so within 180 days after the loss or damage.

d. We will not pay on a replacement cost basis for any loss or damage:

(1) Until the lost or damaged property is actually repaired or replaced; and

(2) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

e. We will not pay more for loss or damage on a replacement cost basis than the least of:

(1) The Limit of Insurance applicable to the lost or damaged property;

(2) The cost to replace, on the same premises, the lost or damaged property with other property:

(a) Of comparable material and quality; and

(b) Used for the same purpose; or

(3) The amount you actually spend that is necessary to repair or replace the lost or damaged property.

H. DEFINITIONS

1. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

2. "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

*SINGLETON*
**TRAVELERS/00029**

Includes copyrighted material of Insurance Services Office, Inc. with its permission.    CP T1 00 07 88
Copyright, Insurance Services Office, Inc., 1983

 

COMMERCIAL PROPERTY

# CAUSES OF LOSS--SPECIAL FORM

Words and phrases that appear in quotation marks have special meaning. Refer to SECTION F--DEFINITIONS.

## A.  COVERED CAUSES OF LOSS

When Special is shown in the Declarations, Covered Causes of Loss means RISKS OF DIRECT PHYSICAL LOSS unless the loss is:

1.  Excluded in Section B., Exclusions; or

2.  Limited in Section C., Limitations;

that follow.

## B.  EXCLUSIONS

1.  We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

    **a.  Ordinance or Law**

    The enforcement of any ordinance or law:

    (1)  Regulating the construction, use or repair of any property; or

    (2)  Requiring the tearing down of any property, including the cost of removing its debris.

    **b.  Earth Movement**

    (1)  Any earth movement (other than sinkhole collapse), such as an earthquake, mine subsidence, landslide, or earth sinking, rising or shifting. But if loss or damage by fire or explosion results, we will pay for that resulting loss or damage.

    (2)  Volcanic eruption, explosion or effusion. But if loss or damage by fire, building glass breakage or volcanic action results, we will pay for that resulting loss or damage.

    Volcanic action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

    (a)  Airborne volcanic blast or airborne shock waves;

    (b)  Ash, dust or particulate matter; or

    (c)  Lava flow.

    All volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to the described property.

**c.  Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

**d.  Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if loss or damage by fire results, we will pay for that resulting loss or damage.

**e.  Power Failure**

The failure of power or other utility service supplied to the described premises, however caused, if the failure occurs away from the described premises.

But if loss or damage by a Covered Cause of Loss results, we will pay for that resulting loss or damage.

**f.  War And Military Action**

(1)  War, including undeclared or civil war;

(2)  Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3)  Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**g.  Water**

(1)  Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

(2)  Mudslide or mudflow;

(3)  Water which backs up through sewers or drains except for any

*SINGLETON*
*TRAVELERS/00030*

COMMERCIAL PROPERTY 

resulting insured direct physical loss by:

    (a) Fire, explosion or fire protective equipment damage; or

    (b) Water back-up, other than from a septic tank or cesspool, when the cause of the water back-up originates on the designated premises;

  (4) Water under the ground surface pressing on, or flowing or seeping through:

    (a) Foundations, walls, floors or paved surfaces;

    (b) Basements, whether paved or not; or

    (c) Doors, windows or other openings.

But if loss or damage by fire, explosion or sprinkler leakage results, we will pay for that resulting loss or damage.

**h. Legal Proceeding**

Legal process involving appropriation of property for any reason or repossession of property for noncompliance with a loan agreement.

2. We will not pay for loss or damage caused by or resulting from any of the following:

**a.** Artificially generated electric current, including electric arcing, that disturbs electrical devices, appliances or wires.

But if loss or damage by fire results, we will pay for that resulting loss or damage.

**b.** Delay, loss of use or loss of market.

**c.** Smoke, vapor or gas from agricultural smudging or industrial operations.

**d.** (1) Wear and tear;

  (2) Rust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

  (3) Smog;

  (4) Settling, cracking, shrinking or expansion;

  (5) Insects, birds, rodents or other animals;

  (6) Mechanical breakdown, including rupture or bursting caused by centrifugal force; or

  (7) The following causes of loss to personal property:

    (a) Dampness or dryness of atmosphere;

    (b) Changes in or extremes of temperature;

    (c) Marring or scratching.

But if loss or damage by the "specified causes of loss" or building glass breakage results, we will pay for that resulting loss or damage.

**e.** Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if loss or damage by fire or combustion explosion results, we will pay for that resulting loss or damage. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**f.** Continuous or repeated seepage or leakage of water that occurs over a period of 14 days or more.

**g.** Water, other liquids, or powders that leak or flow from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

  (1) You do your best to maintain heat in the building or structure; or

  (2) You drain the equipment and shut off the supply if the heat is not maintained.

**h.** Dishonest or criminal act by you, any of your partners, employees, directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

  (1) Acting alone or in collusion with others; or

  (2) Whether or not occurring during the hours of employment.

This exclusion does not apply to acts of destruction by your employees; but theft by employees is not covered.

**i.** Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do

SINGLETON
TRAVELERS/00031

Includes copyrighted material of Insurance Services Office, Inc. with its permission.    CP T1 08 08 88
Copyright, Insurance Services Office, Inc., 1983

B-19

  COMMERCIAL PROPERTY

so by any fraudulent scheme, trick, device or false pretense.

**j.** Rain, snow, sand, dust, ice or sleet to personal property in the open.

**k.** Collapse, except as provided below in the Additional Coverage for Collapse. But if loss or damage by a Covered Cause of Loss results at the described premises, we will pay for that resulting loss or damage.

**l.** Release, discharge or dispersal of "pollutants" unless the release, discharge or dispersal is itself caused by any of the "specified causes of loss." But if loss or damage by the "specified causes of loss" results, we will pay for the resulting damage caused by the "specified cause of loss."

**3.** We will not pay for loss or damage caused by or resulting from any of the following. But if loss or damage by a Covered Cause of Loss results, we will pay for that resulting loss or damage.

**a.** Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in B.1. above to produce the loss or damage.

**b.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**c.** Faulty, inadequate or defective:

   **(1)** Planning, zoning, development, surveying, siting;

   **(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

   **(3)** Materials used in repair, construction, renovation or remodeling; or

   **(4)** Maintenance;

of part or all of any property on or off the described premises.

**4. Special Exclusions**

The following provisions apply only to the specified Coverage Forms when they are part of this policy.

**a. Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form or Extra Expense Coverage Form**

We will not pay for:

**(1)** Any loss caused by or resulting from:

   **(a)** Damage or destruction of "finished stock"; or

   **(b)** The time required to reproduce "finished stock."

This exclusion does not apply to Extra Expense.

**(2)** Any loss caused by or resulting from direct physical loss of or damage to radio or television antennas, including their lead-in wiring, masts or towers.

**(3)** Any increase of loss caused by or resulting from:

   **(a)** Delay in rebuilding, repairing or replacing the property or resuming "operations," due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

   **(b)** Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the suspension of "operations," we will cover such loss that affects your Business Income during the "period of restoration."

**(4)** Any Extra Expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration."

**(5)** Any other consequential loss.

**b. Leasehold Interest Coverage Form**

**(1)** Paragraph B.1.a., Ordinance or Law, does not apply to insurance under this Coverage Form.

**(2)** We will not pay for any loss caused by:

   **(a)** Your cancelling the lease;

   **(b)** The suspension, lapse or cancellation of any license; or

   **(c)** Any other consequential loss.

**c. Legal Liability Coverage Form**

**(1)** The following Exclusions do not apply to insurance under this Coverage Form:

*SINGLETON*
*TRAVELERS/00032*

CP T1 08 08 88    Includes copyrighted material of Insurance Services Office, Inc., with its permission.    Page 3 of 6

Copyright, Insurance Services Office, Inc., 1983

B-20

COMMERCIAL PROPERTY 

(a) Paragraph B.1.a., Ordinance or Law;

(b) Paragraph B.1.c., Governmental Action;

(c) Paragraph B.1.d., Nuclear Hazard;

(d) Paragraph B.1.e., Power Failure; and

(e) Paragraph B.1.f. War and Military Action.

(2) **Contractual Liability**

We will not defend any claim or suit, or pay damages that you are legally liable to pay, solely by reason of your assumption of liability in a contract or agreement.

(3) **Nuclear Hazard**

We will not defend any claim or suit, or pay any damages, loss, expense or obligation, resulting from nuclear reaction, or radiation, or radioactive contamination, however caused.

## C. LIMITATIONS

1. We will not pay for loss of or damage to:

   a. Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

   b. Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

   c. The interior of any building or structure caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

      (1) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

      (2) The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

   d. Building materials and supplies not attached as part of the building or structure, unless held for sale by you, caused by or resulting from theft, except as provided in 6.a. following.

   e. Property that is missing, but there is no physical evidence to show what happened to it, such as shortage disclosed on taking inventory.

   f. Gutters and downspouts caused by or resulting from weight of snow, ice or sleet.

   g. Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

2. We will not pay more for loss of or damage to glass that is part of a building or structure than $100 for each plate, pane, multiple plate insulating unit, radiant or solar heating panel, jalousie, louver or shutter. We will not pay more than $500 for all loss of or damage to building glass that occurs at any one time. This Limitation does not apply to loss or damage by the "specified causes of loss," except vandalism.

3. We will not pay for loss of or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

   a. Valuable papers and records, such as books of account, manuscripts, abstracts, drawings, card index systems, film, tape, disc, drum, cell or other data processing, recording or storage media, and other records.

   b. Animals, and then only if they are killed or their destruction is made necessary.

   c. Fragile articles such as glassware, statuary, marbles, chinaware and porcelains, if broken. This restriction does not apply to:

      (1) Glass that is part of a building or structure;

      (2) Containers of property held for sale; or

      (3) Photographic or scientific instrument lenses.

*SINGLETON*
**TRAVELERS/00033**

Includes copyrighted material of Insurance Services Office, Inc. with its permission.    CP T1 08 08 88
Copyright, Insurance Services Office, Inc., 1983




COMMERCIAL PROPERTY

d. Builders' machinery, tools, and equipment you own or that are entrusted to you while away from the premises described in the Declarations, except as provided in paragraph 6.b. following.

4. For loss or damage by theft, the following types of property are covered only up to the limits shown:

   a. $2,500 for furs, fur garments and garments trimmed with fur.

   b. $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

   c. $5,000 for patterns, dies, molds and forms.

   d. $250 for stamps, tickets and letters of credit.

5. We will not pay for loss of or damage to Covered Property at a building shown in the Declarations:

   By any cause of loss while:

   The building is "vacant," if it has been "vacant" for 60 consecutive days immediately before the loss.

   If the building is shown as "vacant" in the Declarations, none of this limitation applies.

6. Builders' Risk Coverage Form Limitations
   The following provisions apply only to the Builders' Risk Coverage Form.

   a. Limitation 1.d. is replaced by the following:

      d. Building materials and supplies not attached as part of the building or structure caused by or resulting from theft.

   b. Limitation 3.d. is replaced by the following:

      d. Builders' machinery, tools and equipment you own or that are entrusted to you.

**D. ADDITIONAL COVERAGE--COLLAPSE**
We will pay for loss or damage caused by or resulting from risks of direct physical loss involving collapse of a building or any part of a building caused only by one or more of the following:

1. The "specified causes of loss" or breakage of building glass, all only as insured against in this Coverage Part;

2. Hidden decay;

3. Hidden insect or vermin damage;

4. Weight of people or personal property;

5. Weight of rain that collects on a roof;

6. Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

We will not pay for loss or damage to the following types of property, if otherwise covered in this Coverage Part, under items 2., 3., 4., 5. and 6. unless the loss or damage is a direct result of the collapse of a building:

   outdoor radio or television antennas, including their lead-in wiring, masts or towers; awnings; gutters and downspouts; yard fixtures; outdoor swimming pools; fences; piers; wharves and docks; beach or diving platforms or appurtenances; retaining walls; walks, roadways and other paved surfaces.

Collapse does not include settling, cracking, shrinkage, bulging or expansion. This Additional Coverage will not increase the Limit of Insurance provided in this Coverage Part.

**E. ADDITIONAL COVERAGE EXTENSIONS**

1. Property In Transit. This Extension applies only to Your Business Personal Property to which this form applies.

   a. You may extend the insurance provided by this Coverage Part to apply to your Business Personal Property (other than property in the care or control of your salespersons) in transit more than 500 feet from the described premises. Property must be in or on a motor vehicle you own, lease or operate while between points in the coverage territory.

      This Extension does not apply to property in the care, custody or control of your salespersons or to tools, equipment, supplies and materials all used for service or repair in your business and usually kept in a motor vehicle.

   b. Loss or damage must be caused by or result from one of the following causes of loss:

*SINGLETON*
**TRAVELERS/00034**

CP T1 08 08 88          Includes copyrighted material of Insurance Services Office, Inc. with its permission.          Page 5 of 6
Copyright, Insurance Services Office, Inc., 1983

COMMERCIAL PROPERTY 

(1) Fire, lightning, explosion, windstorm or hail, riot or civil commotion, or vandalism.

(2) Vehicle collision, upset or overturn. Collision means accidental contact of your vehicle with another vehicle or object. It does not mean your vehicle's contact with the road bed.

(3) Theft of an entire bale, case or package by forced entry into a securely locked body or compartment of the vehicle. There must be visible marks of the forced entry.

c. The most we will pay for loss or damage under this Extension is $2,000.

This Coverage Extension is additional insurance. The Additional Condition, Coinsurance, does not apply to this Extension.

2. **Water Damage, Other Liquids, Powder or Molten Material Damage.** If loss or damage caused by or resulting from covered water or other liquid, powder or molten material occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

We will not pay the cost to repair any defect that caused the loss or damage; but we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

a. Results in discharge of any substance from an automatic fire protection system;

b. Is directly caused by freezing.

3. **Building Damage By Theft.** You may extend coverage for loss or damage by theft which applies to your Business Personal Property to that part of the building you occupy and which contains your insured personal property, and to property within the building used for maintenance or service of the building, if you are liable for such damage.

We shall not be liable under this Extension of Coverage for damage by fire or explosion, or to glass (other than glass building blocks) or to any lettering, ornamentation or burglar alarm tape on glass.

## F. DEFINITIONS

1. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

2. "Specified Causes of Loss" means the following: Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow ice or sleet; water damage.

a. Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

a. The cost of filling sinkholes; or

b. Sinking or collapse of land into man-made underground cavities.

b. Falling objects does not include loss or damage to:

(1) Personal property in the open; or

(2) The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

c. Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking or cracking of any part of a system or appliance containing water or steam.

3. A building is "vacant" when it does not contain enough business personal property to conduct customary operations.

*SINGLETON*
**TRAVELERS/00035**

Includes copyrighted material of Insurance Services Office, Inc. with its permission.    CP T1 08 08 88
Copyright, Insurance Services Office, Inc., 1983

  COMMERCIAL PROPERTY

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# PROPERTY EXTRA PLUS

*This endorsement modifies insurance provided under the following:*

> BUILDING AND PERSONAL PROPERTY COVERAGE FORM
> BUSINESS INCOME COVERAGE FORM (AND EXTRA EXPENSE)
> BUSINESS INCOME COVERAGE FORM (WITHOUT EXTRA EXPENSE)
> CAUSES OF LOSS – SPECIAL FORM

A. The BUILDING AND PERSONAL PROPERTY COVERAGE FORM is revised by adding BROADENED BUILDING COVERAGE as follows:

1. Paragraph A.1. (Covered Property) a. (Building) (2) (dealing with fixtures) is replaced by the following:

   (2) You may extend the insurance that applies to described Buildings at each location to apply to:

      (a) Enclosed buildings not described in the Declarations and the business personal property within them;

      (b) Structures including outdoor fixtures, including but not limited to:

         i. Outdoor swimming pools not part of a building and related pool equipment;

         ii. Outdoor fences and signs (including outdoor signs attached to buildings);

         iii. Retaining walls that are not part of a building;

         iv. Radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers; and

         v. Unenclosed buildings; but not including bulkheads, bridges, pilings, piers, wharves, docks, dikes or dams.

2. Paragraph A.2. (Property and Costs Not Covered) p.(2) is deleted and replaced by the following:

   (2) Radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, retaining walls that are not part of a building described in the Declarations, except

as provided by this Additional Coverage above; and

(3) Trees, shrubs or plants (other than "stock" of trees, shrubs or plants), except as provided in the Outdoor Property Coverage Extension.

The most we will pay for loss or damage is $25,000 in total in any one occurrence, but not more than $10,000 in total in any one occurrence for outdoor fences and signs (including outdoor signs attached to buildings).

3. Under Paragraph C. (Limits of Insurance), the limit applicable to outdoor signs attached to buildings is deleted.

4. Paragraph A.2. (Property and Costs Not Covered) Item g. (dealing with foundations) is deleted.

B. The following ADDITIONAL COVERAGES are added to the BUILDING AND PERSONAL PROPERTY COVERAGE FORM:

1. **Architect, Engineer or Consulting Fees**

   We will pay for architect, engineering, consulting and supervisory fees incurred and required due to loss or damage to "covered property" at the described premises by a Covered Cause of Loss.

   The most we will pay for this Additional Coverage is $25,000 in any one occurrence.

2. **Fire Protection Equipment Recharge**

   If fire protective equipment discharges accidentally or to control a Covered Cause of Loss, we will pay your cost to:

   a. Refill or recharge the system with the extinguishing agents that were discharged; and

   b. Replace or repair faulty valves or controls which caused the discharge.

   The most we will pay under this Additional Coverage is $25,000 in any one occurrence.

CP T3 63 09 99

*SINGLETON*
**TRAVELERS/00098**    Page 1 of 12

B-24

COMMERCIAL PROPERTY 

**3. Lessor's Leasehold Interest**

a. We will pay for the loss of Covered Leasehold Interest you sustain due to the cancellation of lease contracts by tenants. The cancellation must result from direct physical loss of or damage to your Covered Property at the premises described in the Declarations caused by or resulting from a Covered Cause of loss during the term of this policy.

Covered Leasehold Interest means the difference between the:

(1) Rent you were collecting at the described premises prior to the loss; and

(2) "Rental Value" of the described premises after loss or damage has been repaired or rebuilt.

b. Covered Leasehold Interest does not include refunds or rebates of:

(1) Prepaid rent;

(2) Security or other deposits made by tenants; and

(3) Insurance, taxes or other payments made on your behalf by tenants.

c. "Rental Value" means the:

(1) Total anticipated rental income from tenant occupancy of the premises described in the Declarations as furnished and equipped by you; and

(2) Amount of all charges which are the legal obligations; and

(3) Fair rental value of any portion of the described premises which is occupied by you.

d. The most we will pay under Lessor's Leasehold Interest Additional Coverage is the least of the following:

(1) Your Covered Leasehold interest for the 12 months immediately following the "period of restoration" and ending with the normal expiration date of each canceled lease; or

(2) $25,000 for all Covered Leasehold Interest of all tenants canceling their leases arising out of an occurrence at a described premises.

**4. Ordinance or Law Coverage**

a. If a Covered Cause of Loss occurs to a Covered Building we will pay:

(1) For loss or damage caused by enforcement of any ordinance or law that:

(a) Requires the demolition of parts of the same property not damaged by a Covered Cause of Loss;

(b) Regulates the construction or repair of buildings, or establishes zoning or land use requirements at the described premises; and

(c) Is in force at the time of loss.

(2) When the Covered Building is insured for replacement cost, the increased cost to repair, rebuild or construct the property caused by enforcement of building, zoning or land use ordinance or law. If the property is repaired or rebuilt, it must be intended for similar occupancy as the current property, unless otherwise required by zoning or land use ordinance or law.

(3) The cost to demolish and clear the site of undamaged parts of the property caused by enforcement of the building, zoning, or land use ordinance or law.

b. We will not pay under this coverage for loss due to any ordinance or law that:

(1) You were required to comply with before the loss, even if the building was undamaged; and

(2) You failed to comply with.

c. We will not pay under this coverage for the costs associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants."

d. We will not pay for increased construction costs under this coverage:

(1) Until the property is actually repaired or replaced, at the same location or elsewhere if required by ordinance or law; and

*SINGLETON*
**TRAVELERS/00099**

CP T3 63 09 99

  

COMMERCIAL PROPERTY

(2) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

e. The most we will pay under this Additional Coverage is the least of the following:

(1) If the property is repaired or replaced on the same premises, the amount you actually spend to:

(a) Demolish and clear the site; and

(b) The increased cost to repair, rebuild or reconstruct the property, but not more than the amount it would cost to restore the property on the same premises and to the same height, floor area, style and comparable quality of the original property insured.

(2) If you elect to rebuild at another premises:

(a) The amount you actually spend to demolish and clear the site of the described premises; and

(b) The amount you actually spend to repair, rebuild or reconstruct the property, but not for more than the amount it would cost to restore the property on the same premises and to the same height, floor area, style and comparable quality of the original property insured.

(3) If the property is not repaired or replaced on the same premises if required by an ordinance or law:

(a) The amount you actually spend to demolish and clear the site of the described premises; and

(b) The increased cost to replace, on the same premises, the damaged or destroyed property with other property;

(i) Of comparable material and quality;

(ii) Of the same height, floor area and style; and

(iii) Used for the same purpose at the new premises; or

(4) $250,000 in any one occurrence, whichever is less.

5. **Tenant Move Back Expenses**

We will reimburse you for expenses you pay for Covered Move Back Expenses of tenants who temporarily vacate a portion of the building at the premises described in the Declarations.

The vacancy must have occurred while the portion of the building rented by the tenant could not be occupied due to direct physical loss or damage to your Covered Property caused by or resulting from a Covered Cause of Loss during the term of this policy. The move back must take place within 60 days after the building has been repaired or rebuilt. Covered Move Back Expenses means only documented, reasonable and necessary expenses of:

a. Packing, insuring and transporting business personal property;

b. Reestablishing electric utility and communications services, less refunds from discontinued services;

c. Assembling and setting up fixtures and equipment; and

d. Unpacking and reshelving stock and supplies.

If the tenants have valid and collectible insurance which would pay for such Move Back Expenses, we will pay only for the amount of Covered Move Back Expenses in excess of the amount payable from such other insurance.

The most we will pay under this Additional Coverage is $25,000 for the sum of all such expenses for all tenants arising out of any one occurrence at a described premises.

C. The following ADDITIONAL COVERAGES in the BUILDING AND PERSONAL PROPERTY COVERAGE FORM are revised as follows:

1. **Debris Removal Increased Limit**

The limit applicable to payment for Debris Removal is increased from $25,000 to $50,000 for each described premises in any one occurrence.

2. **Fire Department Service Charge**

The limit applicable to the Fire Department Service Charge Additional Coverage is increased to $25,000 in any one occurrence.

*SINGLETON*
**TRAVELERS/00100**

CP T3 63 09 99

 

COMMERCIAL PROPERTY

3. **Reward Coverage**

The limit applicable to Reward Coverage is increased to $25,000.

D. The following COVERAGE EXTENSIONS are added to the BUILDING AND PERSONAL PROPERTY COVERAGE FORM:

1. **Accounts Receivable**

You may extend the insurance that applies to Your Business Personal Property to apply to loss or damage to your accounts receivable records including those on electronic data processing media (other than Coverage provided by the Electronic Data Processing "Software" and Data Coverage Coverage – Business Income and Extra Expense Extension).

a. We will pay:

(1) Amounts due from your customers that you are unable to collect because of loss or damage to your accounts receivable records;

(2) Interest charges on any loan required to offset amounts you are unable to collect because of loss or damage to your accounts receivable records, pending our payments of these amounts;

(3) Collection expenses in excess of your normal collection expenses that are made necessary by the loss; and

(4) Other reasonable expenses that you incur to reestablish your accounts receivable.

b. We will not pay for loss or damage under this Coverage Extension caused by or resulting from:

(1) Bookkeeping, accounting or billing errors or omissions; or

(2) Programming errors or faulty machine instructions.

c. We will not pay for loss or damage that requires:

(1) An audit of records;

(2) An inventory computation; or

(3) A profit or loss computation;

to prove its factual existence.

d. Loss or damage must be caused by or result from a Covered Cause of Loss:

Exclusions B.1.b.(Earth Movement) and B.1.g. (Water) of the Causes of Loss Special Form do not apply to this Coverage Extension:

The most we will pay under this Coverage Extension is $25,000 in any one occurrence.

2. **BROADENED PERSONAL PROPERTY COVERAGE EXTENSION is added as follows:**

a. **Personal Effects and Personal Property of Others**

The Personal Effects and Property of Others Coverage Extension is replaced by the following:

b. **Personal Effects and Property of Others**

You may extend the insurance that applies to Your Business Personal Property to apply to the following types of property:

(1) Personal effects owned by you, your officers, partners, employees, volunteers, clients, patrons, or your enrolled students.

(2) Personal property of others in your care, custody or control.

b. **Miscellaneous School Property**

If this policy insures a school, headstart, or daycare you may extend the insurance that applies to Your Business Personal Property to apply to loss or damage by a Covered Cause of Loss to Miscellaneous School Property.

Miscellaneous School Property means musical instruments, band uniforms and equipment, theatrical property including scenery and costumes, and athletic equipment while at school sponsored events within the Coverage Territory, as stated in the Commercial Property Conditions. This coverage also applies to school sponsored events outside the Coverage Territory for a period of not more than 30 days.

c. **Property at Undescribed Premises**

You may extend the insurance provided by Your Business Personal Property to apply to Your Business Personal Property that is at a location you do not own, lease

*SINGLETON*
*TRAVELERS/00101* CP T3 63 09 99




COMMERCIAL PROPERTY

.or regularly operate. This Extension does not apply to:

(1) Property in or on a vehicle;

(2) Property at any fair or "exhibition";

(3) Property at an installation premises; or

(4) Property temporarily at a location for more than 90 consecutive days.

"Exhibition" means the temporary display of personal property at a convention, exposition, trade show or similar event at a location you do not own or regularly control.

**d. Personal Property In-Transit and Theft From an Unattended Vehicle**

(1) You may extend the insurance provided by Your Business Personal Property to apply to Your Business Personal Property in transit more than 500 feet from the described premises. Property must be in a motor vehicle you own, lease or operate while between points· in the coverage territory.

This Extension does not apply to property in the care, custody or control of your sales representatives or to tools, equipment, supplies and materials used for service or repair of your business.

(2) Loss or damage must be caused by or result from one of the following causes of loss:

(a) Fire, lightning, explosion, windstorm or hail, riot or civil commotion, or vandalism; or

(b) Vehicle collision, upset or overturn. Collision means accidental contact of your vehicle with another vehicle or object. It does not mean· your vehicle's contact with the road bed; or

(c) Theft of Covered Property from an unattended vehicle if, at the time of entry, all of the vehicle's doors, windows and compartments were closed and locked and there are visible signs that the theft was a result of forced entry; or

(d) Theft of an entire bale, case or package by forced entry into a securely locked body or compartment of the vehicle. There must be visible marks of the forced entry.

**e. Extended Warrantees for Personal Property**

(1) We will pay a proportion of your original cost of non-refundable extended warranties, maintenance contracts, or service contracts that you purchased which are invalidated by the direct physical loss or damage and subsequent replacement of covered personal property.

(2) We will determine the proportionate values by:

(a) multiplying the original cost by the number of days from the loss or damage to the expiration of the warranty or contact, and

(a) dividing the amount determined in .a. above by the number of days from the inception date of the extended warrantee, maintenance contract or service· contract to the expiration of the warranty or contract.

The most we will pay for loss or damage under Broadened Personal Property Coverage Extension is $50,000 for the sum of all losses occurring during the policy period. Our payment for loss of or damage to personal property of others will only be for the account of the owner.of the property. The most we will pay for Theft of Covered Property from an unattended vehicle is $2,500 in any one occurrence.

**3. Building Glass**

**a.** The insurance provided by the Building and Personal Property Coverage Form is extended to cover damage to glass that is part of a building or structure described in the Declarations. This coverage applies to all glass in exterior walls of a described building (including all lettering and ornamentation).

**b.** We will also pay for necessary expenses incurred to:

(1) Put up temporary plates or board· up openings.

COMMERCIAL PROPERTY 

(2) Repair or replace encasing frames,

(3) Remove or replace obstructions.

c. Item C.2. Limitations (dealing with glass) of the Causes of Loss – Special Form is deleted.

4. **Electronic Data Processing Equipment Coverage**

   a. You may extend the insurance that applies to Business Personal Property to apply to loss or damage by a Covered Cause of Loss to:

      (1) Your electronic data processing equipment and its component parts; and

      (2) Your data stored on disks, film, tapes, or similar electronic data processing media; the media itself; computer programs and instructions.

   b. We will not pay for "loss" caused by or resulting from any of the following:

      (1) Programming errors, omissions or incorrect instructions to the machine.

      (2) Failure, fluctuation or interruption of electrical power or any other utility service supplied to a described location, however caused, if the failure, fluctuation or interruption originates more than 1000 feet from the building containing the property to which the "loss" occurs.

      (3) Unexplained disappearance. But, this exclusion does not apply to property in the custody of a carrier for hire.

      (4) Any cause of loss to property you lease or rent from others for which you are not responsible under the terms of any lease or rental agreement.

   c. Causes of Loss – Special Form, Exclusion B.2.a. (Electrical Disturbance), and Exclusion 2.d.(6) (Mechanical Breakdown) do not apply to this Coverage Extension.

   The most we will pay under this Coverage Extension is $25,000 in any one occurrence.

5. **Electronic Data Processing "Software" and Data Coverage – Business Income and Extra Expense**

   a. We will pay your necessary and reasonable "Extra Expenses" to continue your normal business operations following loss or damage to your electronic data processing "software" from a Covered Cause of Loss (Other than reproduction of data or software as provided in Accounts Receivable – Coverage Extension and as provided by the Valuable Papers – Coverage Extension). We will also pay for your actual lost "Business Income" you sustain due to the necessary suspension of your operations during the "period of restoration" (Other than reproduction of data or software as provided in Accounts Receivable – Coverage Extension and as provided by the Valuable Papers – Coverage Extension). The suspension must be caused by direct physical loss of or damage to your electronic data processing "software" at the premises which are described in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.

   b. The following is added to Property and Costs Not Covered as respects this Coverage Extension:

      (1) Accounts, bills, evidences of debt, valuable papers, records, abstracts, deeds, manuscripts and other documents unless they are in the form of "software" and then only in that form.

      (2) "Software" which cannot be replaced with other of the same kind or quality.

   c. The following is added to Valuation as respects this Coverage Extension:

      "Software" will be valued at the cost to reproduce the "software". But if it is not reproduced or replaced, we will only pay the blank value of the "software".

   d. Exclusions B.2.a. (Electrical Disturbance) and B.2.d.(6) (Mechanical Breakdown) of the Causes of Loss Special Form do not apply to this Coverage Extension.

*SINGLETON*
**TRAVELERS/00103**

CP T3 63 09 99

B-29



MMERCIAL PROPERTY

e. The following Definitions are added as respects this Coverage Extension:

(1) "Business Income" means the:

(a) Net income (net profit or loss before income taxes) that would have been earned had no loss or damage occurred; and

(b) Continuing normal operating expenses incurred, including payroll.

(2) "Extra Expense" means necessary and reasonable expenses you incur to avoid or minimize the suspension of business that you would not have incurred if there had been no direct physical loss or damage caused by or resulting from a Covered Cause of Loss.

(3) "Period of Restoration" means the period of time that:

(a) Begins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and

(b) Ends on the date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality.

"Period of Restoration" does not include any increased period required due to the enforcement of any ordinance or law that:

(a) Regulates the construction, use or repair, or requires the tearing down of any property; or

(b) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this policy will not cut short the "period of restoration".

(4) "Software" means data processing media made up of all forms of converted machine readable data, programs and instruction materials used in your business operations, including the materials on which the data is re-

corded such as tapes, disks, or cards including property of others that you hold in any capacity or for which you are responsible.

The most we will pay under this Coverage Extension is $25,000 in total in any one occurrence.

6. Fine Arts

You may extend the insurance that applies to your Business Personal Property to apply to loss or damage to Fine Arts caused by a Covered Cause of Loss at the premises described in the Declarations.

a. Fine Arts means paintings, etchings, pictures, tapestries, art glass windows, valuable rugs, statuary, marbles, bronzes, antique silver, manuscripts, porcelains, rare glass, bric-a-brac, and similar property of rarity, historical value or artistic merit.

b. The value of Fine Arts will be the market value at the time of loss. If the damaged article is part of a pair or set, you may choose one of the following methods for settling the loss:

(1) The market value of the entire pair or set provided you return the remaining pieces to us; or

(2) The cost to repair the damaged pieces and you will keep the undamaged pieces. If the pair or set, with the repaired pieces has lower value than it had before the loss, we will also pay the difference. In no event will we pay more than the value of the pair or set had before the loss; or

(3) The market value of the lost or damaged pieces before the loss when the pieces cannot be found or repaired and you will keep the undamaged pieces. If the remaining pieces have a reduced value, we will pay the difference between the value of the remaining pieces before the loss and after the loss. In no event will be pay more than the value of the pair or set had before the loss.

The most we will pay under this Coverage Extension for loss or damage is $25,000 at any one described premise.

*SINGLETON*
**TRAVELERS/00104**

Page 7 of 12

CP T3 63 09 99

B-30



COMMERCIAL PROPERTY

7. "Money and Securities"

a. You may extend the insurance that applies to Your Business Personal Property to apply to "money" and "securities" owned by you. The most we will pay under this Coverage Extension is:

   (1) $25,000 at each described premises;

   (2) $25,000 within a bank or savings institution;

   (3) $25,000 while in the custody of a "messenger" en route to or from the described premises, a bank or savings institution; or

   (4) $25,000 within the living quarters of a "messenger" in (c) above.

b. Exclusions B.1.b.(Earth Movement) and B.1.g. (Water) and Limitation C.1.e (Property that is missing) of the Causes of Loss – Special Form do not apply to this Coverage Extension.

c. The following Definitions are added as respects this Coverage Extension:

   (1) "Messenger" means you, any of your partners, any employee or volunteer while having care and custody of property away from the described premises.

   (2) "Money" means:

      (a) Currency, coins, and bank notes in current use and having a face value; and

      (b) Travelers checks, register checks and money orders held for sale to the public.

   (3) "Securities" means negotiable and nonnegotiable instruments or contracts representing either money or other property and includes:

      (a) Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

      (b) Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

      (c) but does not include "money" or Lottery tickets held for sale.

8. Reimbursement of Master Key Costs

a. You may extend the insurance that applies to the Building and Personal Property Coverage Form to apply to direct physical loss or damage to a master or grandmaster key by a Covered Cause of Loss. This coverage applies to the actual cost of new keys including the cost of adjusting locks to accept them; or, if necessary, new locks including the cost of installation.

b. Exclusion B.2.h. (dealing with dishonesty and fraudulent acts) found in the Causes of Loss - Special Form does not apply to this Coverage Extension as respects your employees and agents.

c. Limitations C.1.e. (dealing with missing property) and g. (dealing with unauthorized transfer of property) found in the Causes of Loss - Special Form do not apply to this Coverage Extension.

The most we will reimburse you under this Coverage Extension is $5,000 in any one occurrence and $15,000 in total for all occurrences in any one policy year.

9. Utility Services – Direct Damage Coverage

We will pay for loss of or damage to Covered Property caused by the interruption of service to the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to the following property not on the described premises:

a. Water Supply Services, meaning the following types of property supplying water to the described premises:

   (1) Pumping Stations; and

   (2) Water mains.

b. Communication Supply Services, meaning property supplying communications service, including telephone, radio, microwave or television services to the described premises, such as:

   (1) Communication transmission lines including fiber optic transmission lines;

   (2) Coaxial cables; and

   (3) Microwave radio relays, except satellites.

It does not include overhead transmission lines.

*SINGLETON*
**TRAVELERS/00105**

CP T3 63 09 99

**B-31**





COMMERCIAL PROPERTY

c. Power Supply Services, meaning the following types of property supplying electricity, steam or gas to the described premises:

   (1) Utility generating plants;

   (3) Switching stations;

   (4) Substations;

   (5) Transformers; and

   (6) Transmission lines.

   It does not include overhead transmission lines.

The most we will pay for loss or damage under this Coverage Extension is $15,000 in any one occurrence.

E. The following COVERAGE EXTENSIONS in the BUILDING AND PERSONAL PROPERTY COVERAGE FORM are revised as follows:

1. **Newly Acquired or Constructed Property**

   The limit applicable to the Newly Acquired or Constructed Property Coverage Extension as respects Building(s) is increased from $500,000 to $1,000,000 at each building; and as respects Your Business Personal Property and Personal Property of Others the limit is increased from $250,000 to $500,000 in total at each location.

2. **Outdoor Property**

   The Outdoor Property – Coverage - Extension f. is deleted and replaced with the following:

   f. You may extend the insurance provided by this Coverage Form to apply to your outdoor property on the described premises as follows:

   Lawns (including fairways, greens and tees) trees, shrubs and plants (other than "stock" of trees, shrubs or plants), roadways, patios, or other paved surfaces for loss or damage by the following Causes of Loss:

   (1) Fire;

   (2) Lightning;

   (3) Explosion;

   (4) Riot or Civil Commotion;

   (5) Aircraft;

   (6) Falling Objects;

   (7) Sinkhole Collapse; or

   (8) Volcanic Action.

The most we will pay under this Extension is $10,000 in total in any one occurrence; but not more than $1000 for any one tree, shrub or plant.

3. **Valuable Papers and Records**

   Valuable Papers and Records (Other Than Accounts Receivable) Coverage Extension is deleted and is replaced with the following:

   Valuable Papers and Records (Other Than Accounts Receivable and Coverage provided by Electronic Data Processing "Software" and Data Coverage – Business Income and Extra Expense Coverage Extension)

   a. You may extend the insurance that applies to Your Business Personal Property to apply to your costs to research, replace or restore the lost information on lost or damaged valuable papers and records (other than Accounts Receivable and coverage provided in the Electronic Data Processing "Software" and Data Coverage Coverage – Business Income and Extra Expense Coverage Extension) including those which exist electronic or magnetic media for which duplicates do not exist.

   b. The following Exclusions of the Causes of Loss - Special Form do not apply to this Coverage Extension: B.1.b.(Earth Movement), B.1.g. (Water), B.2.a. (Electrical Disturbance) and B.2.d.(6) (Mechanical Breakdown).

   The most we will pay under this Coverage Extension is $25,000 in any one occurrence.

4. **Extra Expense**

   The Extra Expense – Coverage Extension is replaced by the following:

   We will pay your actual necessary and reasonable Extra Expense you sustain due to direct physical loss or damage to property at a premises described in the Declarations, caused by or resulting from a Covered Cause of Loss.

   Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property:

   a. To avoid or minimize the suspension of business and to continue "operations":

      (1) At the described premises; or

*SINGLETON*
**TRAVELERS/00106**
Page 9 of 12

COMMERCIAL PROPERTY 

(2) At replacement premises or at temporary locations, including:

    (a) Relocation expenses; and

    (b) Costs to equip and operate the replacement or temporary locations;

b. To minimize the suspension of business if you cannot continue "operations"; or

    (1) To repair or replace any property; or

    (2) To research, replace or restore the lost information on damaged valuable papers and records;

to the extent it reduces the amount of loss that otherwise would have been payable under this coverage.

c. Special Exclusions a.(3), a.(4) and a.(5) of the Causes of Loss - Special Form apply to this Coverage Extension.

The most we will pay under this Coverage Extension is $25,000 in any one occurrence.

**5. Claim Data**

The limit applicable to the Claim Data Coverage Extension is increased from $1,000 to $10,000.

**F.** The following is added to ADDITIONAL CONDITIONS of the BUILDING AND PERSONAL PROPERTY COVERAGE FORM:

**3. Unintentional Errors in Description**

Your error in how you describe the address of a location in the Declarations shall not prejudice coverage afforded by this policy, provided such error is not intentional. Any such error shall be reported and corrected when discovered and appropriate premium charged.

**G.** The following ADDITIONAL COVERAGE EXTENSION is added to the CAUSES OF LOSS – SPECIAL FORM:

**5. Water Damage**

Water Damage, Additional Coverage Extension is added to the Causes of Loss – Special Form:

With respect to covered property, we will pay for loss or damage caused by or resulting from:

a. Water that backs up or overflows from a sewer, drain or sump; or

b. Water under the ground surface pressing on or flowing or seeping through:

(1) Foundations, walls, floors or paved surfaces;

(2) Basements, whether paved or not; or

(3) Doors, windows or other openings.

c. Exclusion B.1.g.(3) (dealing with sewer and drain back-up) is deleted.

d. Exclusion B.1.g.(4) (dealing with underground water) is deleted.

e. Item C.1.c. of the Limitations is revised to include:

(3) The loss or damage is caused by or results from water that backs up or overflows from a sewer, drain or sump; or

(4) The loss or damage is caused by or results from water under the ground surface pressing on, or flowing or seeping through:

    (a) Foundations, walls, floors or paved surfaces;

    (b) Basements, whether paved or not; or

    (c) Doors, windows or other openings.

f. Item F.2.c. of the Definitions as respects "Specified Causes of Loss" – Water Damage is deleted and replaced with the following:

c. Water damage means:

(1) Accidental discharge of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam;

(2) Water that backs up or overflows from a sewer, drain or sump; or

(3) Water under the ground surface pressing on, or flowing or seeping through:

    i. Foundations, walls, floors or paved surfaces;

    ii. Basements, whether paved or not; or

    iii. Doors, windows or other openings.

The most we will pay for loss or damage under this Coverage Extension is 10% of the

*SINGLETON*
**TRAVELERS/00107**  CP T3 63 09 99

 

COMMERCIAL PROPERTY

limit(s) of insurance shown for Building(s) separately at each affected described premises shown in the declarations and 10% of the limit(s) of insurance shown for Personal Property separately at each affected described premises shown in the Declarations, but not more than $100,000 in total in any one policy year. Loss of Business Income or Extra Expense does not apply to this Coverage Extension.

H. When the BUSINESS INCOME COVERAGE FORM (AND EXTRA EXPENSE) or the BUSINESS INCOME COVERAGE FORM (WITHOUT EXTRA EXPENSE) is attached to this policy, BROADENED BUSINESS INCOME COVERAGE is added as follows:

1. **Extended Business Income**

   The Additional Coverage - Extended Business Income 30 consecutive days is revised to 90 consecutive days.

2. **Loss of Business Income – Dependent Properties**

   We will pay for actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss or damage at the premises of a "dependent property", caused by or resulting from a Covered Cause of Loss.

   a. This Additional Coverage does not apply to "dependent property" for which you have more specific insurance either under this policy or another.

   b. This Additional Coverage applies to "dependent property" located within the Coverage Territory as stated in the Commercial Property Conditions.

   c. "Dependent property" means property operated by others you depend on to:

      (1) Deliver materials or services to you, or to others for your account (Contributing Locations). With respect to Contributing Locations, services does not mean water, communications or power supply services;

      (2) Accept your products or services (Recipient Locations);

      (3) Manufacture products for delivery to your customers under contract of sale (Manufacturing Locations); or

      (4) Attract customers to your business (Leader Locations).

3. **Utility Services – Time Element**

   We will pay for the loss of Business Income and/or Extra Expense you incur due to the necessary suspension of your "operations" during the "period of restoration" as a result of direct physical loss or damage by a Covered Cause of Loss to property not at the premises described in the Declarations but used to supply you with services by the following utilities:

   a. Water Supply Services, meaning the following types of property supplying water to the described premises:

      (1) Pumping Stations; and

      (2) Water mains.

   b. Communication Supply Services, meaning property supplying communications service, including telephone, radio, microwave or television services to the described premises, such as:

      (1) Communication transmission lines including fiber optic transmission lines;

      (2) Coaxial cables; and

      (3) Microwave radio relays, except satellites.

      It does not include overhead transmission lines.

   c. Power Supply Services, meaning the following types of property supplying electricity, steam or gas to the described premises:

      (1) Utility generating plants;

      (2) Switching stations;

      (3) Substations;

      (4) Transformers; and

      (5) Transmission lines.

      It does not include overhead transmission lines.

4. **Ingress or Egress Coverage**

   We will pay for the actual loss of Business Income you sustain and, if included, reasonable and necessary Extra Expense due to the necessary suspension of your "operations", when the ingress or egress to or from a described premises is prevented as a direct result of loss or damaged by a Covered Cause of Loss. The loss or damage by a Covered

CP T3 63 09 99

*SINGLETON*
**TRAVELERS/00108**    Page 11 of 12

COMMERCIAL PROPERTY

Cause of Loss preventing ingress or egress must occur within one mile of the described premises. This coverage will apply up to 30 consecutive days from the date when the ingress or egress is denied.

Under Broadened Business Income Coverage, the most we will pay under Extended Business Income, Loss of Business Income – Dependent Property, and Ingress or Egress Coverage is, $150,000 for the sum of all losses during the policy period. The most we will pay under Utility Services – Time Element Additional Coverage is $15,000 in any one occurrence.

I. The NAMED INSURED shown in the DEC-LARATIONS is amended as follows:

The Named Insured will include any subsidiary company (including subsidiaries thereof) of the named Insured and any other entity which the

Named Insured owns, operates or controls, and any other entity which was or may hereafter be acquired or formed.

As respects Building coverage, the Named Insured is amended to include any person or organization that rents a building to you if you are required by lease agreement or any other written contract to provide such insurance for the interest of the building owner.

J. Common Endorsement Provisions

Each of the coverage limits under this endorsement is additional insurance unless otherwise specified.

The Building and Personal Property Coverage Form, F. (Additional Conditions), 1. (Coinsurance), does not apply to insurance provided by this endorsement.

*SINGLETON*
**TRAVELERS/00109**

CP T3 63 09 99




THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CALIFORNIA CHANGES – ACTUAL CASH VALUE

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL CRIME COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART
STANDARD PROPERTY POLICY

The following is added to any provision which uses the term actual cash value:

Actual cash value is calculated as the amount it would cost to repair or replace Covered Property, at the time of loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation and obsolescence. Actual cash value applies to valuation of Covered Property regardless of whether that property has sustained partial or total loss or damage.

The actual cash value of the lost or damaged property may be significantly less than its replacement cost.

*SINGLETON*
**TRAVELERS/00110**

IL 01 03 06 99          · Copyright, Insurance Services Office, Inc., 1999 ·          Page 1 of 1

B-36

# EXHIBIT C

# EXHIBIT C

# APPRAISAL OF INSURANCE CLAIM AWARD

INSURED:                LaVelda Singleton dba Love & Care Preschool
INSURER:                Travelers
POLICY NO.:         x-660-333x9953-TCT-03
DATE OF LOSS:      11/17/04
PROPERTY INVOLVED: Building Structure
LOCATION OF LOSS:   8010 Holanda Lane, Dublin, CA

## TO THE ABOVE-NAMED PARTIES AT INTEREST:

We, the undersigned appraisers, have investigated and considered all the material facts and available information pertaining to this claim and have decided on an Appraisal Award as described below. The award is based on the cost to repair, replace or rebuild the damaged property, with like kind and quality, from the data presented at the appraisal hearing.

| | |
|---|---|
| BUILDING REPLACEMENT COST VALUE | $ |
| BUILDING ACTUAL CASH VALUE | $ |
| BUILDING CODE & ORDINANCE | $ |
| DEBRIS REMOVAL | $ |
| ARCHITECT, ENGINEERING & CONSULTING FEES | $ |

Attached to this award is a breakdown which sets forth those items included herein. This breakdown sets forth the above award in detail and is made without consideration of any deductible amount or any coverage or other provision of the above policy which might affect the amount of the insurer's liability thereunder. This award does not include any emergency service costs incurred, paid or under consideration. All executed copies shall be considered as counterpart originals.

### WE AGREE TO THE ABOVE.

_____
APPRAISER

_____
DATE

_____
APPRAISER

_____
DATE

_____
UMPIRE

_____
DATE

# EXHIBIT D

# EXHIBIT D

# APPRAISAL OF INSURANCE CLAIM AWARD

**INSURED:**      LaVelda Singleton dba Love & Care Preschool
**INSURER:**      Travelers
**POLICY NO.:**      x-660-333x9953-TCT-03
**DATE OF LOSS:**      11/17/04
**PROPERTY INVOLVED:** Building Structure
**LOCATION OF LOSS:**      8010 Holanda Lane, Dublin, CA

TO THE ABOVE-NAMED PARTIES AT INTEREST:

We, the undersigned appraisers, have investigated and considered all the material facts and available information pertaining to this claim and have decided on an Appraisal Award as described below. The award is based on the cost to repair, replace or rebuild the damaged property, with like kind and quality, from the data presented at the appraisal hearing.

| | |
|---|---|
| **BUILDING REPLACEMENT COST VALUE** | $ 234,614.00 |
| **BUILDING ACTUAL CASH VALUE** | $ 227,689.00 |
| **BUILDING CODE & ORDINANCE** | $ 22,782.00 |
| **DEBRIS REMOVAL** | $ 28,255.92 |
| **ARCHITECT, ENGINEERING & CONSULTING FEES** | $ 3,350.00 |

Attached to this award is a breakdown which sets forth those items included herein. This breakdown sets forth the above award in detail and is made without consideration of any deductible amount or any coverage or other provision of the above policy which might affect the amount of the insurer's liability thereunder. This award does not include any emergency service costs incurred, paid or under consideration. All executed copies shall be considered as counterpart originals. ✳

<center>WE AGREE TO THE ABOVE.</center>

APPRAISER                            DATE

_[signature]_                                6/7/2007
APPRAISER                              DATE

_[signature]_                                6/6/2007
UMPIRE                               DATE

✳ *Includes repairs for emergency of $4,672.44.*

# EXHIBIT E

# EXHIBIT E



# State of Delaware

**SECRETARY OF STATE**
**DIVISION OF CORPORATIONS**
**P.O. BOX 898**
**DOVER, DELAWARE 19903**

*080509112*

*9275752*                                                          *05-06-2008*
*BULLIVANT HOUSER BAILEY LAW OFFICE*
*601 CALIFORNIA STREET*
*STE 1800*
*SAN FRANCISCO          CA    94108-2823*
*ATTN: STEVE JANG*

| DESCRIPTION | AMOUNT |
|---|---|
| *TEXTRON FINANCIAL CORPORATION* | |
| *0579312    8100   Certified Copy* | |
| *Certification Fee* | *30.00* |
| *Document Page Fee* | *22.00* |
| *Expedite 24 Hr., 1-4 Cert.* | *40.00* |
| *FILING TOTAL* | *92.00* |
| *TOTAL PAYMENTS* | *92.00* |
| *SERVICE REQUEST BALANCE* | *.00* |

# Delaware

PAGE 1

## *The First State*

I, HARRIET SMITH WINDSOR, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF INCORPORATION OF "NORTHEAST FINANCIAL CORPORATION", FILED IN THIS OFFICE ON THE FIFTH DAY OF FEBRUARY, A.D. 1962, AT 10 O'CLOCK A.M.

0579312    8100

080509112

You may verify this certificate online
at corp.delaware.gov/authver.shtml

Harriet Smith Windsor, Secretary of State

AUTHENTICATION: 6572688

DATE: 05-06-08

## NORTHEAST FINANCIAL CORPORATION

## CERTIFICATE OF INCORPORATION

We, the undersigned, in order to form a corporation for the purposes hereinafter stated, under and pursuant to the provisions of an Act of the Legislature of the State of Delaware, entitled "An Act Providing a General Corporation Law" (approved March 10, 1899), and the acts amendatory thereof and supplemental thereto, do hereby certify as follows:

FIRST:   The name of the Corporation is

NORTHEAST FINANCIAL CORPORATION.

SECOND:  The principal office of the Corporation in the State of Delaware is to be located in the City of Wilmington, in the County of New Castle.  The name of its resident agent is The Corporation Trust Company, whose address is No. 100 West Tenth Street in said city.

THIRD:  The nature of the business of the Corporation and the objects or purposes proposed to be transacted, promoted or carried on by it, are as follows:

(1)  To finance the acquisition by others of personal property, goods and chattels of every nature and description and to buy, sell, lease or sublease (either as lessor or as lessee) import, export, distribute, exchange and in any other manner own, hold and deal in the same; engage in the business of buying, selling or otherwise dealing in notes, open accounts and other similar evidences of debt, and any and all other forms of real, personal or mixed property choses in action; to receive and accept transfers, pledges, mortgages, and conditional sales contracts and to

deal with the same as owner, lender, factor, or otherwise as a
means of security or of recovering money or property advanced,
invested or loaned; to acquire, purchase, own, hold, pledge, ex-
change, sell, transfer, invest, trade or otherwise deal in stocks,
bonds, securities, choses in action or any interest therein; to
draw, make, accept, endorse, execute and issue promissory notes,
drafts, warrants, bonds, securities, choses in negotiable and
non-negotiable instruments; to enter into contracts of any and every
kind for the carrying out of its purposes and objects; to enter into
profit sharing arrangements, promote organizations or cause to be
organized any corporation, firm or partnership in aid of its busi-
ness; to finance and aid by loan, subsidy, consignment or other-
wise any corporation, association, syndicate or entity, and to
conduct or co-operate in conducting any business or enterprise;
and to repossess by legal process or otherwise for the enforce-
ment of any property rights, liens or interests it may be entitled
to.

(2) To make, enter into, perform and carry out contracts
of every kind, nature and description, and with any one or more
persons, firms, associations, corporations, or governments or
subdivisions thereof, or with the United States Government, and
whether as prime contractor, subcontractor or otherwise, and to
represent and act on behalf of others in the negotiation, procure-
ment, and performance of contracts and subcontracts.

(3) To make, manufacture, produce, process, purchase
or otherwise acquire, and to sell, lease, use, import, export, or
otherwise trade or deal in and with, goods, wares, products and
merchandise of every kind, nature and description; and to engage
or participate in any manufacturing, mercantile or trading busi-
ness of any kind or character whatsoever.

(4) To purchase, lease, construct or otherwise acquire,
and to hold, own, use, maintain, lease, manage and operate, and
to sell or otherwise dispose of, or otherwise trade or deal in and
with, plants, buildings, mills, factories, warehouses, roads,
mines, wells, docks, piers, wharves, stores, shops, boats, roll-
ing stock and other structures, establishments and facilities of
every kind, nature or description used or useful in the conduct of
the business of the Corporation.

(5) To adopt, apply for, obtain, register, purchase,
lease or otherwise acquire, to maintain, protect, hold, use,
own, exercise, develop, manufacture under, operate and

2

introduce, and to sell and grant licenses or other rights in respect of, assign, or otherwise dispose of, turn to account, or in any manner deal with and contract with reference to, any trademarks, trade names, patents, patent rights, concessions, franchises, designs, copyrights and distinctive marks and rights analogous thereto, and inventions, devices, improvements, processes, formulae and the like, including such thereof as may be covered by, used in connection with, or secured or received under, Letters Patent of the United States of America or elsewhere or otherwise, and any licenses and rights in respect thereof, in connection therewith or appertaining thereto.

(6)  To purchase or otherwise acquire, and to hold, pledge, sell, exchange or otherwise dispose of, securities (which term, for the purpose of this Article THIRD, includes, without limitation of the generality thereof, any shares of stock, bonds, debentures, notes, mortgages or other obligations, and any certificates, receipts or other instruments representing rights to receive, purchase or subscribe for the same, or representing any other rights or interest therein or in any property or assets) created or issued by any person, firm, association, corporation or government or subdivision or agency or instrumentality thereof; to make payment therefor in any lawful manner; and to exercise as owner or holder of any securities, any and all rights, powers and privileges in respect thereof.

(7)  To endorse or guarantee the payment of principal, interest or dividends upon, and to guarantee the performance of sinking fund or other obligations of any securities, and to guarantee in any way permitted by law the performance of any of the contracts or other undertakings in which the Corporation may otherwise be or become interested, of any one or more persons, firms, associations, corporations, governments or subdivisions thereof.

(8)  To acquire by purchase, exchange or otherwise, all or any part of, or any interest in, the properties, assets, business and good will of any one or more persons, firms, associations or corporations heretofore or hereafter engaged in any business for which a corporation may now or hereafter be organized under the laws of the State of Delaware; to pay for the same in cash, property or its own or other securities; to hold, operate, lease, reorganize, liquidate, sell or in any manner dispose of the whole or any part thereof; and, in connection therewith, to assume or guarantee performance of any liabilities, obligations or contracts of such persons, firms, associations or corporations, and to conduct the whole or any part of any business thus acquired.

(9)  To lend its uninvested funds from time to time to such extent, to such persons, firms, associations, corporations, governments or subdivisions thereof, and on such terms and on such security, if any, as the Board of Directors of the Corporation may determine.

(10)  To borrow money for any of the purposes of the Corporation, from time to time, and without limit as to amount; from time to time to issue and sell its own securities in such amounts, on such terms and conditions, for such purposes and for such prices, now or hereafter permitted by the laws of the State of Delaware and by this Certificate of Incorporation, as the Board of Directors of the Corporation may determine; and to secure such securities by mortgage upon, or the pledge of, or the conveyance or assignment in trust of, the whole or any part of the properties, assets, business and good will of the Corporation, then owned or thereafter acquired.

(11)  To purchase, hold, cancel, reissue, sell, exchange, transfer or otherwise deal in its own securities from time to time to such an extent and in such manner and upon such terms as the Board of Directors of the Corporation shall determine; provided that the Corporation shall not use its funds or property for the purchase of its own shares of capital stock when such use would cause any impairment of its capital, except to the extent permitted by law; and provided further that shares of its own capital stock belonging to the Corporation shall not be voted upon directly or indirectly.

(12)  To promote, organize, manage, aid or assist, financially or otherwise, persons, firms, associations or corporations engaged in any business whatsoever, to such extent as a corporation organized under the General Corporation Law of the State of Delaware may now or hereafter lawfully do; and, to a like extent, to assume, guarantee or underwrite their securities as to principal, interest, dividends or sinking fund obligations in respect thereof or all or any thereof, or the performance of all or any of their other obligations.

(13)  To conduct its business in any and all of its branches and maintain offices both within and without the State of Delaware, in any and all States of the United States of America, in the District of Columbia, in any or all territories, dependencies, colonies or possessions of the United States of America, and in foreign countries.

(14)  To such extent as a corporation organized under the General Corporation Law of the State of Delaware may now or hereafter lawfully do, to do, either as principal or agent and either alone or through subsidiaries or in connection with other persons, firms, associations or corporations, all and everything necessary, suitable, convenient or proper for, or in connection with, or incident to, the accomplishment of any of the purposes or the attainment of any one or more of the objects herein enumerated, or designed directly or indirectly to promote the interests of the Corporation or to enhance the value of its properties; and in general to do any and all things and exercise any and all powers, rights and privileges which a corporation may now or hereafter be organized to do or to exercise under the General Corporation Law of the State of Delaware or under any act amendatory thereof, supplemental thereto or substituted therefor.

The foregoing provisions of this Article THIRD shall be construed both as purposes and powers and each as an independent purpose and power. The foregoing enumeration of specific purposes and powers shall not be held to limit or restrict in any manner the purposes and powers of the Corporation, and the purposes and powers therein specified shall, except when otherwise provided in this Article THIRD, be in no wise limited or restricted by reference to, or inference from, the terms of any provision of this or any other Article of this Certificate of Incorporation; provided that nothing herein contained shall be construed as authorizing the Corporation to issue bills, notes or other evidences of debt for circulation as money, or to carry on the business of receiving deposits of money or the business of buying gold or silver bullion or foreign coins or as authorizing the Corporation to engage in the business of banking or insurance or to carry on the business of constructing, maintaining or operating public utilities in the State of Delaware; and provided,

further, that the Corporation shall not carry on any business or exercise any power in any state, territory or country which under the laws thereof the Corporation may not lawfully carry on or exercise.

FOURTH:  The total number of shares of stock which the Corporation shall have authority to issue is Two Thousand Five Hundred (2,500) and the par value of each of such shares shall be One Hundred Dollars ($100.00).  All such shares are of one class and are designated as Common Stock.

The minimum amount of capital with which the Corporation will commence business is One Thousand Dollars ($1,000.).

FIFTH:  The names and places of residence of each of the incorporators are as follows:

| Name | Place of Residence |
|------|--------------------|
| Joseph B. Collinson | Tallwood Drive<br>West Barrington, Rhode Island |
| Charles K. Mills | 40 Ronaele Drive<br>Warwick, Rhode Island |
| G. Richard Westin | 4 Shady Lane<br>Barrington, Rhode Island |

SIXTH:  The Corporation is to have perpetual existence.

SEVENTH:  The private property of the stockholders of the Corporation shall not be subject to the payment of corporate debts to any extent whatever.

EIGHTH:  For the management of the business and for the conduct of the affairs of the Corporation, and in further definition,

limition and regulation of the powers of the Corporation and of its direc-
tors and stockholders, it is further provided:

    1. The number of directors of the Corporation which shall
constitute the whole Board of Directors shall be such as from
time to time shall be fixed in the manner provided in the by-laws
of the Corporation, but in no case shall the number be less than
three. In the case of any increase in the number of directors of the
Corporation, any additional directorship created may be filled in
the first instance in the same manner as a vacancy in the Board of
Directors. The directors need not be stockholders. The election
of directors of the Corporation need not be by ballot unless the
by-laws so require. The directors may hold their meetings and
have an office or offices outside the State of Delaware if the by-laws
so provide.

    2. A majority of the directors shall constitute a quorum
for the transaction of business, unless the by-laws shall provide
that a different number shall constitute a quorum, which in no case
shall be less than one-third of the total number of directors nor
less than two directors.

    3. In furtherance and not in limitation of the powers con-
ferred by the laws of the State of Delaware, the Board of Direc-
tors is expressly authorized and empowered:

        (a) To make, alter, amend or repeal the by-laws
in any manner not inconsistent with the laws of the State of
Delaware or the Certificate of Incorporation of the Corpora-
tion. subject to the power of the stockholders to amend,
alter or repeal the by-laws made by the Board of Directors
or to limit or restrict the power of the Board of Directors
so to make, alter, amend or repeal the by-laws.

        (b) Subject to the applicable provisions of the by-
laws, to determine, from time to time, whether and to
what extent and at what times and places and under what
conditions and regulations the accounts and books and docu-
ments of the Corporation, or any of them, shall be open to
the inspection of the stockholders, and no stockholder shall
have any right to inspect any account or book or document
of the Corporation, except as conferred by the laws of the
State of Delaware, unless and until authorized so to do by
resolution of the Board of Directors or of the stockholders
of the Corporation.

(c) Without the assent or vote of the stockholders to authorize and issue obligations of the Corporation, secured or unsecured, to include therein such provisions as to redeemability, convertibility or otherwise, as the Board of Directors in its sole discretion may determine, and to authorize the mortgaging or pledging, as security therefor, of any property of the Corporation, real or personal, including after-acquired property.

(d) To designate one or more committees, each committee to consist of two (2) or more of the directors of the Corporation, which to the extent provided in said resolution or resolutions or in the by-laws, shall have and may exercise the powers of the Board of Directors in the management of the business and affairs of the Corporation and may have power to authorize the seal of the Corporation to be affixed to all papers which may require it, such committee or committees to have such name or names as may be stated in the by-laws or as may be determined from time to time by resolution adopted by the Board of Directors.

(e) To determine whether any, and, if any, what part, of the net profits of the Corporation or of its net assets in excess of its capital shall be declared in dividends and paid to the stockholders, and to direct and determine the use and disposition of any such net profits or such net assets in excess of capital.

(f) To fix from time to time the amount of profits of the Corporation to be reserved as working capital or for any other lawful purpose.

In addition to the powers and authorities hereinbefore or by statute expressly conferred upon it, the Board of Directors may exercise all such powers and do all such acts and things as may be exercised or done by the Corporation, subject, nevertheless, to the provisions of the laws of the State of Delaware, of the Certificate of Incorporation and of the by-laws of the Corporation.

4. Any director or any officer elected or appointed by the stockholders or by the Board of Directors may be removed at any time in such manner as shall be provided in the by-laws of the Corporation.

5. No contract or other transaction between the Corporation and any other corporation and no other act of the Corporation shall, in the absence of fraud, in any way be affected or invalidated by the fact that any of the directors of the Corporation are pecuniarily or otherwise interested in, or are directors or officers of, such other corporation. Any director of the Corporation individually, and any firm or association of which any director may be a member, may be a party to, or may be pecuniarily or otherwise interested in, any contract or transaction of the Corporation, provided that the fact that he individually or such firm or association is so interested shall be disclosed or shall have been known to the Board of Directors or a majority of such members thereof as shall be present at any meeting of the Board of Directors at which action upon any such contract or transaction shall be taken. Any director of the Corporation who is also a director or officer of such other corporation or who is so interested may be counted in determining the existence of a quorum at any meeting of the Board of Directors which shall authorize any such contract or transaction, and may vote thereat to authorize any such contract or transaction, with like force and effect as if he were not such director or officer of such other corporation or not so interested. Any director of the Corporation may vote upon any contract or other transaction between the Corporation and any subsidiary or affiliated corporation without regard to the fact that he is also a director of such subsidiary or affiliated corporation.

Any contract, transaction or act of the Corporation or of the directors, which shall be ratified by a majority of a quorum of the stockholders of the Corporation at any annual meeting, or at any special meeting called for such purpose, shall, in so far as permitted by law or by this Certificate of Incorporation, be as valid and as binding as though ratified by every stockholder of the Corporation; provided, however, that any failure of the stockholders to approve or ratify any such contract, transaction or act, when and if submitted, shall not be deemed in any way to invalidate the same, or deprive the Corporation, its directors, officers or employees, of its or their right to proceed with such contract, transaction or act.

6. From time to time any of the provisions of this Certificate of Incorporation may be amended, altered or repealed, and other provisions authorized by the laws of the State of Delaware at the time in force may be added or inserted in the manner and at the time prescribed by said laws, and all rights at any time conferred upon the stockholders of the Corporation by this Certificate of Incorporation are granted subject to the provisions of this Paragraph 6.

NINTH:  No holder of stock of the Corporation shall, as such holder, have any right to purchase or subscribe for any shares of stock of the Corporation of any class, now or hereafter authorized, or any obligations or instruments which the Corporation may issue or sell that shall be convertible into or exchangeable for or entitle the holders thereof to subscribe for or purchase any shares of stock of the Corporation of any class, now or hereafter authorized, other than such right, if any, as the Board of Directors in its discretion may determine.

IN WITNESS WHEREOF, we, the undersigned, being all of the incorporators hereinabove named, do hereby further certify that the facts hereinabove stated are truly set forth, and accordingly have hereunto set our respective hands and seals this 2nd day of February, 1962.

_Joseph B. Collinson_ (L.S.)
Joseph B. Collinson

_Charles K. Mills_ (L.S.)
Charles K. Mills

_G. Richard Westin_ (L.S.)
G. Richard Westin

STATE OF RHODE ISLAND    )

                          )  ss.:

COUNTY OF PROVIDENCE    )

        In the City of Providence, in said County and State, on the 2nd day of February, 1962, personally appeared before me Joseph B. Collinson, Charles K. Mills, and G. Richard Westin, all to me known and known to me to be the persons who executed the foregoing Certificate of Incorporation, and they severally acknowledged that said Certificate was so executed by them as their free acts and deeds.

        GIVEN under my hand and seal of office the day and year aforesaid.

_____
Notary Public

My Commission Expires
June 30, 1966

Table of Contents

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

## FORM 10-K

☑ **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d)OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the fiscal year ended December 29, 2007**

**OR**

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d)OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the transition period from        to**

**Commission file number 0-27559**

# Textron Financial Corporation

*(Exact Name of Registrant as Specified in Its Charter)*

| | |
|---|---|
| **Delaware** | **05-6008768** |
| (State or Other Jurisdiction of Incorporation or Organization) | (I.R.S. Employer Identification No.) |
| **40 Westminster Street, P.O. Box 6687, Providence, R.I.** | **02940-6687** |
| (Address of Principal Executive Offices) | (Zip Code) |

**Registrant's Telephone Number, Including Area Code:**
**(401) 621-4200**

**Securities registered pursuant to Section 12(b) of the Act:**

| Title of Class | Name of Each Exchange on Which Registered |
|---|---|
| **$100,000,000 5.125% Notes due August 15, 2014** | **New York Stock Exchange** |

**Securities registered pursuant to Section 12(g) of the Act:**

**Common Stock, $100.00 par value**

Indicate by check mark if the registrant is a well-known seasoned issuer as defined in Rule 405 of the Securities Act.  Yes ☑   No ☐

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Act.  Yes ☐   No ☑

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports) and (2) has been subject to such filing requirements for the past 90 days.  Yes ☑   No ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained herein, and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K. (Not applicable).

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, or a smaller reporting company. See the definitions of "large accelerated filer," "accelerated filer" and "smaller reporting company" in Rule 12b-2 of the Exchange Act. (Check one):

☐ Large accelerated filer     ☐ Accelerated filer     ☑ Non-accelerated filer     ☐ Smaller reporting company

(Do not check if a smaller reporting
company)

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act). Yes ☐    No ☑

All of the shares of common stock of the registrant are owned by Textron Inc. and there was no voting or non-voting common equity held by non-affiliates as of the last business day of the registrant's most recently completed fiscal quarter.

**REGISTRANT MEETS THE CONDITIONS SET FORTH IN GENERAL INSTRUCTION I (1) (a) AND (b) OF FORM 10-K AND IS THEREFORE FILING THIS FORM WITH THE REDUCED DISCLOSURE FORMAT.**